## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **JOSHUA WILSON**, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>**WASH MASTERS, L.P.**,<br><br>               Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

### CLASS ACTION COMPLAINT

1. Joshua Wilson ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Wash Masters, L.P. ("Wash Masters" or "Defendant").

2. This Class Action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. This case is also brought pursuant to the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act").

4. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

5. Now, Plaintiff brings this Class Action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

1

## PARTIES

6. Plaintiff, Joshua Wilson, is a natural person and a citizen of Fort Worth, Texas. He is domiciled in Texas (where he intends to remain).

7. Defendant, Wash Masters, L.P. is a Limited Partnership formed in Texas and with its principal place of business at 105 YMCA Drive, Waxahachie, Texas 75165.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

9. This Court has personal jurisdiction over Defendant because it is headquartered in Texas, regularly conducts business in Texas—including by directing telemarketing calls to Texas residents—and has sufficient minimum contacts in Texas.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

11. This Court has supplemental jurisdiction over Plaintiff's Texas law claim pursuant to 28 U.S.C. § 1367 because the claim forms part of the same case or controversy as Plaintiff's federal TCPA claims.

## BACKGROUND

*The Telephone Consumer Protection Act*

12. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

13. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable

acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

14. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

15. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

16. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

17. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

18. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

19. The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

20. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

21. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***The Texas Telephone Solicitation Act***

22. The Texas Legislature enacted the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act"), to protect Texas residents from intrusive and unwanted telemarketing communications.

23. Like its federal counterpart, the Texas Act was enacted to safeguard the privacy rights of individuals and to prevent the nuisance, invasion of privacy, and disruption caused by unsolicited telemarketing communications.

24. The Texas Act regulates "telephone solicitations," which are defined as telephone calls or messages initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

25. The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has made a prior express request to

4

receive the communication or has otherwise provided prior express consent. Tex. Bus. & Com. Code § 305.053.

26. An "automatic dialing announcing device" includes equipment that stores or produces telephone numbers to be called and automatically dials those numbers and plays a recorded or automated message.

27. Telemarketing text messages sent using automated systems constitute "telephone solicitations" under the Texas Act when they are sent for the purpose of encouraging the purchase of goods or services.

28. The Texas Act provides a private right of action to any person who receives a telephone solicitation in violation of the statute. Tex. Bus. & Com. Code § 305.053.

29. A prevailing plaintiff may recover statutory damages of $500 for each violation.

30. If the trier of fact finds that the defendant knowingly or intentionally violated the Texas Act, the court may award additional damages as authorized by statute.

31. The Texas Act also authorizes injunctive relief to prevent further unlawful telephone solicitations.

***Plaintiff Joshua Wilson***

32. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

33. Plaintiff's residential telephone number is 469-836-XXXX (the "telephone number").

34. To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on November 17, 2024. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

35. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

36. Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past five (5) to six (6) years.

37. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

38. Plaintiff has never received a reimbursement from any business for his telephone number.

39. Plaintiff has never taken a business-related tax-deduction for his telephone number.

40. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

*Defendant Engages in Telemarketing*

41. Defendant offers "fast & friendly service, and a Masterfully clean car."[1] Their "locations throughout North and East Texas offer state-of-the-art express exterior washes and interior services."[2]

42. Simply put, Defendant sells car washing services.

---

[1] *About Us*, WASH MASTERS CAR WASH, https://washmasters.com/about-us/ (last visited Feb. 18, 2026).
[2] *Id*.

43. A screenshot of Defendant's website is provided below.[3]



44. To sell its services, Defendant engages in telemarketing campaigns.

***Defendant violated the TCPA***

45. As explained below, Defendant violated the TCPA numerous times.

46. Defendant first contacted Plaintiff by promotional text message on July 29, 2024. Since that date, Plaintiff has received at least twenty-eight (28) promotional text messages from Defendant, all originating from the same short code: 30400.

47. Beginning in July 2024, Defendant initiated a promotional text message campaign directed to Plaintiff's telephone number from short code 30400.

