**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

July 22, 2026

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

JOSH WILSON, on behalf of himself and
all others similarly situated,

                    Plaintiff,

    v.

WASH MASTERS, L.P., ARADI
PROPERTIES, LLC, OPTSPOT, LLC

                    Defendants.

No. 26-cv-217

JURY TRIAL DEMANDED

**FIRST AMENDED CLASS ACTION COMPLAINT**

1.      Josh Wilson ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint.

2.      This class action arises from Defendants' persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.      This case is also brought pursuant to the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act").

4.      Defendants Wash Masters, L.P. ("Wash Masters") is a Texas limited partnership that franchises and licenses Wash Masters-branded car wash locations, including the Grand Prairie, Texas location that is the subject of this action.

5.      Defendants Aradi Properties, LLC ("Aradi") is a Texas limited liability company that, upon information and belief, owned and operated the Wash Masters franchise located in Grand Prairie, Texas during the relevant period.

1

6.      Defendants OptSpot, LLC is a business entity that, upon information and belief, provides SMS marketing services, maintains customer marketing databases, manages automated text message campaigns, and transmitted the text messages at issue on behalf of Wash Masters and/or Aradi.

7.      At all relevant times, Defendants acted jointly and in concert in designing, implementing, managing, supervising, approving, directing, transmitting, and benefiting from the telemarketing campaign challenged in this action.

### JURISDICTION AND VENUE

8.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

9.      This Court has personal jurisdiction over Defendants because it directed telemarketing calls to Texas which establishes sufficient minimum contacts for claims arising from those telemarketing calls. Thus, Defendants knew, or should have known, that it was directing telephone solicitations into Texas. Furthermore, the Defendants is a resident of this District.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

11.     This Court has supplemental jurisdiction over Plaintiff's Texas law claim pursuant to 28 U.S.C. § 1367 because the claim forms part of the same case or controversy as Plaintiff's federal TCPA claims.

**BACKGROUND**

*The Telephone Consumer Protection Act*

12.    Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

13.    "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

14.    As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

15.    The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

16.    For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

3

17.     Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

18.     The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

19.     The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

20.     The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

21.     The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

22.     For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

**The Texas Telephone Solicitation Act**

23.     The Texas Legislature enacted the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act"), to protect Texas residents from intrusive and unwanted telemarketing communications.

24.     Like its federal counterpart, the Texas Act was enacted to safeguard the privacy rights of individuals and to prevent the nuisance, invasion of privacy, and disruption caused by unsolicited telemarketing communications.

25.     The Texas Act regulates "telephone solicitations," which are defined as telephone calls or messages initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

26.     The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has made a prior express request to receive the communication or has otherwise provided prior express consent. Tex. Bus. & Com. Code § 305.053.

27.     An "automatic dialing announcing device" includes equipment that stores or produces telephone numbers to be called and automatically dials those numbers and plays a recorded or automated message.

28.     Telemarketing text messages sent using automated systems constitute "telephone solicitations" under the Texas Act when they are sent for the purpose of encouraging the purchase of goods or services.

29.     The Texas Act provides a private right of action to any person who receives a telephone solicitation in violation of the statute. Tex. Bus. & Com. Code § 305.053.

30.     A prevailing plaintiff may recover statutory damages of $500 for each violation.

31.     If the trier of fact finds that the Defendants knowingly or intentionally violated the Texas Act, the court may award additional damages as authorized by statute.

32.     The Texas Act also authorizes injunctive relief to prevent further unlawful telephone solicitations.

***Plaintiff Josh Wilson and Defendants' Text Message Contact***

33.     Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

34.     Plaintiff's cellular telephone number is 469-836-XXXX (the "telephone number").

35.     To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on November 17, 2024. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

