**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AT FORT WORTH**

**JOSHUA WILSON**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**WASH MASTERS, L.P.**,
**ARADI PROPERTIES, LLC**, and
**OPTSPOT, LLC**,

Defendants.

No. 4:26-cv-00217-O

Honorable Chief District Judge Reed O'Connor

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT ARADI PROPERTIES, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS


Page(s)

INTRODUCTION & BACKGROUND ........................................................................ 1

ARGUMENT ........................................................................................................ 2

I. The TCPA's Do-Not-Call Provisions Apply to Text Messages. ........................................ 2

A. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right. ........................................ 5

II. Plaintiff Adequately Alleges Aradi Is Vicariously Liable for OptSpot's Violations of the TCPA. ........................................ 9

III. Plaintiff Plausibly Alleges that He Is a Residential Telephone Subscriber. .................. 14

IV. Plaintiff Independently States a Claim Under Chapter 305 of the Texas Business and Commerce Code. ........................................ 16

V. Plaintiff Has Article III Standing. ........................................ 18

A. Mr. Wilson alleges a concrete injury sufficient to establish Article III standing. ......... 18

B. Plaintiff's injury is fairly traceable to Aradi because the First Amended Complaint alleges that the messages were sent by OptSpot on Aradi's behalf. ............................ 19

C. Aradi's challenge to prospective relief does not eliminate Plaintiff's standing to seek damages. ........................................ 20

VI. Aradi Has Not Established Insufficient Service, and Alternatively, Any Purported Defect Is Curable. ........................................ 20

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alvarez v. Fiesta Nissan, Inc.,*
2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026) .......... 6-8

*Bosley v. A Bradley Hosp.*,
2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sep. 18, 2025).......... 3

*Cacho v. McCarthy & Kelly, LLP,*
739 F. Supp. 3d 195 (S.D.N.Y. 2024) .......... 14

*Callier v. Am. Auto Grp. Ltd. Liab. Co.,*
2026 U.S. Dist. LEXIS 120642 (W.D. Tex. 2026).......... 7

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663, (2016),.......... 3, 10

*Cole v. C/T Install Am., LLC*,
2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026).......... 3

*Cranor v. 5 Star Nutrition LLC.*,
998 F.3d 686, 688 (5th Cir. 2021).......... *passim*

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
251 F. Supp. 3d 1187 (M.D. Tenn. 2017)..........11, 13

*Cunningham v. Watts Guerra, LLP,*
2024 U.S. Dist. LEXIS 93370 (W.D. Tex. 2024).......... 9, 10

*Dilanyan v. Hugo Boss Fashions,*
2025 U.S. Dist. LEXIS 254358 (C.D. Cal. Dec. 3, 2025) .......... 3

*Dolemba v. Ill. Farmers Ins. Co.*,
213 F. Supp. 3d 988 (N.D. Ill. 2016) ..........11

*Duron v. Kings Capital Holding LLC,*
2026 U.S. Dist. LEXIS 6340 (W.D. Tex. 2026).......... 2, 7, 15

*Esquivel v. Mona Lee*,
2025 U.S. Dist. LEXIS 230841 (S.D. Cal. Nov. 24, 2025) .......... 3

*Evers v. CampaignSidekick, LLC*,
2025 U.S. Dist. LEXIS 201112 (N.D. Ill. Oct. 10, 2025).......... 3

*Guadian v. United Tax Def. LLC*,
2024 U.S. Dist. LEXIS 6572 (W.D. Tex. Jan. 12, 2024) ........................................................ 15

*Hayhurst v. Keller Williams Realty, Inc.*,
2020 WL 4208046 (M.D.N.C. July 22, 2020); ..................................................................... 10

*Hernandez v. Bedford Dental,*
2026 U.S. Dist. LEXIS 23208 (N.D. Ill. Feb. 4, 2026) ............................................................ 3

*Hirsch v. USHealth Advisors, LLC,*
337 F.R.D. 118 (N.D. Tex. 2020) ........................................................................................... 15

*Horton v. MultiPlan Inc.,*
2024 U.S. Dist. LEXIS 123050 (S.D. Tex. July 2, 2024) ....................................................... 15

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. Jan. 13, 2026) ............................................................................. 3, 4

*Hudson v. Palm Beach Tan*,
2024 U.S. Dist. LEXIS 165676 (M.D.N.C. Aug. 12, 2024) ...................................................... 3

*Hunsinger v. Alpha Cash Buyers LLC*,
2022 U.S. Dist. LEXIS 32319 (N.D. Tex. Feb. 24, 2022) ....................................................... 15

*Jackson v. Direct Bldg. Supplies LLC,*
2024 WL 184449(M.D. Pa. Jan. 17, 2024). ........................................................................... 14

*John v. Keller Williams Realty, Inc.,*
2020 WL 10502631 (M.D. Fla. Feb. 4, 2020) ...................................................................11, 12

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014). .................................................................................... 10

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369, 402 (2024) ..................................................................................................... 2, 6

*McGonigle v. Office Depot,*
2025 U.S. Dist. LEXIS 231061 (S.D. Fla. Nov. 25, 2025) ...................................................... 3

*McGonigle v. Shopperschoice.com*,
2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026) ...................................................... 3, 7

*McGonigle v. Teleflora LLC*,
No. 1:25-cv-807, ECF No. 66 (E.D. Va. Mar. 13, 2026) ......................................................... 3

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
145 S. Ct. 2006 (2025) .......... 2

