**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| JOSHUA WILSON, on behalf of himself and all others similarly situated, | § | |
| Plaintiff, | § | No. 4:26-cv-00217-O |
| v. | § | |
| WASH MASTERS, L.P., ARADI PROPERTIES, LLC, OPTSPOT, LLC | § | |
| Defendants. | | |

**DEFENDANT ARADI PROPERTIES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Aradi Properties, LLC ("Aradi") moved to dismiss on three independent grounds under Rules 12(b)(6), 12(b)(1), and 12(b)(5), advancing nine distinct arguments. ECF No. 25. Plaintiff's Opposition (ECF No. 30) fails to respond to two of them: (1) Aradi's argument that the First Amended Complaint (the "Complaint") fails to state a claim against Aradi on a direct-liability theory, ECF No. 25 at 1–2; and (2) Aradi's argument that Plaintiff lacks standing to seek injunctive relief, ECF No. 25 at 6. Accordingly, Plaintiff has forfeited any opposition to those points, and dismissal of the corresponding claims and requests for relief is warranted on that basis alone.[1]

On the remaining issues, Plaintiff does not address the statutory text governing the TCPA

---

[1] "Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue." *MCR Oil Tools, LLC v. DMG Mori USA, Inc.*, No. 4:20-cv-560, 2020 WL 13133311, at *9 (N.D. Tex. Sept. 15, 2020) (O'Connor, C.J.).

Plaintiff confirms his abandonment of any injunctive-relief claim. Aradi argued Plaintiff lacks standing to seek injunctive or declaratory relief because the Complaint alleges no imminent harm or substantial risk of future contact from Aradi. ECF No. 25 at 6. Plaintiff does not dispute that point. Instead, he responds only that "[e]ven assuming that argument were correct, it would not eliminate Plaintiff's standing to seek damages for injuries already suffered." ECF No. 30 at 26.

claims, cannot establish Article III standing, and has not established valid service of process. The Court should dismiss the Complaint as to Aradi.

## I. The Court should grant Aradi's 12(b)(6) motion to dismiss for failure to state a claim.

### A. Plaintiff's TCPA claims (Counts I and II) should be dismissed because § 227(c)(5) does not provide a private right of action for text messages.

On the central question presented by Counts I and II, Plaintiff avoids the statutory text raised in Aradi's Motion. Section 227(c)(5) creates a private right of action only for a "person who has received more than one telephone call" in violation of the Federal Communications Commission's ("FCC") do-not-call regulations. 47 U.S.C. § 227(c)(5). Yet Plaintiff alleges only the receipt of text messages, not calls. *See* ECF No. 18 ¶¶ 95, 100, 109. Because text messages are not "telephone call[s]" under the statute's plain text, Counts I and II fail as a matter of law.

#### 1. The Seventh Circuit's *Steidinger* analysis is correct and should be adopted.

Following *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), this Court must interpret § 227(c)(5) according to its text, without deferring to the FCC's contrary gloss. The only court of appeals to decide this question under that framework has held that "telephone call" does not include text messages for purposes of § 227(c)(5). *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026). *Steidinger*'s reasoning—which this Court should adopt—rests on three independent grounds.

***First***, the ordinary public meaning of "telephone call" in 1991 was unambiguous: It denoted a "communication via sound." *Id.* at 535–36. In 1991, Webster's Ninth New Collegiate Dictionary defined "telephone" as "[a]n instrument for reproducing sounds at a distance" and "call" as "to get or try to get into communication by telephone." *Id.* (quoting *Telephone* and *Call*, Webster's Ninth New Collegiate Dictionary (1991)). Both terms are anchored to the transmission of sound—a feature absent from text messaging. *Id*. at 536. The first text message was not sent until after the enactment

of the TCPA. *Id*. at 535. A text message does not reproduce sounds, rather it transmits written characters and therefore falls outside the plain meaning of "telephone call."[2] *Id*. at 536.

***Second***, Congress's word choice within § 227(c) confirms the distinction. When Congress intended to reach non-voice communications, it used the broader term "telephone solicitation," defined to include "a telephone call or message"; its use of the narrower "telephone call" in the private-right-of-action provision was deliberate. *Id.* at 536–37. "Because § 227's definition of telephone solicitation distinguishes between calls and messages, the two must refer to different forms of communication by telephone." *Id*. at 536 (citing *Nielsen v. Preap*, 586 U.S. 392, 414 (2019)). Modern text messages are thus better understood as messages, not calls. *Id.* at 536–37 (explaining that "though Congress in 1991 didn't contemplate text messages—it did consider something analogous, i.e., text-based communications sent by an electronic device through a telephone line," and "it regarded those communications as messages, not calls").

