UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSHUA WILSON, on behalf of himself and all others similarly situated, | § | |
| Plaintiff, | § | |
| vs. | § | No. 4:26-cv-00217-O |
| WASH MASTERS, L.P., | § | |
| Defendant. | § | |

**DEFENDANT WASH MASTERS, L.P.'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Wash Masters, L.P. ("Wash Masters") files this Brief in Support of its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

BACKGROUND .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

**A.** Telephone Consumer Protection Act .......... 3

1. The plain meaning of "telephone call" does not include a text message. .......... 4
2. The better-reasoned cases interpret § 227(c) to cover voice calls only. .......... 7
3. The challenged text messages are not encompassed by 47 C.F.R. § 64.1200(d). .......... 10

**B.** Texas Telephone Solicitation Act .......... 11

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Alvarez v. Fiesta Nissan, Inc.*,
2026 WL 202930 (S.D. Tex. Jan. 26, 2026) .......... 6
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2
*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020) .......... 3
*Baylor Cnty. Hosp. Dist. v. Burwell*,
163 F. Supp. 3d 372 (N.D. Tex. 2016) .......... 4
*Brown v. Waybourn*,
764 F. Supp. 3d 466 (N.D. Tex. 2025) .......... 2
*Callier v. The Finish Line, Inc.*,
No. 3:25-CV-2331-B-BK, 2026 WL 2654093 (N.D. Tex. Aug. 19, 2026) .......... 8
*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) .......... 9
*Cranor v. 5 Star Nutrition, LLC*,
998 F.3d 686 (5th Cir. 2021) .......... 10
*Cunningham v. Creative Edge Marketing LLC*,
No. 419CV00669ALMCAN, 2021 WL 2792353 (E.D. Tex. June 16, 2021) .......... 11
*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) .......... 4, 7
*Einhorn v. LaChance*,
No. CIV. A. H-86-3406, 1987 WL 8391 (S.D. Tex. Mar. 18, 1987) .......... 2
*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .......... 9
*Gen. Guar. Ins. Co. v. Parkerson*,
369 F.2d 821 (5th Cir. 1966) .......... 2
*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) .......... 7, 10
*In re Erickson*,
815 F.2d 1090 (7th Cir. 1987) .......... 6
*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. 2026) .......... 6
*Johnson v. Tarrant Cnty.*,
No. 25-10540, 2026 WL 2455772 (5th Cir. Aug. 21, 2026) .......... 12
*Loper Bright Enterps. v. Raimondo*,
603 U.S. 369 (2024) .......... 4
*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 4
*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) .......... 7, 8
*Sw. Bell Tel., L.P. v. Arthur Collins, Inc.*,
No. CIV. A. 304-CV-0669B, 2005 WL 6225305 (N.D. Tex. Oct. 14, 2005) .......... 9

*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) .......... 4, 7

**Statutes**

47 U.S.C. § 227 .......... 10
47 U.S.C. § 227(a)(4) .......... 8
47 U.S.C. § 227(b) .......... 7, 9, 10
47 U.S.C. § 227(c) .......... Passim
47 U.S.C. § 227(c)(5) .......... 1, 4, 10
47 U.S.C. § 227(d) .......... 8
47 U.S.C. § 227(e) .......... 9
47 U.S.C. § 227(e)(8)(C) .......... 9
47 U.S.C. § 227(e)(8)(E) .......... 9
TEX. BUS. & COM. CODE § 301.001(1). .......... 13
TEX. BUS. & COM. CODE § 304.002(10) .......... 12
TEX. BUS. & COM. CODE § 305.001 .......... 11
TEX. BUS. & COM. CODE § 305.001(1) .......... 11
TEX. BUS. & COM. CODE § 305.053 .......... 11
TEX. BUS. & COM. CODE § 305.053(a) .......... 11

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2

**Regulations**

47 C.F.R. § 64.1200(a), (c) and (d) .......... 1, 2, 10

**Other Authorities**

Truth in Caller ID Act of 2009, Pub. L. No. 111-331, § 2
124 Stat. 3572 (2010) .......... 9
2009 Tex. Sess. Law Serv. Ch. 87 (S.B. 1969) .......... 12