48. On July 29, 2024, Plaintiff received a promotional text offering a free car wash.

49. On August 14, 2024, Plaintiff received a promotional text offering a "back to school" wash.

---

[3] *Id*.

50. On September 13, 2024, Plaintiff received a promotional text message offering a free birthday surprise.

51. On September 13, 2024, Plaintiff responded "STOP," thereby revoking any prior consent and requesting that Defendant cease sending further text messages.

52. Despite Plaintiff's opt-out request, Defendant continued sending promotional text message solicitations to Plaintiff's telephone number from short code 30400, including, on information and belief, the following:

    a. October 12, 2024

    b. October 16, 2024

    c. October 22, 2024

    d. November 11, 2024

    e. November 29, 2024

    f. December 10, 2024

    g. December 17, 2024

    h. December 20, 2024

53. On November 17, 2024, Plaintiff registered his telephone number on the National Do-Not-Call Registry and has remained registered since that date.

54. More than thirty-one (31) days after Plaintiff registered his number on the National Do-Not-Call Registry, Defendant continued sending telemarketing text messages to Plaintiff.

55. On February 8, 2025, after receiving additional promotional messages, Plaintiff again responded "STOP," reaffirming his request that the messages cease.

56. Despite Plaintiff's repeated opt-out requests and National Do-Not-Call registration, Defendant continued sending promotional text message solicitations to Plaintiff, including, on information and belief, the following:

   a. February 11, 2025
   b. March 12, 2025
   c. April 13, 2025
   d. April 18, 2025
   e. May 14, 2025
   f. May 20, 2025
   g. July 15, 2025
   h. August 14, 2025
   i. October 12, 2025
   j. October 16, 2025
   k. November 11, 2025
   l. November 28, 2025
   m. December 10, 2025
   n. December 17, 2025
   o. December 20, 2025
   p. February 11, 2026

57. In total, Defendant sent at least twenty-three (23) promotional text messages after Plaintiff first revoked consent on September 13, 2024.

58. Each of the above-described messages encouraged Plaintiff to purchase Defendant's car wash services through promotional offers, discounts, or limited-time campaigns.

9

59. Defendant sent the text messages using automated messaging software capable of transmitting standardized promotional text messages to stored lists of consumer telephone numbers without human intervention at the time of transmission.

60. The text messages received by Plaintiff were uniform in format and content and were part of mass promotional campaigns offering discounts, sales, and limited-time promotions for Defendant's car wash services.

61. The messages were impersonal and generic in nature, containing standardized promotional language and embedded hyperlinks directing recipients to Defendant's website.

62. The text messages were sent from a short code which means they were likely sent from a dedicated messaging platform commonly used for automated marketing campaigns.

63. The volume, frequency, and timing of the messages—including multiple messages sent over the course of months despite Plaintiff's repeated "STOP" requests—demonstrate that the messages were sent automatically rather than manually by an individual employee.

64. Defendant's system could store lists of consumer telephone numbers and send identical promotional messages simultaneously or in rapid succession to numerous recipients.

65. The messages were sent without any human intervention at the time each message was transmitted.

66. Such equipment constitutes an "automatic dialing announcing device" as defined by Tex. Bus. & Com. Code § 305.001 and prohibited by § 305.053 when used without prior express consent.

67. Defendant's continued transmission of promotional text messages after Plaintiff's revocations and after his telephone number was listed on the National Do-Not-Call Registry violated the TCPA and the Texas Telephone Solicitation Act.

68. Plaintiff's September 13, 2024, and February 8, 2025 "STOP" messages constituted clear and unequivocal revocations of any prior express consent.

69. Plaintiff and members of the Class have been harmed by the acts of Defendant because their privacy was invaded and they were subjected to unwanted telemarketing communications.

70. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members absent injunctive relief.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings this Class Action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation message from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.
>
> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing communications in a 12-month period, (3) who were not current customers of the Defendant at the time of the communications, (4) who had previously asked for the communications to stop and (5) within the four years prior to the filing of the Complaint.
> **Texas Telephone Solicitation Class:** All persons within the State of Texas: (1) received one or more marketing text messages from Defendant; (2) using the same or similar dialing equipment used to contact the Plaintiff; (3) within the four years prior to the filing of the Complaint.