36.     Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

37.     During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

38.     Plaintiff has never received a reimbursement from any business for his telephone number.

39.     Plaintiff has never taken a business-related tax-deduction for his telephone number.

40.     As explained below, Defendants violated the TCPA numerous times.

41.     Plaintiff received a text message regarding an offer for a free birthday surprise on September 13, 2024.

42.     Plaintiff responded "Stop" to this on September 13, 2024

43.     Plaintiff received text messages from the Defendants on the following dates after he responded "Stop":

6

a.    October 12, 2024
b.    October 16, 2024
c.    October 22, 2024
d.    November 11, 2024
e.    November 29, 2024
f.    December 10, 2024
g.    December 17, 2024
h.    December 20, 2024

44.    Plaintiff responded "Stop" on February 8, 2025.

45.    Plaintiff received text messages on the following dates after he responded "Stop":

- February 11, 2025
- March 12, 2025
- April 13, 2025
- April 18, 2025
- May 14, 2025
- May 20, 2025
- July 15, 2025
- August 14, 2025
- October 12, 2025
- October 16, 2025
- November 11, 2025
- November 28, 2025
- December 10, 2025
- December 17, 2025
- December 20, 2025
- February 11, 2026

46.    During discovery, Wash Masters identified Aradi Properties, LLC as the franchisee associated with the Grand Prairie Wash Masters location promoted in Plaintiff's text messages.

47.    Wash Masters further identified OptSpot as the entity most likely responsible for transmitting the text messages received by Plaintiff.

48. Wash Masters also admitted that operators of Wash Masters-branded locations utilized OptSpot to conduct text message marketing campaigns during the relevant period.

49. Wash Masters produced a franchise agreement governing the relationship between Wash Masters and Aradi.

50. The agreement demonstrates that Wash Masters licensed its trademarks, business system, and operating procedures to Aradi for operation of the Grand Prairie Wash Masters location.

51. During discovery, Wash Masters identified Aradi as the franchisee associated with the Grand Prairie Wash Masters location and identified OptSpot as the entity most likely responsible for transmitting the text messages received by Plaintiff.

52. Wash Masters' supplemental discovery responses further identified Aradi as an entity involved in the challenged text message campaign and agreed to supplement its disclosures to identify entities engaged in the campaign.

53. Defendants either directly or through their agents maintained customer telephone numbers, customer marketing databases, automated messaging systems, suppression lists, and opt-out records used in connection with the challenged text message campaign.

54. At all relevant times, OptSpot acted as the authorized marketing vendor and agent of Wash Masters and/or Aradi in transmitting automated promotional text messages promoting Wash Masters-branded services.

55. Defendants sent the above-described text messages using equipment that had the capacity to store or produce telephone numbers to be called and to automatically send text messages to those numbers without human intervention.

56.    The text messages received by Plaintiff were uniform in format and content and were part of mass promotional campaigns offering discounts, sales, and limited-time promotions for Defendants' car wash services.

57.    The messages were impersonal and generic in nature, containing standardized promotional language and embedded hyperlinks directing recipients to Defendants' website.

58.    The text messages were sent from a short code which means they were likely sent from a dedicated messaging platform commonly used for automated marketing campaigns.

59.    The volume, frequency, and timing of the messages—including multiple messages sent over the course of months despite Plaintiff's repeated "Stop" requests—demonstrate that the messages were sent automatically rather than manually by an individual employee.

60.    Defendants' system was capable of storing lists of consumer telephone numbers and sending identical promotional messages simultaneously or in rapid succession to numerous recipients.

61.    The messages were sent without any human intervention at the time each message was transmitted.

62.    Such equipment constitutes an "automatic dialing announcing device" as defined by Tex. Bus. & Com. Code § 305.001 and prohibited by § 305.053 when used without prior express consent.

63.    The text messages promoted Wash Masters-branded car wash services, including promotions for free washes, membership discounts, seasonal promotions, and the Grand Prairie Wash Masters location, including:

> • "Wash Masters Grand Prairie Text Club Rewards! Click to claim your 1 FREE WASH..."

- "Wash Masters Grand Prairie Black Friday Special! Get your First Month for $0.01..."

- "Wash Masters wants to make sure you're good with getting our offers. If you've moved or don't want these offers anymore just reply STOP."