*Mujahid v. Newity*,
2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) .......... 3

*Perrin v. United States*,
444 U.S. 37 (1979) .......... 4

*Powers v. One Technologies, LLC,*
2022 U.S. Dist. LEXIS 134034 (N.D. Tex. July 28, 2022) .......... 15

*Rabbitt v. Rohrman Midwest Motors*,
2026 U.S. Dist. LEXIS 66266 (N.D. Ill. Mar. 27, 2026) .......... 2

*Rubin v. Staples, Inc.*,
2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026) .......... 2

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .......... 4

*Smith v. Liberty Mut. Ins. Co.*,
2021 U.S. Dist. LEXIS 78307 (D. Mass. Apr. 22, 2021) .......... 10

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) .......... 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021). .......... 20

*United States v. Dish Network LLC,*
256 F. Supp. 3d 810 (C.D. Ill. 2017) .......... 11

*Watkins v. EyeBuyDirect, Inc.*,
2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025) .......... 3, 8, 9

*Wilson v. Better Mortg. Corp.*,
2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025) .......... 3, 4

*Wilson v. Easy Spirit, LLC*, No.
2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026) .......... 2

*Wilson v. Hard Eight Nutrition*,
804 F. Supp. 3d 1141 (D. Or. 2025) .......... 3

*Wilson v. MEDVIDI*,
2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025) .......... 3

*Wilson v. Skopos Fin.*,
2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025) .......... 3

*Workman v. CarGuard Admin., Inc.*,
2024 U.S. Dist. LEXIS 11476 (D. Ariz. Jan. 22, 2024) .......... 10

**Statutes**

47 U.S.C. § 227(b) .......... 7, 14
47 U.S.C. § 227(c) .......... *passim*
Tex. Bus. & Com. Code § 302 .......... 17
Tex. Bus. & Com. Code § 304 .......... 17
Tex. Bus. & Com. Code § 305 .......... *passim*

**Rules & Regulations**

Fed. R. Civ. P. 4 .......... 21
Fed. R. Civ. P. 12(b) .......... 20
47 C.F.R. § 64.1200(c) .......... 9
47 C.F.R. § 64.1200(d) .......... 8, 9
47 C.F.R. § 64.1200(e) .......... 15
*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
18 FCC Rcd. 14014 (2003) .......... 15

**Restatements**

Restatement (Third) of Agency § 2.01 .......... 10
Restatement (Third) of Agency § 2.02 .......... 11
Restatement (Third) of Agency § 4.01 .......... 13

**Secondary Authorities**

*Oxford English Dictionary* (2d ed.1989) .......... 4
*Random House Webster's College Dictionary* (1991 ed.) .......... 4
*Webster's Third New International Dictionary* (1981 ed.) .......... 4

## INTRODUCTION AND BACKGROUND

Plaintiff Josh Wilson brings this action arising from a sustained text-message marketing campaign promoting Wash Masters-branded car-wash services. Plaintiff alleges that he received numerous promotional text messages associated with the Wash Masters location in Grand Prairie, Texas, including messages advertising free washes, membership discounts, and other promotions. Plaintiff twice attempted to stop the messages by replying "STOP"—first on September 13, 2024, and again on February 8, 2025—but continued receiving promotional messages after both requests.

Plaintiff initially brought this action against Wash Masters, L.P. Discovery subsequently revealed additional information concerning the entities involved in the challenged campaign. Wash Masters identified Defendant Aradi Properties, LLC ("Aradi") as the franchisee associated with the Grand Prairie Wash Masters location promoted in Plaintiff's messages and identified Defendant OptSpot, LLC ("OptSpot") as the entity most likely responsible for transmitting those messages. Wash Masters further admitted that operators of Wash Masters-branded locations utilized OptSpot to conduct text-message marketing campaigns during the relevant period and produced the franchise agreement governing its relationship with Aradi.

Based on that information and records obtained from OptSpot pursuant to subpoena, Plaintiff filed the First Amended Class Action Complaint on July 22, 2026, adding Aradi and OptSpot as Defendants. The Amended Complaint alleges that Aradi owned and operated the Grand Prairie Wash Masters franchise during the relevant period and that OptSpot provided SMS marketing services and transmitted the challenged messages on behalf of Wash Masters and/or Aradi. It further alleges that the Defendants acted jointly in designing, implementing, managing, approving, directing, transmitting, and benefiting from the challenged telemarketing campaign.

The Amended Complaint contains considerably more than a generalized allegation that Aradi was associated with the Wash Masters brand.

## ARGUMENT

### I. The TCPA's Do-Not-Call Provisions Apply to Text Messages.

The Do Not Call List provisions in TCPA Section 227(c) authorize the FCC to prohibit text messages. Defendant contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the DNC rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. And Defendant's arguments for its restrictive interpretation all fail. The company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to invent statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways. Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

It should come as no surprise then that post *McLaughlin* and *Loper Bright*, the majority of courts have concluded that under the TCPA text messages are calls.[1] Courts in more than thirteen