***Third***, Congress has repeatedly amended the TCPA and has expressly defined and referred to "text message[s]" when it intended to regulate them. *See* 47 U.S.C. §§ 227(e)(1), (e)(8)(C); *Steidinger*, 182 F.4th at 539. Congress's decision to add that language elsewhere in the statute while leaving § 227(c) untouched confirms that the private right of action under § 227(c)(5) remains limited to "telephone call[s]." *See Steidinger*, 182 F.4th at 539 (Congress "could have done the same for §

[2] Common sense confirms what the dictionary definitions establish. As one court observed, highlighting a defendant's "cogent" explanation:

> No normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner.

*Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). "This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Id.*

227(c)(5) but did not.").

This Court has applied the same text-first approach to statutory construction and should reach the same conclusion. *See Ams. for Beneficiary Choice v. U.S. Dep't of Health & Hum. Servs.*, 795 F. Supp. 3d 895, 902–03 (N.D. Tex. 2025) (O'Connor, C.J.).[3] Because § 227(c)(5) speaks only of "telephone call[s]," Counts I and II should be dismissed.

**2. The Fifth Circuit's post-*McLaughlin* jurisprudence confirms plain-text fidelity.**

---

[3] At least a dozen other district court decisions, from five districts across three circuits, have undertaken the same analysis within the past year and reached the same result.

*See Davis*, 797 F. Supp. 3d at 1273 (granting motion to dismiss and reasoning that "no ordinary person would think of a text message as a '*telephone* call,' a conclusion "supported by the ordinary public meaning at the time of the provision's enactment" (emphasis in original)); *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 626 (N.D. Ohio 2026) (granting motion to dismiss and reasoning that, "[w]here, as here, the language of the statute is clear, the Court's analysis stops"); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1372 (M.D. Fla. 2026) (granting motion to dismiss because "[t]he text of Section 227(c)(5) is clear, ending the inquiry"); *Radvansky v. Kendo Holdings*, No. 3:23-cv-214, 2026 WL 810929, at *2–3 (N.D. Ga. Feb. 12, 2026) (granting judgment on the pleadings and holding "the statutory text here is clear, and a text message is not a telephone call" (internal quotation marks and citation omitted)); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (granting motion to dismiss); *Richards v. Fashion Nova, LLC*, No. 1:25-cv-1145, 2026 WL 847568, at *1 (S.D. Ind. Mar. 26, 2026) (granting motion to dismiss and holding a text message is not a "telephone call" under § 227(c)(5)); *Richards v. Shein Distrib. Corp.*, No. 1:25-cv-1385, 2026 WL 847584, at *1 (S.D. Ind. Mar. 26, 2026) (same); *Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-cv-242, 2026 WL 1098403, at *1 (N.D. Ga. Apr. 20, 2026) (granting motion to dismiss and holding "Section 227(c)(5) does not apply to text messages"); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-846, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (granting motion to dismiss and reasoning that "[t]he omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call'"); *Royal v. Ga. CVS Pharm., L.L.C.*, No. 1:26-cv-1357, 2026 WL 1537161, at *4 (N.D. Ga. May 8, 2026) (granting motion to dismiss); *Wilson v. Tradercodes, LLC*, No. 1:25-cv-3211, slip op. at 5–6 (N.D. Ga. Mar. 17, 2026), ECF No. 33 (granting judgment on the pleadings and holding that, "under the plain language of the statute, transmissions of text messages do not create a cause of action under § 227(c)(5)"); *Lopresti v. Nouveau Essentials Mktg. LLC*, No. 5:25-cv-282, 2026 WL 964758, at *6 (M.D. Fla. Feb. 26, 2026) (recommending that motion for judgment on the pleadings be granted).*

*Two of the decisions referenced above from the Southern District of Indiana, which sits in the Seventh Circuit, issued while the *Steidinger* appeal was pending and noted as much, but each reached the same conclusion independently, without the benefit of that decision. *Fashion Nova*, 2026 WL 847568, at *1 n.1; *Shein*, 2026 WL 847584, at *1 n.1.