## BACKGROUND

This is a proposed class action brought by Joshua Wilson against Wash Masters, Aradi Properties, LLC ("Aradi"), and OptSpot, LLC ("OptSpot").[1] Wilson alleges that he uses his mobile phone for "personal, residential, and household purposes" and that he placed his phone number on the National Do-Not-Call Registry on November 17, 2024.[2] He alleges he received text messages "promoting Wash Masters-branded car wash services" from a short code between September 13, 2024, and February 11, 2026.[3] He alleges that he responded "Stop" to the short code that sent him the messages on September 13, 2024, and February 8, 2025, but continued receiving text messages from the code.[4]

Wilson sued Wash Masters, alleging violations of the Telephone Consumer Protection Act (the "TCPA") and the Texas Telephone Solicitation Act (the "Texas Act").[5] Specifically, Wilson seeks statutory damages under 47 U.S.C. § 227(c)(5). That statute creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ."[6] An action under § 227(c)(5) may seek an injunction, damages (the greater of actual monetary loss or up to $500 per violation), or both. *Id.* § 227(c)(5)(A), (B), (C). The underlying regulations on which Wilson bases his § 227(c)(5) claims are codified at 47 C.F.R. § 64.1200(c) and (d).[7] Paragraph (c) prohibits "telephone solicitation" to a "residential telephone subscriber" whose number is on the national do-not-call registry, and paragraph (d) requires telemarketers to, *inter*

---

[1] Amended Complaint (ECF 18).
[2] ECF 18 ¶ 35–36.
[3] ECF 18 ¶¶ 41–45, 63.
[4] ECF 18 ¶¶ 42, 44–45.
[5] ECF 18.
[6] ECF 18 ¶¶ 15–16.
[7] ECF 18 ¶¶ 15–16.

*alia*, "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." *Id.* § 64.1200(c), (d)(3).

Wilson purports to bring this suit on his own behalf and on behalf of three groups: First, all persons who put their numbers on the National Do Not Call Registry but nevertheless received multiple "telephone solicitation **call**[s]" (the "National Do Not Call Registry Class"); second, all persons who received two or more "telemarketing **calls** in a 12-month period" from Defendants (the "Internal Do Not Call Class"); and third, all persons in Texas who received more than one marketing text message from Defendants using the same or similar dialing equipment used to contact Wilson (the "Texas Telephone Solicitation Class").[8]

## LEGAL STANDARD

A motion for judgment on the pleadings is "reviewed under the same standard as a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted, that is, whether the complaint provides enough facts to state a claim to relief that is plausible on its face." *Brown v. Waybourn*, 764 F. Supp. 3d 466, 469–70 (N.D. Tex. 2025) (O'Connor, J.). That standard, in turn, tests whether "the facts pleaded [ ] allow the court to infer that the plaintiff's right to relief is plausible." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Although repleading may cure deficiencies in a complaint that fails to state all of the elements of a cause of action, when the required elements have been alleged yet recovery is otherwise barred, repleading serves no purpose." *Einhorn v. LaChance*, No. CIV. A. H-86-3406, 1987 WL 8391, *1 (S.D. Tex. Mar. 18, 1987) (citing *Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966)).

[8] ECF 18 ¶ 81 (emphasis added).

## ARGUMENT

The merits of this motion boil down to one uncontroversial statement: a text message is not a telephone call. That distinction holds true not only in common parlance but also in the proper applications of the Telephone Consumer Protection Act and the Texas Telephone Solicitation Act. Although some courts have stretched the definition of "telephone call" to include text messages, the better-reasoned cases apply common sense and the plain meaning of the relevant statutory text and find that text messages are not covered under either scheme.

### A. Telephone Consumer Protection Act

The TCPA was passed in 1991 to address the trend of "intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020). Section 227(c)(5) of the TCPA reads:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> **(C)** both such actions.