72. Together, the various classes are referred to as the "Class."

73. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any

successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

74. Plaintiff reserves the right to amend the Class definition.

75. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

76. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

77. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

78. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

79. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

80. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

      a.      whether Defendant violated the TCPA;

      b.      whether Defendant violated the TCPA willfully and knowingly;

      c.      whether Plaintiff is entitled to statutory damages;

      d.      whether Plaintiff is entitled to treble damages;

      e.      whether Defendant should be enjoined from further TCPA violations.

81.    **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

**(On behalf of Plaintiff and the National Do Not Call Registry Class)**

82.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

83.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations

of the TCPA, 47 U.S.C. § 227, by sending telemarketing communications, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

84. Defendant violated the TCPA willfully or knowingly.

85. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

86. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

## SECOND CAUSE OF ACTION

**Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**

**(On behalf of Plaintiff and the Internal Do Not Call Registry Class)**

87. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

88. In pertinent part, 47 C.F.R. § 64.1200(d) provides:
No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests*. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the

>   subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

89. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

90. Plaintiff and the Internal Do-Not-Call Class Members made requests to Defendant not to receive telemarketing solicitations from Defendant.

91. Defendant failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to call Plaintiff and the Internal Do-Not-Call Class Members to harass them into making purchases from Defendant.

92. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) institute procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) implement a written policy, available upon demand, for maintaining a do-not-call list; and (3) train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

93. Plaintiff and the Internal Do-Not-Call Class Members are informed and believe that Defendant (1) has not instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) has not implemented a written

policy, available upon demand, for maintaining a do-not-call list; and (3) does not train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

94.  The details and specific facts regarding Defendant's failure to maintain the required policies, implement the required procedures, and train its personnel regarding the same, are solely within Defendant's knowledge and possession.

95.  The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Internal Do-Not-Call Class despite having asked Defendant to cease its telephonic solicitations.

96.  Defendant violated the TCPA willfully or knowingly.

97.  Plaintiff and Internal Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone solicitation.

98.  Plaintiff and Internal Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Internal Do-Not-Call Class Members.

### THIRD CAUSE OF ACTION

**Violation of the Texas Telephone Solicitation Act**

**(Tex. Bus. & Com. Code § 305.001 et seq.)**

**(On behalf of Plaintiff and the Texas Subclass)**

99.  Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

100. The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has provided prior express consent. Tex. Bus. & Com. Code § 305.053.

101. The Texas Act defines "telephone solicitation" as a telephone call or message that is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

102. Text messages that promote goods or services constitute "telephone solicitations" under the Texas Act.

103. At all relevant times, Plaintiff was a resident of Texas and received Defendant's telemarketing text messages in Texas.

104. Defendant's text messages were sent using an automatic dialing system or similar automated technology that qualifies as an automatic dialing announcing device under the Texas Act.

105. Defendant's conduct constitutes multiple violations of Tex. Bus. & Com. Code § 305.053.

106. The Texas Act provides a private right of action for a person who receives a communication in violation of the statute.

107. As a result of Defendant's violations of the Texas Act, Plaintiff is entitled to recover statutory damages of $500 per violation and attorney's fees.

108. If the Court finds that Defendant knowingly or intentionally violated the Texas Act, Plaintiff is entitled to recover additional damages as permitted by statute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.  Certifying this case as a Class Action on behalf of Plaintiff and the Class, appointing Plaintiff as Class representative, and appointing his counsel to represent the Class;

B.  Awarding statutory damages to Plaintiff and Class Members;

C.  Providing the injunctive relief requested herein; and

Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.


RESPECTFULLY SUBMITTED AND DATED this 25th day of February, 2026.

/s/ *Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

Samuel J. Strauss
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
cmiller@straussborrelli.com

*Counsel for Plaintiff Joshua Wilson*