64. Following commencement of this action, Plaintiff obtained records from OptSpot pursuant to subpoena.

65. Those records demonstrate that Plaintiff's telephone number was associated with an electronic marketing submission connected to the Grand Prairie Wash Masters location.

66. Plaintiff alleges that Defendants continued transmitting telemarketing text messages after Plaintiff replied STOP on September 13, 2024 and again on February 8, 2025.

67. Defendants continued transmitting promotional text messages after both revocations.

68. Wash Masters authorized the use of its trademarks, trade dress, business system, and marketing program by Aradi.

69. Wash Masters exercised actual and contractual authority over the operation of Wash Masters-branded locations and benefited financially from the text message campaign.

70. Aradi retained and/or utilized OptSpot to conduct text message marketing promoting Wash Masters-branded services.

71. The electronic enrollment form identified in OptSpot's production invited consumers to enroll in automated text message alerts from "Wash Masters," rather than from Aradi or OptSpot, thereby presenting the campaign to consumers as a Wash Masters marketing program.

72. OptSpot acted within the scope of authority granted by Wash Masters and/or Aradi when transmitting the text messages at issue.

10

73. Upon information and belief, Wash Masters exercised contractual authority over franchise marketing, licensed the use of its trademarks and business system, identified OptSpot as the vendor responsible for the campaign, investigated the campaign through communications with the franchisee and vendors, and thereafter ratified the conduct by accepting the benefits of the campaign and failing to repudiate the authority under which it was conducted.

74. Upon information and belief, Aradi retained, authorized, directed, supervised, or otherwise caused OptSpot to transmit automated promotional text messages advertising Wash Masters-branded services.

75. Upon information and belief, OptSpot created, maintained, or utilized customer marketing databases, automated messaging software, campaign management tools, customer opt-in records, customer opt-out records, suppression lists, and text message transmission systems in connection with the campaign challenged herein.

76. Wash Masters investigated the campaign by contacting the franchise operator and the identified vendors and has admitted that the campaign was conducted through entities operating Wash Masters-branded locations.

77. After learning the identity of the entities involved in the challenged campaign, Wash Masters neither repudiated the campaign nor disclaimed the authority of Aradi or OptSpot to conduct text message marketing promoting Wash Masters-branded services.

78. Instead, upon information and belief, Wash Masters accepted the benefits of that campaign while continuing to defend this action on the merits.

79. Furthermore, each Defendants ratified the conduct of the remaining Defendants by knowingly accepting the benefits of the marketing campaign after acquiring knowledge of the

challenged conduct and failing to repudiate, terminate, or prevent the continued transmission of promotional text messages after Plaintiff revoked consent.

80. For example, Wash Masters ratified the conduct of Aradi and OptSpot by knowingly accepting the benefits of the marketing campaign and failing to repudiate or terminate the challenged conduct after learning of Plaintiff's allegations.

## CLASS ACTION ALLEGATIONS

81. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

> **Texas Telephone Solicitation Class:** All persons within the State of Texas: (1) received one or more marketing text messages from Defendants; (2) using the same or similar dialing equipment used to contact the Plaintiff; (3) within the four years prior to the filing of the Complaint.

82. Excluded from the Class are Defendants, its agents, affiliates, parents, subsidiaries, any entity in which Defendants has a controlling interest, any Defendants officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

83.   Plaintiff reserves the right to amend the class definition.

84.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

85.   **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control.

86.   Specifically, all members of the proposed Class can be ascertained through analysis of Defendants' phone records, customer databases, SMS campaign records, OptSpot records, customer enrollment records, opt-in records, opt-out records, suppression lists, and message transmission logs.

87.   **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

88.   **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendants' unlawful telemarking practices.

89.   **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

90.   **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

13

individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

- whether Defendants violated the TCPA;

- whether Defendants violated the TCPA willfully and knowingly;

- whether Plaintiff is entitled to statutory damages;

- whether Plaintiff is entitled to treble damages;

- whether Wash Masters exercised actual or apparent authority over Aradi and OptSpot;

- whether Aradi acted as Wash Masters' franchisee and agent in conducting the campaign;

- whether OptSpot acted as the authorized marketing vendor or agent for Wash Masters and Aradi;

- whether Defendants maintained legally compliant internal do-not-call procedures;

- whether Defendants honored STOP requests;

- whether Defendants shared or maintained common customer databases;

- whether Defendants used standardized SMS campaigns and enrollment procedures;

- whether Defendants ratified the challenged conduct; and whether Defendants should be enjoined from further TCPA violations.