[1] *See Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026) ("[I]nterpreting § 227(c) to include text messages is consistent."); *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *13 (D. Conn. Mar. 31, 2026) (holding the word "call, in th[e § 227(c)] context," encompasses text messages); *Rubin v. Staples, Inc.*, No. 2:2545515 (WJM), 2026 U.S. Dist. LEXIS 70359, at *17 (D.N.J. Mar. 31, 2026) ("[T]he Court concludes that "telephone call" can encompass text messages for purposes of § 227(c)(5)"); *Rabbitt v. Rohrman Midwest Motors*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *8 (N.D. Ill. Mar. 27, 2026) ("Based on the court's independent examination . . . it agrees with the FCC that

districts, and until just recently, the only circuit court to have squarely addressed the issue—the Ninth Circuit—have held that the DNCR provision covers text messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026) (reaffirming text messages are "calls"). The Supreme Court has also weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'")—a proposition so uncontroversial that it was not even contested by the parties there. The Seventh Circuit's recent, lone departure in

§ 227(c)(5) applies to text messages."); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026) ("The structure of the entire TCPA leads to the conclusion that §227(c) does include text messages."); *McGonigle v. Teleflora LLC*, No. 1:25-cv-807, ECF 66 (E.D. Va. Mar. 13, 2026) (denying motion to dismiss); *McGonigle v. Shopperschoice.Com*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026) ("The Court finds that [] 227(c)(5) applies to cellphone text messages."); *Hernandez v. Bedford Dental*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208, at *3 (N.D. Ill. Feb. 4, 2026) ("[The court] declines to hold that the TCPA does not apply to text messages."); *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025); *Dilanyan v. Hugo Boss Fashions*, No. 2:25-CV-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *8 (C.D. Cal. Dec. 3, 2025) (concluding "a text message is a 'call'" under § 227(c)); *McGonigle v. Office Depot*, No. 25-80069, 2025 U.S. Dist. LEXIS 231061, at *6 (S.D. Fla. Nov. 25, 2025) ("[A] text message is a call for the purpose of the TCPA"); *Esquivel v. Mona Lee*, No. 3:25-cv-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841, at *8 (S.D. Cal. Nov. 24, 2025) (denying motion to dismiss); *Mujahid v. Newity*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (same); *Evers v. CampaignSidekick, LLC*, No. 24 CV 11067, 2025 U.S. Dist. LEXIS 201112, at *9 (N.D. Ill. Oct. 10, 2025) ("[A] text message is also a 'call' for the purpose of Evers's claim under § 227(c)(5)"); *Wilson v. MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, at *9 (N.D. Cal. Oct. 7, 2025) (no distinction between oral and written communications); *Bosley v. A Bradley Hosp.*, No. 25-CV-22336, 2025 U.S. Dist. LEXIS 183986, at *12 (S.D. Fla. Sep. 18, 2025) ("[A] text message constitutes a 'call' under the TCPA"); *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025) ("A telephone solicitation can be a call or text message."); *Wilson v. Skopos Fin.*, No. 6:25-CV-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *12 (D. Or. July 21, 2025); *Wilson v. Hard Eight Nutrition*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025) (applying DNCR provision to text messages); *Hudson v. Palm Beach Tan*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *16-17 (M.D.N.C. Aug. 12, 2024) ("[T]he statutory text … support[s] the conclusion that text messages can establish the basis for a claim under § 227(c)(5).").

*Steidinger* does not disturb that consensus. As explained below, *Steidinger*'s reasoning does not withstand scrutiny, conflicts directly with *Howard*, and has no application within this Circuit, where the district courts have spoken with one voice in reaching the opposite conclusion.

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . ." (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New Int. Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

### A. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right.

Consistent with the statute's text and structure, courts—particularly within the Fifth Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections; telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, the federal courts in Texas and this Circuit have gotten the analysis correct. First, Judge Crane in the Southern District of Texas conducted a comprehensive analysis when analyzing the same motion to dismiss earlier this year:

> The Court is aware of only one other court in this Circuit that has considered the scope of the § 227(c)(5) cause of action post-*McLaughlin*, and none that have analyzed the language directly. *See Duron v. Kings Capital Holding LLC*, No. 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340, 2026 LX 68851 (W.D. Tex. Jan. 13, 2026) (report and recommendation relying on precedent); *see also*, *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-00538-RP, 2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025) (analyzing the regulation at 47 C.F.R. § 64.1200(d), rather than the statute) . . . .
>
> The question, then, is whether the concept of a "text message" [*10] is fairly embraced by the meaning of "telephone call" in 1991. Looking to a dictionary contemporaneous with the TCPA's passage, the relevant definition of "call" was "to get or try to get into communication by telephone." This language is capacious. Thus, a plain-language reading suggests that to send a text message is to "try to get or to get into communication by telephone." . . . . there is nothing in the meaning of "telephone" that excludes the function of a text message. Remarkably relevant here is the classic case of *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987). In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain "one mower" and "one hay loader." Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn "mowers" were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and "hay loaders" were replaced by automatic bailing/tying machines. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that a "'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item but a *class of things* that share some important feature." Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower', . . . because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay."
>
> The Court finds this reasoning persuasive here. Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that

> reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). . . . Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. Later meaning ascribed to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls."
>
> This reading is bolstered by the technology's history. First, it is known that cellphones and text-messaging services displaced pagers (or "beepers") as everyday technology. . . . . Although Plaintiff likely received the text messages at issue via a modern cellphone data messaging service, in 1991 he might very well have received [*14] messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former? . . . At bottom, it is true that a telephone in 1991 was an instrument "for producing sounds at a distance." So is a telephone today. But that instrument may also send messages via "calls." Thus, to make a "telephone call," for purposes of § 227(c)(5), is "to get or try to get into communication" with an "instrument for producing sounds at a distance." A text message therefore falls reasonably within the literal language of the statute. . . . .
>
> Although the literal meaning of the phrase is clear on its own, "text may never be taken out of context." *United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018). That is why "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 492, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015) (quotation omitted). With this in mind, two reasons stand out as to why the subsection containing § 227(c)(5), and the broader structure of the Act, counsel reading the cause of action to include "text messages." . . . . In sum, both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative "telephone calls" to persons on the National Do-Not-Call List. This Court declines to dismiss Plaintiff's claim for lack of capacity to sue.