The Fifth Circuit applied the same principle in the TCPA context. In *Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 812 (5th Cir. 2026), the court construed § 227(b)'s consent requirement for auto-dialed and pre-recorded calls and rejected the FCC's longstanding "prior express written consent" requirement for telemarketing calls because it appears nowhere in the statute's text. *Id.* (holding that "Congress permits either written or oral consent" and that "[t]he statute provides no basis for concluding that telemarketing calls require prior express *written* consent but not oral consent"). The same fidelity to plain language compels the same result here: § 227(c)(5) says "telephone call," and this Court should not rewrite it to say "text message."

**3. *Callier*, *Alvarez*, and *McGonigle* depart from the text-first analysis required by *McLaughlin* by redefining "telephone call" to include text messages.**

Though not cited by Plaintiff, Aradi acknowledges the most recent adverse authority from this District: *Callier v. Finish Line, Inc.*, No. 3:25-cv-2331, 2026 WL 2654093 (N.D. Tex. Aug. 19, 2026) (Toliver, M.J.), report and recommendation adopted, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026). The decision relies heavily on *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-343, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026), and *McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152, 2026 WL 413198 (M.D. La. Feb. 13, 2026)—both cited in Plaintiff's Opposition. *See* ECF No. 30 at 11–13. Those cases were wrongly decided and cannot bear the weight Plaintiff places on them.

*Alvarez*—whose reasoning *McGonigle* expressly adopts—and *Callier* begin with the correct framework: the TCPA does not define "telephone call," so the Court must interpret that term according to its "ordinary, contemporary, common meaning" at enactment. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). Text messaging did not exist when Congress enacted the TCPA in 1991. As *Alvarez* put it, "use of the verb 'to text'—now ubiquitous—had no such meaning in 1991." *Alvarez*, 2026 WL 202930, at *4; *Callier*, 2026 WL 2654093, at *3 (adopting the same point). But "[w]hile every statute's *meaning* is fixed at the time of enactment, new *applications* may

arise in light of changes in the world." *Wis. Cent.*, 585 U.S. at 284. The question is therefore "whether the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991." *Callier*, 2026 WL 2654093, at *4 (quoting *Alvarez*, 2026 WL 202930, at *4; *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)).

*Callier* correctly invokes the dictionary but cites only the definition of "call"; it does not examine the definition of "telephone," a critical component of the term "telephone call." *See id.*; 47 U.S.C. § 227(c)(5). In that respect, *Callier* follows *Alvarez*, which reasoned from the dictionary definition of "call" that a "telephone call" broadly encompasses any communication made by telephone. *See Callier*, 2026 WL 2654093, at *4; *Alvarez*, 2026 WL 202930, at *4. But neither decision identifies a dictionary or statutory definition that supports that additional step. *Alvarez* further acknowledged that "no ordinary person would use the word 'telephone call' to refer to a text message," yet declared, "[t]his language is capacious," and concluded that "a plain-language reading *suggests* that to send a text message is to 'try to get or to get into communication by ***telephone***.'" *Alvarez*, 2026 WL 202930, at *4 (emphasis added).

The contemporaneous definition of "telephone" is "an instrument for producing ***sounds*** at a distance; *specif* : one in which ***sound*** is converted into electrical impulses for transmission by wire." *Id.* (citing Webster's Ninth New Collegiate Dictionary 1212 (1990)) (emphasis added). "[W]hen used as a verb, to 'telephone' is to 'communicate by telephone,' to 'send by telephone,' or to 'speak to by telephone.'" *Id*. Hence, there is a difference between a telephone call, which conveys sound, and a written text message, which does not.

The statute's structure provides further support. Sections 227(c)(1)–(4) use "telephone solicitation," which the TCPA defines as "the initiation of a telephone call or message," 47 U.S.C. § 227(a)(4), whereas § 227(c)(5) confers a private right of action only for a "telephone call." Congress

thus distinguished calls from messages within the very provision at issue and treated text transmitted over telephone lines as a "message," not a call. 47 U.S.C. § 227(d)(1)(B).[4] "Capacious" readings like *Alvarez*'s, relied on by both *Callier* and *McGonigle*, erase that distinction by converting a medium Congress labeled a "message" into a "call."