Wilson alleges that Wash Masters initiated more than one "telephone solicitation" to him and the proposed class within a twelve-month period after their telephone numbers had been registered on the National Do Not Call Registry.[9] In his second count, he alleges more plainly that

[9] ECF 18 ¶ 94.

he and the proposed class received "telemarketing text messages."[10] But the factual background of Wilson's complaint makes clear that he received only text messages.[11]

1. <u>The plain meaning of "telephone call" does not include a text message.</u>

Section 227(c)(5) provides a right of action for persons who receive more than one "telephone call" that violates the relevant regulations. The plain meaning of the words in a statute, as reflected in a dictionary, always serves as the starting point of statutory interpretation. *Baylor Cnty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372, 381 (N.D. Tex. 2016) (O'Connor, J.).

As a threshold issue, this Court need not give deference to the Federal Communications Commission's interpretation of § 227(c), which construes the statute to include text messages. In 2025's *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, the Supreme Court clarified that "[t]he District Court is not bound by the FCC's interpretation of the TCPA." 606 U.S. 146, 169 (2025). And in general, district courts are not bound by federal agencies' interpretations of statutes. *Loper Bright Enterps. v. Raimondo*, 603 U.S. 369, 413 (2024).

The phrase "telephone call," which is not defined in Section 227(c), has a plain meaning that is easily discernible to any reader. It means an attempt to speak verbally to another person by telephone by dialing a phone number, and it includes the subsequent verbal interaction if the call recipient answers the phone. No modern English speaker would use the words "call" or "telephone call" to describe a text message. *See Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (explaining common-sense understanding of "telephone call" and holding that § 227(c) does not cover text messages).

Nor was the situation any different in 1991, the year the TCPA became law. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) (explaining that the relevant meaning of a statutory term

---

[10] ECF 18 ¶ 100.
[11] ECF 18 ¶ 33–80.

is the one in use when the statute was enacted). The 1990 edition of Webster's Dictionary defines the terms as follows: "telephone" meant "an instrument for reproducing sounds at a distance; *specif*: one in which sound is converted into electrical impulses for transmission by wire," and "call" meant "to get or to try to get in communication with by telephone." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990). A telephone call, then, was a communication or an attempt to communicate using an instrument used for reproducing sounds at a distance.

Several characteristics of telephone calls differentiate them from other means of communication available in 1991 and illustrate the scope of the statutory phrase. First, a telephone call starts when the caller uses a code to summon a similar device accessible by another person. Second, a telephone call prompts the recipient to answer immediately. Unlike letters, telegrams, faxes, or emails—which can be answered a day, a week, or even a month after they are received—a telephone call is considered "missed" if not answered right away. Third, and closely related, a telephone call enables synchronous communication. If a call connects, two or more call participants can be understood as soon as they speak back and forth to each other. And finally, and perhaps most importantly, a telephone call is a means of communicating using the sound of one's voice.

Text messages share only the first feature with telephone calls. Sending a text, like placing a telephone call, starts when a person enters a phone number or a similar code associated with the intended recipient's device. But a text message need not be answered as soon as it is received. Nor does a text exchange require both users to be communicating synchronously. One person sends a text; the recipient may wait ten minutes before he reads it and responds. The original sender may read the response immediately or could wait another hour or another day to reply. And finally, a text message is communication through written language—not spoken words.

Wilson contends that text messages fall within the meaning of the phrase "telephone call." He quotes several paragraphs of *Alvarez v. Fiesta Nissan, Inc.*, a recent decision from the United States District Court for the Southern District of Texas, that held § 227(c) covered text messages. 2026 WL 202930 (S.D. Tex. Jan. 26, 2026). In *Alvarez*, Judge Crane found analogous a Seventh Circuit decision interpreting the phrases "mower" and "hay loader" and holding that the terms, which were part of the text of a 1935 statute, aptly applied to modern farming machinery, including "hydraulic, tractor-mounted haybines with hay conditioners" and "automatic bailing [sic]/tying machines." *Id.* at *4 (citing *In re Erickson*, 815 F.2d 1090, 1092–93 (7th Cir. 1987)).

> Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower', ... because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay." . . . Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone.