91.    Predominance is further established because Defendants' liability turns upon common evidence concerning their standardized marketing practices, common vendor relationships, centralized SMS campaign management, standardized enrollment forms, common opt-out procedures, and common policies governing telemarketing compliance.

92.     **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

93.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

94.     Defendants, individually and through their franchisees, agents, contractors, vendors, service providers, and all other persons acting on their behalf, initiated or caused to be initiated more than one telephone solicitation to Plaintiff and members of the National Do Not Call Registry Class within a twelve-month period after their telephone numbers had been registered on the National Do Not Call Registry, in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c).

95.     Wash Masters is liable for the conduct of Aradi and OptSpot because, as alleged herein, those entities acted with actual authority, apparent authority, and/or authority subsequently

15

ratified by Wash Masters. Aradi is independently liable because it authorized, directed, controlled, or benefited from the telemarketing campaign promoting the Grand Prairie Wash Masters location. OptSpot is independently liable because it transmitted, or caused to be transmitted, the text messages at issue on behalf of Wash Masters and Aradi.

96.    Defendants' violations were negligent, willful, or knowing.

97.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

98.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Registry Class)

99.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

100.    Defendants, individually and through their franchisees, agents, contractors, vendors, service providers, and all other persons acting on their behalf, repeatedly initiated or caused telemarketing text messages to be transmitted to Plaintiff and members of the Internal Do

16

Not Call Class after those persons requested that such communications stop, in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

101.    As alleged herein, Defendants failed to implement, maintain, or properly administer procedures reasonably designed to honor consumer opt-out requests and maintain an internal do-not-call list. Defendants are liable both for the text messages transmitted after Plaintiff's repeated STOP requests and for the failure to maintain TCPA-compliant internal do-not-call procedures.

102.    Defendants' violations were negligent, willful, or knowing.

103.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

### THIRD CAUSE OF ACTION
**Violation of the Texas Telephone Solicitation Act**
**(Tex. Bus. & Com. Code § 305.001 et seq.)**

104.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

105.    The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has provided prior express consent. Tex. Bus. & Com. Code § 305.053.

106.    The Texas Act defines "telephone solicitation" as a telephone call or message that is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

107.    Text messages that promote goods or services constitute "telephone solicitations" under the Texas Act.

17

108.    At all relevant times, Plaintiff was a resident of Texas and received Defendants' telemarketing text messages in Texas.

109.    Defendants, individually and through their franchisees, agents, contractors, vendors, service providers, and all other persons acting on their behalf, used an automatic dialing announcing device or similar automated technology to initiate or cause the initiation of promotional text messages advertising Wash Masters-branded goods and services.

110.    Defendants jointly participated in, authorized, directed, supervised, controlled, transmitted, or ratified the automated telemarketing campaign challenged herein. Each Defendant is therefore liable for the violations of the Texas Telephone Solicitation Act alleged in this Complaint.

111.    The Texas Act provides a private right of action for a person who receives a communication in violation of the statute.

112.    As a result of Defendants' violations of the Texas Act, Plaintiff is entitled to recover statutory damages of $500 per violation and attorneys fees.

113.    If the Court finds that Defendants knowingly or intentionally violated the Texas Act, Plaintiff is entitled to recover additional damages as permitted by statute.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

18

B.      Injunctive relief prohibiting Defendants from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to anyone who asked Defendants to stop;

C.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

E.      Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 21st day of July, 2026.

/s/ Samuel J. Strauss
Samuel J. Strauss
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
cmiller@straussborrelli.com

Anthony Paronich
**PARONICH LAW, P.C.**

19

350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com


*Attorneys for Plaintiff*