*Alvarez v. Fiesta Nissan, Inc.,* 2026 U.S. Dist. LEXIS 14155, *7-17 (S.D. Tex.) (cleaned up).

Defendant's criticism of *Alvarez* is misplaced. Contrary to Defendant's characterization, Judge Crane did not simply adopt the broadest conceivable meaning of the word "call." Rather, he undertook the exact analysis required by *Loper Bright*, beginning with the ordinary public meaning of the statutory text in 1991, consulting contemporaneous dictionaries, examining the statutory context and structure, and confirming that reading through established principles of statutory

interpretation. *See Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *10–17. In concluding that a text message falls within the phrase "telephone call," Judge Crane did not rely on agency deference or policy preferences, but on the best reading of the statute itself.

Following Judge Crane, another court in the Fifth Circuit adopted the same analysis in *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13–14 (M.D. La. Feb. 13, 2026). Other courts in the Fifth Circuit have unanimously followed. Indeed, Judge Love explained in the Eastern District of Texas, "As to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages…*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the… TCPA.")…Naturally, this court would follow suit with respect to these provisions of the TCPA having been interpreted to cover text messages."

Finally, as Judge Torres recently held, "The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phones for purposes of the act and more importantly, that text messages are actionable under §227(c)(5)." *Callier*, 2026 U.S. Dist. LEXIS 120642, *18; *see also Duron*, 2026 U.S. Dist. LEXIS 6340, at *12. The Fifth Circuit district courts, including two judges of this District, have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit today's dominant form of communication, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected. The Registry continues to

protect numbers, not loopholes.

Aradi's related argument concerning the implementing regulations fares no better. Aradi argues that §§ 64.1200(c) and (d) cannot apply to text messages because those provisions use the term "call," and further asserts that § 64.1200(d) applies only to an "artificial or prerecorded-voice telephone call." Mot. at 3–4. The first argument simply repackages Aradi's statutory argument and fails for the same reason. As discussed above, a text message is a "call" within the meaning of § 227(c). Courts within this Circuit have likewise applied the regulations implementing § 227(c) to text messages. *See Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-00538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025) ("A telephone solicitation can be a call or text message."); *see also Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155, at *7–17 (S.D. Tex.) (holding that text messages fall within § 227(c)'s prohibition on violative telephone calls).

Aradi's argument concerning § 64.1200(d) also rests on a mistaken premise. Count II does not assert a claim based on the prohibition against artificial or prerecorded-voice calls. It alleges violations of the TCPA's internal do-not-call requirements after Plaintiff repeatedly instructed Defendants to stop sending him telemarketing messages. Section 64.1200(d) requires persons or entities initiating telemarketing to institute procedures for maintaining a list of persons who request not to receive further telemarketing communications, including maintaining a do-not-call list and honoring a consumer's do-not-call request. Plaintiff alleges precisely that violation: Defendants continued sending telemarketing messages after his repeated STOP requests and failed to implement, maintain, or properly administer procedures reasonably designed to honor those requests. Aradi cannot obtain dismissal of Count II by imposing an "artificial or prerecorded voice" element that Plaintiff's § 64.1200(d) claim does not contain.

Indeed, *Watkins* specifically analyzed § 64.1200(d)—the very regulation at issue here—

and rejected the premise that its protections exclude text messages. *See Watkins*, 2025 U.S. Dist. LEXIS 167479, at *6. Thus, whether framed under § 227(c)(5), § 64.1200(c), or § 64.1200(d), Aradi's argument ultimately depends upon the same erroneous proposition that a text message is categorically different from a "call" under the TCPA. For the reasons discussed above, the statutory text and the decisions applying it within this Circuit foreclose that position.

## II. Plaintiff Adequately Alleges Aradi Is Vicariously Liable for OptSpot's Violations of the TCPA.

Aradi next argues that the Amended Complaint fails to plead a basis for holding it vicariously liable for the text messages transmitted by OptSpot. That argument ignores the detailed allegations concerning Aradi's relationship with OptSpot and its role in the specific marketing campaign at issue. Plaintiff does not seek to hold Aradi liable merely because it operated a Wash Masters franchise or because OptSpot happened to advertise Wash Masters services. Rather, the Amended Complaint alleges that Aradi retained and utilized OptSpot to conduct text-message marketing for its location, authorized OptSpot to act on its behalf, and authorized, directed, supervised, or otherwise caused OptSpot to transmit the promotional messages at issue. ECF No. 18 ¶¶ 54, 70, 72, 74. Those allegations, accepted as true and viewed in Plaintiff's favor, are more than sufficient at the pleading stage to support vicarious liability.

Courts hold a TCPA claimant in Plaintiff's circumstance need only raise the "reasonable inference" that the caller acted as Defendant's agent: "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370, at *35 (W.D. Tex. May 23, 2024). In other words, the Court should not allow Defendants to benefit from the obfuscation they created. That is a familiar tactic that courts

reject, and Plaintiff need only raise the "reasonable inference" that Defendants either "apparently authorized or ratified" the calls, even if Defendants did not make them themselves. *Cunningham*, 2024 U.S. Dist. LEXIS 93370, at *35; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016), as revised (Feb. 9, 2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations.").