**4. Plaintiff's remaining authorities do not alter the analysis.**

Plaintiff also cites *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026), but the claims in that case arose under § 227(b)(1)(A)(iii) and § 227(b)(1)(B), each enforced through § 227(b)(3)'s separate private right of action, not § 227(c)(5). *Steidinger* drew this precise line, surveying the out-of-circuit authority Plaintiff recycles here and explaining that "all of these cases concern claims brought under § 227(b), not § 227(c)(5)." 182 F.4th at 538. There is no circuit split on the question before this Court.

Additionally, Plaintiff relies on *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), and *Callier v. Am. Auto Grp. LLC*, No. 3:25-cv-231, 2026 WL 1741206, at *6 (W.D. Tex. May 29, 2026) (Torres, M.J.), report and recommendation adopted, 2026 WL 1738124 (W.D. Tex. June 16, 2026). *Campbell-Ewald* predates *McLaughlin*, and *Callier* did not undertake the independent textual analysis that *McLaughlin* now requires. Instead, *Callier* collected decisions that "rely heavily on FCC guidance when finding that § 227(c) covers text messages," many of which likewise predate *McLaughlin*. *See* 2026 WL 1741206, at *7. *McLaughlin* requires this Court to determine for itself the best reading of the text Congress enacted, rather than defer to the FCC's interpretation of it.[5]

---

[4] *Steidinger*'s structural analysis considers the TCPA's telephone fax-machine provisions, recognizing that, although Congress did not contemplate text messages in 1991, "it did consider something analogous, i.e., text-based communications sent by an electronic device through a telephone line." 182 F.4th at 537 (discussing 47 U.S.C. § 227(d)(1)(B)). Critically, *Steidinger* observed that Congress "regarded those communications as messages, not calls." *Id.*

[5] *See El Sayed*, 2025 WL 2997759, at *1 ("[I]t is only th[r]ough the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages. … However, a

Because Congress has authorized a private cause of action for "telephone call[s]," not text messages, and nothing in § 227(c)(5) says otherwise, Counts I and II should be dismissed.

### B. Because Plaintiff's TCPA claims fail, his derivative Texas Telephone Solicitation Act claim (Count III) also fails.

Count III of the Complaint is predicated on the same text messages and the same "telephone call" characterization as Counts I and II. *See* ECF No. 18 ¶¶ 104–13. Because Plaintiff cannot state a TCPA claim for the reasons set forth above, his derivative Texas Telephone Solicitation Act claim fails. "'If no violation of the TCPA exists, there is no violation of' Section 305.053." *Cunningham v. Creative Edge Mktg. LLC*, No. 4:19-cv-669, 2021 WL 2792353, at *6 (E.D. Tex. June 16, 2021) (quoting *Shields v. Dick*, No. 3:20-cv-18, 2020 WL 5522991, at *3 (S.D. Tex. July 9, 2020)), report and recommendation adopted, No. 4:19-cv-669, 2021 WL 3048400 (E.D. Tex. July 20, 2021).

## II. The Court should grant Aradi's 12(b)(1) motion to dismiss for lack of standing.

Aradi acknowledges that *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021), holds that receipt of a single unsolicited text message constitutes injury in fact and that this Court is bound by that decision. Aradi respectfully preserves the argument that *Cranor*—decided one month before *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)—does not survive *TransUnion*'s requirement that an intangible harm bear a "close relationship" to one "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424. The common-law analogue *Cranor* invoked, intrusion upon seclusion, required a substantial intrusion that would be highly offensive to a reasonable person, Restatement (Second) of Torts § 652B (1977). A marketing

'District Court is not bound by the FCC's interpretation of the TCPA." (citing *McLaughlin*, 606 U.S. at 168)); *McGonigle v. Pure Green Franchise Corp.*, No. 25-61164, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026) ("[T]he Court will ultimately resolve this question by applying the canons of construction, analyzing precedent, and looking to other persuasive court opinions, not by deferring to the Federal Communication Commission's interpretation.")

text message deleted in seconds is different in kind, not merely degree, from the sustained invasions that tort redressed. *Cf. Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019), overruled on other grounds by *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). This Circuit's post-*TransUnion* decisions confirm the tightened standard. *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822–25 (5th Cir. 2022) (holding that receipt of a single unlawful collection letter did not establish standing and rejecting efforts to bootstrap standing through privacy-related torts). Plaintiff's allegations here—the receipt of unwanted text messages, without any concrete downstream harm—describe precisely the kind of bare statutory violation *TransUnion* holds insufficient. Aradi preserves this argument for further review and submits that, under a faithful application of *TransUnion*, Plaintiff lacks Article III standing and the Complaint should be dismissed for want of jurisdiction.