*Id.* Wash Masters agrees with Judge Crane's logical approach but disagrees with the conclusion he reached. Judge Crane appeared to conclude that the voice-calls-only approach rested on the premise that the term "telephone" in § 227(c) referred only to "a telephone as existed in 1991," and he rejected that premise. *Alvarez*, 2026 WL 202930 at *5. Wash Masters agrees that such a reading is too narrow. Wash Masters does not dispute that modern smartphones—like Plaintiff's iPhone—are "telephones" within the meaning of the TCPA. *See James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1372 (M.D. Fla. 2026) (disagreeing with *Alvarez* and holding that voice calls to modern smartphones are covered). But extrapolate *Alvarez*'s farming analogy: while a mower with a built-in entertainment console is still a mower, sitting in the mower listening to music is not *mowing*. Likewise, a text message—even when sent from a device that is designed primarily to make telephone calls—is not a telephone call. "This conclusion—supported by the

ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis*, 797 F. Supp. 3d at 1273.

2. The better-reasoned cases interpret § 227(c) to cover voice calls only.

The only court of appeals to interpret § 227(c) after *Loper Bright* and *McLaughlin* held that it does not cover text messages. *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026). Wilson asserts that the Ninth Circuit "squarely addressed the issue" in *Howard v. Republican National Committee* and found that the Do-Not-Call-Registry provision covers text messages.[12] 164 F.4th 1119 (9th Cir. 2026). While *Howard* did hold that a text message could be a "telephone call," it did so in the context of § 227(b), a separate subsection not implicated in this case.

That leaves *Steidinger* as the only post-*Loper Bright* and *McLaughlin* court of appeals to deal "squarely" with § 227(c). *Steidinger* makes an iron-clad textual argument for limiting the statute's application to calls. First, the Seventh Circuit started—as it must—with the plain text. *Steidinger*, 182 F.4th at 535. It was "undisputed" that "telephone call" would not have included text messages in 1991 because the first text message was not sent until a year later. *Id.* The Seventh Circuit went on to consider whether "changes in the world" justified a "new application[ ]" of the statute. *Id.* (citing *Wis. Cent. Ltd.*, 585 U.S. at 284). Here, they did not. "Text messages," the court explained, "do not reproduce sounds, suggesting that they do not qualify as a new application of telephone call within the meaning of that term." *Id.*

The *Steidinger* court expounded a second basis for finding texts excluded from § 227(c): the contrast between the terms "telephone solicitation" and "telephone call." *Id.* Other paragraphs within § 227(c) refer to "telephone solicitations," which the TCPA defines as "the initiation of a *telephone call or message* for the purpose of encouraging the purchase or rental of, or investment

[12] ECF 30 at 3.

in, property, goods, or services, which is transmitted to any person" with some exceptions. 47 U.S.C. § 227(a)(4) (emphasis added). Section 227(d) puts limits on the sending of "any *message* via a telephone facsimile machine," indicating that "message" carries a meaning that encompasses, among other things, a fax. The court observed that faxes, which existed in 1991, are more analogous to texts than telephone calls are, given that the former involve sending an electronic text-based message over a phone line. *Steidinger*, 182 F.4th at 537. "And [Congress] regarded those communications as messages, not calls." *Id.* The private right of action mentions only "telephone call[s]," not telephone *solicitations*. Because Congress is presumed to mean two different things when it uses two different terms in the same section, the "best reading of § 227(c)(5) is . . . that it provides a narrower remedy than recovery for all forms of telephone solicitations; plaintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone solicitations (which include not merely calls but also messages)." *Id.* at 536.

Caselaw to the contrary—including one case from the Northern District of Texas—provides no satisfactory answer to the points raised in *Steidinger*. Judge Boyle of the Dallas Division of this District, adopting Magistrate Judge Toliver's findings, conclusion, and recommendation, denied a motion to dismiss certain claims under the TCPA, finding that § 227(c) applied to text messages. *Callier v. The Finish Line, Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093 (N.D. Tex. Aug. 19, 2026), *report and recommendation adopted*, No. 3:25-CV-2331-B-BK, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026). *Callier* relied heavily on *Alvarez*, which is discussed above herein. *Id.* at *2–6. *Callier* attempts to avoid the consequence of the distinction between "telephone call" and the more broadly defined "telephone solicitation" on the ground that Congress may have "intended to broaden [§] 227(c)(5)'s cause of action to apply to all telephone solicitations covered by the subsection." *Id.* at *4. But the only intent that matters is Congress's

*expressed* intent; regardless, the fact is that a distinction exists in the wording between the two terms. Finally, *Callier* does not interact with *Steidinger*, the only court of appeals to decide the issue. *Id.* The Court is not bound to follow *Callier*'s lead by virtue of its origin within this District. *See Sw. Bell Tel., L.P. v. Arthur Collins, Inc.*, No. CIV. A. 304-CV-0669B, 2005 WL 6225305, at *5 (N.D. Tex. Oct. 14, 2005) (citing Amy Coney Barrett, *Stare Decisis and Due Process*, 74 COLO. L. REV. 1011, 1015 (2003)).