And considering how telemarketers obfuscate their calling practices, a TCPA claimant need not meet the "usual" pleading standard under a vicarious theory: "[v]icarious liability under the TCPA is a fact-intensive inquiry that does not require the usual level of particularity from the complaint." *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583, 2021 U.S. Dist. LEXIS 78307, at *12 (D. Mass. Apr. 22, 2021) (cleaned up). The standard recognizes that "the information necessary to connect all the players is likely in [Defendants'] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). Thus, Jenkins need only plausibly allege the theory under one of three theories, pleading either actual authority, apparent authority, or ratification. *Workman v. CarGuard Admin., Inc.*, No. CV-23-00961, 2024 U.S. Dist. LEXIS 11476, at *8 (D. Ariz. Jan. 22, 2024).

An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, based on the principal's manifestations, that the principal wishes the agent to act. RESTATEMENT (THIRD) OF AGENCY § 2.01. That authority need not take the form of specific instructions concerning each individual communication. Actual authority may be express or implied from the principal's objectives, the parties' relationship, and the manner in which the principal has authorized the agent to accomplish those objectives. *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020); *see also John v. Keller Williams Realty, Inc.*, No.

6:19-CV-1347-ORL-40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020) (actual authority encompasses acts incidental to or reasonably necessary to accomplish the authorized objective). Indeed, determining whether implied authority existed often requires examination of "the course of the parties' dealings and the generally expected course of business." *Rapid Response*, 251 F. Supp. 3d at 1199. Those principles are particularly important where, as here, a principal allegedly retains another entity for the very purpose of conducting the marketing activity that produced the challenged communications. An agent possesses authority to act in furtherance of the principal's objectives as the agent reasonably understands them, and the principal may be liable for conduct undertaken to accomplish those objectives even though the principal did not dictate each particular act. *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing RESTATEMENT (THIRD) OF AGENCY § 2.02(1)). Thus, a TCPA plaintiff need not allege that the principal personally selected the telephone numbers or pressed the button that transmitted the communications. Allegations permitting the inference that the defendant was involved in the relevant marketing practices and procedures are sufficient to proceed to discovery. *Id.* at 922–23; *Dolemba*, 213 F. Supp. 3d at 997.

The Amended Complaint readily satisfies that standard. Plaintiff does not allege that OptSpot independently decided to advertise an unrelated business from which Aradi happened to benefit. Rather, Aradi operated the particular Grand Prairie Wash Masters location being promoted by the text messages. ECF No. 18 ¶¶ 5, 46. Wash Masters identified Aradi during discovery as the franchisee associated with that location and identified OptSpot as the entity most likely responsible for transmitting the messages. *Id.* ¶¶ 46–47. Wash Masters further admitted that operators of Wash Masters-branded locations used OptSpot to conduct text-message marketing campaigns during the relevant period. *Id.* ¶ 48.

The allegations concerning Aradi's relationship with OptSpot are even more direct. Plaintiff alleges that OptSpot acted as an authorized marketing vendor and agent in transmitting automated promotional text messages promoting Wash Masters-branded services. ECF No. 18 ¶ 54. Aradi itself allegedly "retained and/or utilized OptSpot to conduct text message marketing promoting Wash Masters-branded services." *Id.* ¶ 70. OptSpot, in turn, allegedly transmitted the messages "within the scope of authority granted by Wash Masters and/or Aradi." *Id.* ¶ 72. And Plaintiff expressly alleges that Aradi "retained, authorized, directed, supervised, or otherwise caused OptSpot to transmit automated promotional text messages advertising Wash Masters-branded services." *Id.* ¶ 74. Those allegations describe the principal-agent relationship itself, the objective for which OptSpot was retained, and conduct by OptSpot within the authority allegedly conferred upon it.

The challenged messages also furthered precisely the marketing objective for which Aradi allegedly retained OptSpot. They promoted Aradi's Grand Prairie location, including "Wash Masters Grand Prairie Text Club Rewards" and a "Wash Masters Grand Prairie Black Friday Special." ECF No. 18 ¶ 63. Records obtained from OptSpot further connected Plaintiff's telephone number to an electronic marketing submission associated with the Grand Prairie Wash Masters location. *Id.* ¶¶ 64–65. Thus, the allegations permit the straightforward inference that OptSpot was doing exactly what Aradi allegedly retained it to do—send promotional text messages advertising the Grand Prairie Wash Masters business. Actual authority does not disappear merely because the Amended Complaint does not allege that Aradi separately approved the transmission of each individual text. *See John*, 2020 WL 10502631, at *2.

Aradi's contrary argument effectively demands evidence of the precise instructions exchanged between Aradi and OptSpot before discovery has occurred concerning their

relationship. But implied authority turns on matters such as the parties' course of dealing, the principal's manifestations and objectives, and the manner in which the agent reasonably understood its authority. *See Rapid Response*, 251 F. Supp. 3d at 1199. Here, Plaintiff already alleges that Aradi retained OptSpot for text-message marketing, that OptSpot acted within the authority Aradi granted it, and that the resulting texts advertised Aradi's location. ECF No. 18 ¶¶ 63, 70, 72, 74. Whether discovery ultimately establishes the precise contours of that authority is a factual question; it does not provide a basis for dismissal of a plausibly pleaded agency relationship.