### III. Alternatively, the Court should grant Aradi's 12(b)(5) motion to dismiss for insufficient service of process.

Plaintiff reverses the burden governing a challenge under Rule 12(b)(5). Once Aradi challenged service, Plaintiff had to establish that service complied with Rule 4. *Noonkester v. Elite Debt Brokers, LLC*, No. 4:21-cv-700, 2022 WL 3448637, at *2 (N.D. Tex. Aug. 17, 2022) (O'Connor, C.J.) ("When a party challenges the form or method of service, the *serving* party bears the burden of establishing its validity." (emphasis added)); *see also Aetna Bus. Credit v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 436 (5th Cir. 1981) (same). Plaintiff has not done so.

The return establishes that the process server delivered papers to Salma Sharaf, but its bare characterization of her as a "Manager/Administrator … authorized by appointment or by law," ECF No. 22 at 1, does not establish the actual authority required by Rule 4(h)(1)(B). This Court has affirmed that "the entity sought to be served 'must have actually authorized another to accept service of process on the would-be principal's behalf.'" *Golido, LLC v. W. World Ins. Grp.*, No. 4:23-cv-

1236, 2024 WL 1144956, at *3 (N.D. Tex. Feb. 29, 2024) (quoting *Lisson v. ING Groep N.V.*, 262 F. App'x 567, 569 (5th Cir. 2007)), report and recommendation adopted, No. 4:23-cv-1236, 2024 WL 1143522 (N.D. Tex. Mar. 15, 2024) (O'Connor, C.J.). "[E]ven if an individual represents herself as an agent, service is not effectuated unless the individual is actually authorized to receive service." *Arellano v. ADA Logistics, Corp.*, No. 3:20-cv-795, 2021 WL 3631140, at *1 (N.D. Tex. June 17, 2021). The Court may take judicial notice of public Texas Secretary of State filings, as this Court has done. *See Vernon Feeders, LLC v. Cabaniss Dairy, LLC*, No. 7:13-cv-69, 2013 WL 12137768, at *1 (N.D. Tex. July 9, 2013) (O'Connor, C.J.).

As discussed in Aradi's Motion, Aradi's public records affirmatively establish that Mohamed Sharaf (not Salma Sharaf) is Aradi's sole manager and registered agent. ECF No. 25-1 (Ex. A). Plaintiff identifies no appointment, corporate act, declaration, or other evidence establishing that Aradi authorized Salma Sharaf to accept service. Delivery of process to Salma Sharaf is therefore insufficient to establish service on Aradi. Courts in this District have likewise rejected service based on a return that offers only a conclusory assertion of authority, unsupported by facts showing an actual appointment. *See, e.g., Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, No. 3:23-cv-2511, 2024 WL 1121800, at *16 (N.D. Tex. Mar. 13, 2024). Because Plaintiff has not met his burden, the Court should dismiss the Complaint against Aradi without prejudice to its refiling.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint as against Aradi with prejudice under Rule 12(b)(6) or, alternatively, without prejudice under Rules 12(b)(1) or 12(b)(5).

Respectfully submitted,

*By: /s/ Kathryne M. Morris*
**Cathy L. Altman**
Texas Bar No. 00794946
Email: caltman@ccsb.com
**Kathryne (Kate) M. Morris**
Texas Bar No. 24061280
Email: kmorris@ccsb.com
**D. Lance Currie**
Texas Bar No. 24065106
Email: lcurrie@ccsb.com
**Alexander M. Breaux**
Texas Bar No. 24150777
Email: abreaux@ccsb.com
**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
2200 Ross Ave., Suite 1800
Dallas, Texas 75201
(214) 855-3000 – Telephone
(214) 580-2641 – Facsimile

*Attorneys for Aradi Properties, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system on September 25, 2026, which will send notification of such filing to all counsel of record in the above-captioned matter, in accordance with the Federal Rules of Civil Procedure.

*By: /s/ Kathryne M. Morris*
Kathryne (Kate) M. Morris