Another point about the structure of the TCPA supports the conclusion that § 227(c) does not include text messages. In 2010, Congress added another subsection, § 227(e), which explicitly includes both voice calls and text messages. 47 U.S.C. § 227(e); Truth in Caller ID Act of 2009, Pub. L. No. 111-331, § 2, 124 Stat. 3572 (2010). Section 227(e) defines "text message" as "a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service code." 47 U.S.C. § 227(e)(8)(C). In contrast, "voice service" in that subsection means "any service that is interconnected with the public switched telephone network and that furnishes voice communications to an end user" with certain limitations. 47 U.S.C. § 227(e)(8)(E). Congress knew how to refer to text messages and include them with voice calls, and it declined to do so with regard to Wilson's private right of action.

Finally, the Supreme Court has not made it "clear that text messages are 'calls' under the TCPA," as Plaintiff asserts.[13] Instead, the Court in *Campbell-Ewald v. Gomez* (which dealt with § 227(b), not (c)) assumed without deciding that a text was a "call." 577 U.S. 153, 156 (2016). In 2021's *Facebook, Inc. v. Duguid*, the Court reiterated that it was assuming § 227(b) covered texts "without considering or resolving that issue." 592 U.S. 395, 400 n.2 (2021). And while the Fifth

---

[13] *See* ECF 18 ¶ 19.

Circuit in *Cranor* mentioned that "Congress banned . . . robotexts" in the TCPA, it did so as dicta, and in that case only Article III standing was at issue. *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 688 (5th Cir. 2021). None of those authorities should dissuade this Court from following *Steidinger* and the plain text of § 227(c)(5) in finding that a text message is not a "telephone call." Judgment on the pleadings is proper as to Counts I and II.

3. <u>The challenged text messages are not encompassed by 47 C.F.R. § 64.1200(d).</u>

Counts I and II of Wilson's complaint rely on § 227(c)(5) for violations of underlying regulations.[14] Both fail because § 227(c) applies only to telephone calls. But Count II fails for the independent reason that the underlying regulation, 47 C.F.R. § 64.1200(d), cannot reasonably be read to cover text messages. The regulation reads in relevant part:

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

The phrase "artificial or prerecorded-voice telephone call" is an even clearer reference to a traditional telephone call, as opposed to a text. The use of the phrase "artificial or prerecorded voice" in § 64.1200(a) makes clear that "voice" is modified by "artificial" and "prerecorded." And a text message does not use a "voice"—even *Howard*, the Ninth Circuit case interpreting § 227(b), acknowledged that much. *Howard*, 164 F.4th at 1124–25 (explaining that "voice" in the TCPA carries the meaning of the sound "emitted from the human larynx in speaking"). Wilson does not allege that any of the texts he received used an artificial or prerecorded voice, nor could he.[15] Count II should be dismissed on this independent ground.

[14] ECF 18 ¶¶ 93–103.
[15] ECF 18 ¶¶ 99–103.

**B. Texas Telephone Solicitation Act**

The Texas Act creates a cause of action for "[a] person who receives a communication that violates 47 U.S.C. § 227, a regulation adopted under that provision, or Subchapter A [of Chapter 305]." TEX. BUS. & COM. CODE § 305.053(a). Subchapter A of Chapter 305 provides that:

> A person may not make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if:
>
> (1) the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call; and
>
> (2) the called person has not consented to the making of such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device.

TEX. BUS. & COM. CODE § 305.001. Judgment on the pleadings is proper as to Wilson's Texas Act claims for four reasons.