Plaintiff also plausibly alleges ratification. Ratification is the affirmance of another's prior act such that the act is given effect as though performed by an agent acting with actual authority. RESTATEMENT (THIRD) OF AGENCY § 4.01(1). The Amended Complaint alleges that Aradi retained or utilized OptSpot to conduct text-message marketing for Wash Masters-branded services, ECF No. 18 ¶ 70, and that the resulting campaign promoted Aradi's own Grand Prairie location, *id.* ¶¶ 46, 63. Plaintiff further alleges that Aradi benefited from the campaign and knowingly accepted the benefits of OptSpot's marketing activities. *Id.* ¶¶ 74, 78. The campaign was not an isolated message: Plaintiff alleges that promotional messages for the Grand Prairie Wash Masters location continued over an extended period, including after Plaintiff sent repeated STOP requests. *Id.* ¶¶ 34–44, 66–67. On those allegations, Plaintiff has plausibly alleged that Aradi accepted the benefits of the marketing activity undertaken on its behalf rather than repudiating it.

At this stage, Plaintiff need not prove the precise terms of Aradi's arrangement with OptSpot or establish the exact degree of control Aradi exercised over OptSpot's messaging platform. The question is whether the pleaded facts permit a reasonable inference of an agency relationship. They do. Aradi allegedly retained OptSpot to conduct text-message marketing;

OptSpot allegedly acted within the authority Aradi granted; Aradi allegedly authorized, directed, supervised, or caused the messages; the messages promoted Aradi's particular location; and Aradi allegedly benefited from the resulting campaign. ECF No. 18 ¶¶ 46–48, 54, 63–65, 70, 72, 74, 78. Those allegations are more than sufficient to permit discovery into the parties' relationship and to defeat dismissal of Plaintiff's vicarious-liability claim.

## III. Plaintiff Plausibly Alleges that He Is a Residential Telephone Subscriber.

Aradi next argues that Plaintiff cannot state a claim under the TCPA's Do Not Call provisions because the telephone number at issue is a cellular number rather than a residential landline. That argument conflates the type of telephone technology Plaintiff uses with the manner in which he uses it. Section 227(c) protects "residential telephone subscribers"; it does not limit its protections to subscribers to "residential telephone lines." 47 U.S.C. § 227(c)(1). Congress knew how to impose technology-specific limitations and did so elsewhere in the TCPA, expressly referring to both "cellular telephone service" and a "residential telephone line." *See id.* § 227(b)(1)(A)(iii), (b)(1)(B). Section 227(c), by contrast, focuses on the subscriber and whether the telephone service is residential in nature. As courts have recognized, "residential" in this context distinguishes personal or household telephone use from business use; it does not distinguish wired telephones from wireless ones. *See Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 206–07 (S.D.N.Y. 2024); *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024).

The FCC has likewise treated cellular subscribers as eligible for the protections of the National Do Not Call Registry for more than two decades. When establishing the Registry, the FCC expressly determined that wireless subscribers could register their numbers and explained that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *In re Rules & Regulations Implementing the*

*TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The implementing regulations accordingly provide that the National Do Not Call restrictions apply to "any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

Federal courts in Texas have consistently rejected the categorical position Aradi advances. In *Hunsinger v. Alpha Cash Buyers LLC*, No. 3:21-CV-2198-D, 2022 U.S. Dist. LEXIS 32319, at *5–7 (N.D. Tex. Feb. 24, 2022), this Court recognized that a cellular telephone may qualify as residential for purposes of the TCPA. The same conclusion was reached in *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020), and *Powers v. One Technologies, LLC*, No. 3:21-CV-2285-X, 2022 U.S. Dist. LEXIS 134034, at *5–7 (N.D. Tex. July 28, 2022). More recently, *Horton v. MultiPlan Inc.*, No. 4:23-cv-03636, 2024 U.S. Dist. LEXIS 123050, at *20–21 (S.D. Tex. July 2, 2024), relied on *Hunsinger*, *Hirsch*, *Powers*, and the FCC's 2003 Order in concluding that allegations that a plaintiff owned a residential cellular number registered on the National Do Not Call Registry sufficiently alleged residential-subscriber status at the pleading stage.

Texas courts have continued to apply that rule. *See Duron v. Kings Cap. Holding LLC*, No. EP-25-CV-00176-KC, 2026 U.S. Dist. LEXIS 6340, at *10 (W.D. Tex. Jan. 14, 2026) (recognizing that a cellular telephone may qualify as residential when the plaintiff alleges residential use); *Guadian v. United Tax Def. LLC*, No. EP-23-CV-00349-KC, 2024 U.S. Dist. LEXIS 6572, at *2–3 (W.D. Tex. Jan. 12, 2024) (same). Nor does Fifth Circuit precedent support Aradi's proposed limitation. The Fifth Circuit has explained that the TCPA "cannot be read to regulate unsolicited telemarketing only when it affects the home" because Congress sought to address nuisance and invasions of privacy "in a broader set of circumstances." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 691 (5th Cir. 2021). Unlike the plaintiffs in the cases upon which Aradi relies, Wilson

specifically alleges facts demonstrating residential use. He alleges that the number at issue is his personal cellular telephone number, that he uses it for personal, residential, and household purposes, that he is the sole person responsible for paying the expenses associated with the number, that those expenses are not reimbursed by any business or employer, and that he does not claim them as a business expense or tax deduction. ECF No. 18 ¶¶ 34–37. He further alleges that the number has been registered on the National Do Not Call Registry since November 17, 2024. *Id.* ¶ 34. Those allegations must be accepted as true at the pleading stage and establish precisely the residential use that the Texas cases require. Aradi therefore cannot obtain dismissal merely because Wilson receives his residential telephone service through a cellular telephone rather than a landline.