*First*, liability under the Texas Act is dependent on liability under the TCPA. "If no violation of the TCPA exists, there is no violation of Section 305.053." *Cunningham v. Creative Edge Marketing LLC*, No. 419CV00669ALMCAN, 2021 WL 2792353 (E.D. Tex. June 16, 2021), report and recommendation adopted, No. 4:19-CV-669, 2021 WL 3048400 (E.D. Tex. July 20, 2021). Wilson cannot maintain a claim under the TCPA for the reasons set forth above; accordingly, his Texas Act claims necessarily fail.

*Second*, even after amending his pleading, Wilson fails to allege necessary elements of the Texas Act's private right of action. The Texas Act prohibits making a "telephone call," or using an "automated dial announcing device" to do so, only if "the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call." TEX. BUS. & COM. CODE § 305.001(1). Wilson does not allege that his number "is a mobile telephone for which [he] will be charged for" any of

the text messages he received from short code 30400, let alone that Wash Masters knew or should have known that.[16] Dismissal for failure to state a claim—which is governed by the same standard as motions under Rule 12(c)—is proper when "the complaint lacks an allegation regarding a required element necessary to obtain relief." *Johnson v. Tarrant Cnty., Tex.*, No. 4:24-CV-686-O, 2025 WL 438366 (N.D. Tex. Feb. 7, 2025) (O'Connor, J.), *reconsideration denied*, No. 4:24-CV-686-O, 2025 WL 5264144 (N.D. Tex. Apr. 3, 2026), *aff'd sub nom. Johnson v. Tarrant Cnty.*, No. 25-10540, 2026 WL 2455772 (5th Cir. Aug. 21, 2026). Without allegations supporting the essential element that Wash Masters knew Wilson's phone was a mobile phone that would be charged for the specific texts he received, his pleadings are inadequate to survive Rule 12(c).

*Third*, the Texas Act also uses the term "telephone call," which is not defined explicitly in Chapter 305 of the Texas Business & Commerce Code. For the same reasons that apply to the TCPA, the Court should interpret "telephone call" in the Texas Act according to its ordinary meaning. Although the Texas Legislature defined "telephone call" in a separate chapter to include text messages, *see* TEX. BUS. & COM. CODE § 304.002(10), it did so through a 2009 amendment to Chapter 304 that left Chapter 305 (under which Wilson brings this suit) unchanged. 2009 Tex. Sess. Law Serv. Ch. 87 (S.B. 1969). The Legislature knew how to update the language of the Texas Act to include text messages but elected to leave Chapter 305 to be interpreted according to its normal meaning. Furthermore, Wilson alleges that Wash Masters used an "automatic [sic] dialing [sic] announcing device" to send the complained-of text messages. But the Texas Act defines "automated dial announcing device" as:

[16] ECF 18.

> automated equipment used for telephone solicitation or collection that can:
>
> (A) store telephone numbers to be called or produce numbers to be called through use of a random or sequential number generator; and
>
> (B) convey, alone or in conjunction with other equipment, a prerecorded or synthesized voice message to the number called without the use of a live operator.

TEX. BUS. & COM. CODE § 301.001(1). The conveyance of a "prerecorded or synthesized *voice* message to the number called" is part and parcel of the definition of "automated dial announcing device." Because Wilson does not allege he received any phone calls, but only texts, he can plead no facts that give rise to a plausible inference that the *texts* he received were sent using technology that can convey *voice* messages.

*Fourth*, for the sake of judicial economy, this Court should decline to exercise supplemental jurisdiction over the Texas Act claims if it enters judgment on the pleadings regarding the TCPA claims. Judgment on the pleadings is proper as to Count III.

**CONCLUSION**

For the reasons set forth above, Wash Masters respectfully asks the Court to grant its Motion for Judgment on the Pleadings, to dismiss the claims for the reasons set forth therein, and for such other and further relief to which Wash Masters is entitled.

Respectfully submitted,

/s/ W. Andrew Boone

Brian C. Newby
State Bar No. 14947320
bnewby@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
W. Andrew Boone
State Bar No. 24137937
aboone@canteyhanger.com
CANTEY HANGER, LLP
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Telephone: 817-877-2800
Facsimile: 817-877-2807

**ATTORNEYS FOR DEFENDANT WASH MASTERS, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 5th day of October 2026, the attached document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing.

/s/ W. Andrew Boone

Andrew Boone