## IV. Plaintiff Independently States a Claim Under Chapter 305 of the Texas Business and Commerce Code.

Aradi's two arguments concerning Plaintiff's Texas claim suffer from the same problem: they do not address the claim actually pleaded. First, Aradi contends that Count III is merely derivative of Plaintiff's TCPA claims and therefore necessarily fails if Counts I and II are dismissed. But Chapter 305 expressly creates a civil action for a communication that violates either "47 U.S.C. Section 227, a regulation adopted under that provision, <u>or Subchapter A</u>" of Chapter 305. TEX. BUS. & COM. CODE § 305.053(a) (emphasis added). The statute therefore recognizes alternative grounds for liability: a violation of the TCPA or its regulations, on the one hand, or an independent violation of Chapter 305's own substantive prohibitions, on the other.

Plaintiff pleads the latter. Count III alleges that Defendants used an automatic dialing announcing device to transmit telephone solicitations to Plaintiff's cellular telephone without his prior express consent in violation of Chapter 305. ECF No. 18 ¶¶ 105–11. Chapter 305 independently prohibits a person from making a telephone call or using "an automatic dial

announcing device to make a telephone call for the purpose of making a sale" to a qualifying mobile telephone without the called person's consent. TEX. BUS. & COM. CODE § 305.001. Thus, even if Aradi prevailed on its separate challenges to Plaintiff's federal § 227(c) claims, that would not dispose of Count III. Aradi must demonstrate that Plaintiff fails to state a claim under Chapter 305 itself. Aradi alternatively argues that Chapter 305 categorically excludes text messages because § 305.001 uses the phrase "telephone call," while other provisions of Texas law expressly reference text messages. But the Legislature did not define "telephone call" in Chapter 305 to exclude text messages. Nor does § 305.001 use technology-specific language limiting its application to voice communications. It broadly prohibits using an automatic dialing announcing device to "make a telephone call for the purpose of making a sale" to a mobile telephone under the circumstances identified in the statute. TEX. BUS. & COM. CODE § 305.001. Indeed, Chapter 305 expressly concerns communications to mobile telephones, making Aradi's attempt to impose an unstated voice-only limitation particularly inappropriate.

Aradi's reliance on *expressio unius* does not change the statutory language. The Legislature's decision to expressly address text messages in Chapters 302 and 304 does not necessarily establish that the phrase "telephone call" in Chapter 305 excludes them, particularly where the chapters contain different statutory language, definitions, and substantive prohibitions. The Texas Legislature itself has recognized that the meaning and treatment of "telephone call" varies among these chapters. For example, its analysis of S.B. 140 explained that Chapter 304 defines "telephone call" to include text messaging, whereas Chapter 302 historically lacked such a definition—a distinction that produced litigation over whether Chapter 302 reached texts. The Legislature amended Chapter 302 effective September 1, 2025, to address that particular statutory gap. That history does not establish that the separate language of Chapter 305 must be construed

to exclude text messages. More fundamentally, *expressio unius* is an interpretive aid, not a license to insert a categorical exclusion that the Legislature did not enact. Chapter 305's operative prohibition applies to communications made to a "mobile telephone," TEX. BUS. & COM. CODE § 305.001, and its civil-remedy provision deliberately uses the broader term "communication" when identifying actionable conduct. *Id.* § 305.053(a). Indeed, § 305.053 provides a cause of action to "[a] person who receives **a** communication" violating either the TCPA, its implementing regulations, or Chapter 305 itself. *Id.* (emphasis added). The Legislature therefore knew how to describe the actionable conduct broadly and did so in the very provision creating Plaintiff's cause of action. At minimum, Aradi's proposed construction is not a basis for dismissing Count III merely because Plaintiff's federal claims purportedly fail. Plaintiff alleges an independent violation of Chapter 305 arising from Defendants' use of automated technology to transmit sales solicitations to his mobile telephone without consent. ECF No. 18 ¶¶ 105–11. Because § 305.053 expressly authorizes a civil action for violations of Chapter 305 independently of a violation of the TCPA, Count III stands on its own and should not be dismissed on the derivative theory advanced by Aradi.

## V. Plaintiff Has Article III Standing.

Aradi argues that Plaintiff lacks Article III standing because he alleges only statutory violations and because the challenged messages were allegedly transmitted by OptSpot rather than Aradi. Neither argument supports dismissal. The Amended Complaint alleges a concrete injury recognized by the Fifth Circuit and plausibly traces that injury to Aradi's own conduct and the conduct of its alleged agent.

### A. Mr. Wilson alleges a concrete injury sufficient to establish Article III standing.

Plaintiff alleges a concrete injury sufficient to establish Article III standing. In *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 689 (5th Cir. 2021), the Fifth Circuit held that receipt of an

unsolicited advertising text message can constitute a cognizable injury because unwanted telemarketing implicates the nuisance and invasion-of-privacy harms Congress sought to address through the TCPA. *Id.* at 689–90.

Plaintiff alleges precisely that injury. He received numerous unsolicited promotional text messages concerning the Grand Prairie location and continued receiving them even after twice responding "STOP." 998 F.3d at 689–90. Those allegations describe an actual nuisance and invasion of privacy—not merely a statutory violation divorced from concrete harm—and are sufficient under *Cranor*.

**B. Plaintiff's injury is fairly traceable to Aradi because the First Amended Complaint alleges that the messages were sent by OptSpot on Aradi's behalf.**

Aradi next argues that Plaintiff's injury is not fairly traceable to Aradi because OptSpot allegedly transmitted the text messages. Def.'s Mot. 5–6. An injury must be "fairly traceable to the challenged action of the defendant." *Cranor*, 998 F.3d at 689. That requirement is satisfied here.

Aradi argues that Plaintiff "identifies only OptSpot as the sender of the messages" and does not allege any role Aradi played in sending them. Def.'s Mot. at 6. That is not what the First Amended Complaint alleges. Plaintiff alleges that Aradi owned and operated the Wash Masters Grand Prairie franchise; that Aradi retained and utilized OptSpot for text-message marketing; that OptSpot transmitted the challenged messages on behalf of Aradi; that OptSpot acted within the authority provided by Aradi; and that Aradi authorized, directed, supervised, and caused the challenged messages to be sent. ECF No. 18 ¶¶ 46–55, 63–78. Plaintiff also alleges that the messages promoted Aradi's Grand Prairie location and that Aradi benefited from the campaign. *Id.* ¶¶ 63–78.

Those allegations provide the causal connection Article III requires. Aradi's contrary argument depends on disregarding Plaintiff's well-pleaded allegations concerning Aradi's role and

instead treating OptSpot as an independent actor. Whether Plaintiff can ultimately prove that Aradi authorized, directed, supervised, or is otherwise vicariously liable for OptSpot's conduct is a merits question; it does not render Plaintiff's alleged injury untraceable to Aradi at the pleading stage. Because Plaintiff alleges that Aradi retained and utilized OptSpot to conduct its text-message marketing and that OptSpot transmitted the challenged messages on Aradi's behalf and pursuant to Aradi's authority, Plaintiff's injury is fairly traceable to Aradi.

### C. Aradi's challenge to prospective relief does not eliminate Plaintiff's standing to seek damages.

Aradi separately argues that Plaintiff has not alleged a sufficient likelihood of future injury to support injunctive or declaratory relief. Def.'s Mot. at 6. Even assuming that argument were correct, it would not eliminate Plaintiff's standing to seek damages for injuries already suffered. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 415 (2021). As *Cranor* establishes, receipt of an unsolicited advertising text can constitute a concrete injury in fact. 998 F.3d at 689–90. Because Plaintiff alleges that he actually received numerous unwanted promotional texts, he has standing to pursue damages regardless of whether he separately satisfies the requirements for prospective relief.

## VI. Aradi Has Not Established Insufficient Service, and Alternatively, Any Purported Defect Is Curable.

Aradi's Rule 12(b)(5) argument rests on the unsupported assertion that "on information and belief" Salma Sharaf was a family member of Aradi's owner with no authority to accept service. ECF No. 25 at 7. But the Proof of Service states that the process server delivered the summons and First Amended Complaint to Aradi at 3412 Ovilla Road and left them with Salma Sharaf, whom the process server identified under penalty of perjury as a "Manager/Administrator" authorized by appointment or by law to receive service for Aradi. ECF No. 22. Although the Texas Secretary of State records identify Mohamed Sharaf as Aradi's registered agent, they do not

establish that Salma Sharaf lacked authority to accept service. Curiously, Aradi offers no evidence beyond its own "on information and belief" assertion that Salma Sharaf lacked authority to accept service, such as a declaration to that effect, despite being in the best position to establish her relationship to the company.

In any event, even if the Court determines that service was technically deficient, dismissal of the action is unwarranted. Aradi indisputably received the summons and First Amended Complaint and timely appeared through counsel. If the Court concludes that Salma Sharaf was not authorized to accept service, Plaintiff respectfully requests an opportunity to cure that defect by effecting service on Aradi's registered agent rather than dismissal of the action. See Fed. R. Civ. P. 4(m).

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Aradi Properties, LLC's Motion to Dismiss in its entirety. Plaintiff has plausibly alleged that the TCPA's do-not-call protections apply to the challenged text messages, that his personal cellular telephone number constitutes a residential telephone number, that Aradi is directly and vicariously responsible for the messages transmitted on its behalf, and that he suffered a concrete injury fairly traceable to Aradi. Plaintiff also independently states a claim under Chapter 305 of the Texas Business and Commerce Code. Finally, Aradi has not established insufficient service; alternatively, Plaintiff requests leave to cure any technical defect rather than dismissal.

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED this 11th day of September, 2026.

*/s/ Cassandra P. Miller*
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com

*I certify this brief does not exceed 25 pages in compliance with Northern District of Texas Local Civil Rule 7.2(c).*

*/s/ Anthony I. Paronich*
Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*/s/ Sharon K. Campbell*
Sharon K Campbell
**LAW OFFICE OF**
**SHARON K CAMPBELL**
3500 Oak Lawn Ave, Suite 205
Dallas, TX 75219
Telephone: (214) 351-3260
Facsimile: (214) 443-6055
sharon@sharonkcampbell.com

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that on September 11, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 11th day of September, 2026.

Respectfully submitted,

*/s/ Cassandra P. Miller*

Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com