**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

JOSHUA WILSON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

WASH MASTERS, L.P., OPTSPOT, LLC, and ARADI PROPERTIES, LLC,

Defendants.

No. 4:26-cv-00217-O

Honorable Chief District Judge Reed O'Connor

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT**
**WASH MASTERS, L.P.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS


**Page(s)**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 4

A. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages. ........ 4

B. The plain meaning of the word "call" includes text messages ........ 6

1. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions ........ 12

2. The federal courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right ........ 15

C. Count II Is Not Defeated by Defendant's Reading of 47 C.F.R. § 64.1200(d). ........ 19

D. Plaintiff Independently States a Claim Under the Texas Telephone Solicitation Act. ........ 21

V. CONCLUSION ........ 24

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Abbas v. Selling Source, Ltd. Liab. Co*,
2009 U.S. Dist. LEXIS 116697 (N.D. Ill. 2009). ........ 9

*Alvarez v. Fiesta Nissan, Inc.*,
2026 U.S. Dist. LEXIS 14155 (S.D. Tex. 2026) ........ *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........ 4

*Breda v. Cellco P'ship*,
934 F.3d 1 (1st Cir. 2019)........ 18

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024)........ 12

*Callier v. Am. Auto Grp. LLC*,
2026 U.S. Dist. LEXIS 120642 (W.D. Tex. 2026)........ 17

*Callier v. The Finish Line, Inc.*,
2026 WL 2654093 (N.D. Tex. Aug. 19, 2026)........ *passim*

*Campbell-Ewald Co. v. Gomez,*
577 U.S. 153 (2016)........ 1, 5, 18

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021) ........ 17, 18

*Cunningham v. Creative Edge Marketing LLC*,
2021 WL 2792353 (E.D. Tex. June 16, 2021)........ 22

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025)........ 17

*Duron v. Kings Capital Holding LLC*,
2026 WL 319779 (W.D. Tex. Jan. 13, 2026) ........ 5, 16, 17

*El Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ........ 17

*In re Emanuel "Manny" Hernandez*,
2018 WL 6830220 (F.C.C. Dec. 21, 2018)........ 20

*In re Erickson,*
815 F.2d 1090 (7th Cir. 1987) ........ 11

*Harriel v. Bealls, Inc.*,
2025 WL 2379617 (M.D. Fla. 2025) ........ 12

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017). ........ 9

*Hill v. Shoe Carnival, Inc.*,
2026 WL 217776 (E.D. Tex. Jan. 5, 2026) ........ 17

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) ........ *passim*

*Hudson v. Palm Beach Tan, Inc.*,
2024 WL 4190513 (M.D.N.C. Aug. 12, 2024) ........ 15

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) ........ 10

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ........ 1, 5, 10, 11

*Lozano v. Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010) ........ 9

*McGonigle v. Shopperschoice.com, L.L.C.*,
2026 WL 413198 (M.D. La. Feb. 13, 2026) ........ 1, 5, 16

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ........ 1, 5

*Mujahid v. Newity, LLC*,
2025 WL 3140725 (N.D. Ill. Nov. 10, 2025). ........ 9, 13

*Murphy v. DCI Biologicals Orlando, LLC*,
797 F.3d 1302 (11th Cir. 2015) ........ 18

*Newell v. Children's Dental Health Assoc., LLC*,
026 WL 927378 (E.D. Pa. Apr. 6, 2026) ........ 14

*Pepper v. GVG Capital LLC*,
677 F. Supp. 3d 638 (S.D. Tex. 2023) ........ 20

*Perrin v. United States*,
444 U.S. 37 (1979) ........ 6

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ........ *passim*

*Steidinger v. Blackstone Medical Services, LLC*,
182 F.4th 532 (7th Cir. 2026). ........................................................................... *passim*

*United States v. Palomares*,
52 F.4th 640 (5th Cir. 2022) ........................................................................................ 8

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) .................................................................................... 19

*Warciak v. Subway Rests., Inc.*,
949 F.3d 354 (7th Cir. 2020) ..................................................................................... 6, 8

*Wilson v. Better Mortg. Corp.*,
2025 WL 3493815 (S.D.N.Y. 2025)............................................................................ 12

*Wilson v. MEDVIDI Inc.*,
2025 U.S. Dist. LEXIS 198827 (N.D. Cal. 2025). ........................................................ *passim*

*Wilson v. Skopos Fin., LLC*,
2025 WL 2029274 (D. Or. July 21, 2025).................................................................... 13

*Wisconsin Central Ltd. v. United States*,
585 U.S. 274 (2018)........................................................................................................ 6

**Statutes**

47 U.S.C. § 227...................................................................................................... *passim*

47 U.S.C. § 227(a) ........................................................................................... 4, 13, 14

47 U.S.C. § 227(b) ................................................................................................. *passim*

47 U.S.C. § 227(c) ................................................................................................. *passim*

47 U.S.C. § 227(e) ................................................................................................. *passim*

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act,
"TRACED Act", Pub. L. No. 116-105, 133 Stat. 3274 (2019) ......................................... 14

Tex. Bus. & Com. Code § 301.001 ................................................................................. 23

Tex. Bus. & Com. Code § 304.002 ................................................................................. 24

Tex. Bus. & Com. Code § 305.001 ......................................................................... 3, 21, 23

Tex. Bus. & Com. Code § 305.053 ............................................................................ *passim*

**Rules & Regulations**


Fed. R. Civ. P. Rule 12(b) ........ 4

Fed. R. Civ. P. Rule 12(c) ........ 4

47 C.F.R. § 64.1200 ........ 20

47 C.F.R. § 64.1200(a) ........ 20

47 C.F.R. § 64.1200(c) ........ *passim*

47 C.F.R. § 64.1200(d) ........ *passim*

47 C.F.R. § 64.1200(e) ........ 20

47 C.F.R. § 64.1200(f) ........ 22, 23


**Administrative Decisions**


*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003) ........ 10

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8020 (2015) ........ 10

*Targeting and Eliminating Unlawful Text Messages*, 8 Fed. Reg. 20800, 20802 (2023) ........ 10

*Targeting and Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247, 12256 (2023) ........ 10


**Secondary Authorities**


*"Call"* Black's Law Dictionary (6th ed. 1990) ........ 7

*"Call"* Oxford English Dictionary (2d ed. 1989) ........ 7

*"Call"* Random House Webster's College Dictionary (1991) ........ 7

*"Call"* Webster's Ninth New Collegiate Dictionary (1990) ........ 7

**Secondary Authorities (continued)**

*"Message"*
Black's Law Dictionary (6th ed. 1990) .................................................................... 13

*"Message"*
Oxford English Dictionary (2d ed. 1989) .................................................................... 13

*"Message"*
Random House Webster's College Dictionary (1991) .................................................... 13

*"Message"*
Webster's Ninth New Collegiate Dictionary (1990) ....................................................... 13

*Texting Overtakes Voice in Mobile Phone Usage,*
Meghan Keane, Wired (2008) .................................................................................... 10

*Txtng: The Gr8 Db8*,
David Crystal (2008) ................................................................................................ 13

## I. INTRODUCTION

Defendant Wash Masters, L.P.'s Motion for Judgment on the Pleadings (the "Motion") asks this Court to adopt a newly minted interpretation of the Telephone Consumer Protection Act ("TCPA") that would remove text messages from the protections of the National Do-Not-Call Registry. Under Defendant's theory, a consumer who affirmatively registers his residential telephone number on the Registry—and who even replies "stop" to the sender—may nevertheless receive unlimited unsolicited telemarketing text messages because Congress used the words "telephone call" in § 227(c)(5) in 1991, before text messages existed. Neither the statutory text nor the persuasive authority supports that result.

Defendant relies principally on the Seventh Circuit's recent decision in *Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. 2026). Defendant's Brief in Support of the Motion (ECF No. 36, "Br.") at 7–8. But *Steidinger* is neither controlling nor persuasive. The Supreme Court has recognized that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Defendant does not dispute that modern smartphones are "telephones," Br. at 6, and it does not argue that the courts that have read the word "call" to include text messages misread that word; it argues only that the identical word must mean something narrower in § 227(c)(5). And since *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), courts in this Circuit—including, most recently, a court in this District—have independently examined the statutory language and concluded that § 227(c) applies to text messages. *See, e.g.*, *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *3–6 (S.D. Tex. Jan. 26, 2026); *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 WL 413198, at *4–6 (M.D. La. Feb. 13, 2026); *Callier v. The*

*Finish Line, Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093, at *3–6 (N.D. Tex. Aug. 19, 2026), *report and recommendation adopted*, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026) ("*Finish Line*").

Defendant's challenge to Plaintiff's Texas claim fails as well. Texas Business and Commerce Code § 305.053(a) expressly creates a cause of action for a person who receives a communication that violates § 227 or "a regulation adopted under" § 227. Defendant's arguments to the contrary either assume that its federal argument is correct, which it is not, or address a statutory predicate other than the one on which Plaintiff relies.

The Motion fails for three independent reasons. *First*, the ordinary meaning and statutory context of § 227(c), reinforced by the Supreme Court's and courts of appeals' treatment of text messages under the TCPA, support Plaintiff's reading of "telephone call." *Second*, Defendant's interpretation of § 64.1200(d) overlooks the regulation's separate prohibition on "any call for telemarketing purposes" and the broader regulatory framework governing telemarketing communications. *Third*, even if Defendant's reading of the federal private right of action were correct, it would not dispose of Plaintiff's independent claim under Tex. Bus. & Com. Code § 305.053(a), which expressly authorizes an action for a communication that violates a regulation adopted under the TCPA. Each argument independently confirms that judgment on the pleadings is unwarranted. Thus, the Motion should be denied.

## II. BACKGROUND

Plaintiff Joshua Wilson brings this action under the TCPA based on Defendant Wash Masters, L.P. ("Wash Masters" or "Defendant"), Aradi Properties, LLC, and OptSpot, LLC's unlawful telemarketing practices, arising from telemarketing text messages sent to his residential cellular telephone number. Br. at 1; ECF No. 18. The TCPA was enacted in 1991 to protect

consumers from intrusive telemarketing practices. Congress recognized that unwanted telemarketing calls invade privacy, disrupt daily life, and burden consumers with unwanted communications. To address those concerns, Congress directed the FCC to establish a national database of consumers who object to receiving telemarketing calls and to prohibit telemarketers from contacting those numbers. *See* 47 U.S.C. § 227(c). Pursuant to that authority, the FCC created the National Do Not Call Registry ("DNC Registry"), which allows consumers to register their telephone numbers to indicate that they do not wish to receive telemarketing solicitations. *See* 47 C.F.R. § 64.1200(c)(2). Once a number is registered, telemarketers are prohibited from initiating telephone solicitations to that number absent prior express consent.

Plaintiff invokes that statutory protection here, exercising the very private right of action the TCPA provides to individuals whose efforts to avoid unwanted telemarketing calls have repeatedly been ignored. Plaintiff asserts claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d), and under the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 *et seq. See* Br. at 1–2 (citing ECF No. 18 ¶¶ 15–16, 81).

Plaintiff uses his mobile phone for "personal, residential, and household purposes," and he registered the number on the National Do-Not-Call Registry on November 17, 2024. ECF No. 18 ¶¶ 35–36. Plaintiff alleges that he received text messages "promoting Wash Masters-branded car wash services" from a short code between September 13, 2024, and February 11, 2026. *Id.* ¶¶ 41–45, 63. He alleges that he responded "stop" to the short code on September 13, 2024, and again on February 8, 2025, but continued to receive text messages. *Id.* ¶¶ 42, 44–45.

Count I alleges that Defendant initiated more than one telephone solicitation to Plaintiff and to members of a class within a twelve-month period after their numbers were registered on the

Registry. *Id.* ¶ 94; 47 C.F.R. § 64.1200(c). Count II alleges violations of the do-not-call requirements of 47 C.F.R. § 64.1200(d) and alleges that Plaintiff and the Class received "telemarketing text messages." ECF No. 18 ¶ 100; *see* Br. at 2–4. Count III asserts a claim under Texas Business and Commerce Code § 305.053(a) on behalf of a class of Texas recipients. ECF No. 18 ¶ 81; Br. at 2, 11.

## III. LEGAL STANDARD

A Rule 12(c) motion is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Br. at 2. The Court accepts all well-pleaded facts as true, views them in the light most favorable to the non-moving party, and asks whether the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Finish Line*, 2026 WL 2654093, at *1–2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, the question is whether Defendant is entitled to judgment as a matter of law on the claims Plaintiff pleaded—not whether Defendant's preferred interpretation is the only conceivable reading of the statute. The Motion presents a question of statutory interpretation that does not turn on any disputed fact.

## IV. ARGUMENT

### A. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages.

Defendant contends that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do-Not-Call rules cannot be enforced through that provision when a telemarketing solicitation arrives as a text message. That is incorrect. The flaw in Defendant's argument is that it treats § 227(c)(5)'s reference to a "telephone call" as though that phrase appeared in isolation. It does not. The private right of action expressly enforces regulations promulgated under § 227(c), and those regulations govern "telephone solicitations"—a term the TCPA defines to include a "call or message." 47 U.S.C. §§ 227(a)(4), (c)(5); 47 C.F.R. §

64.1200(c)(2). The Court must therefore consider not only the phrase Defendant isolates, but also the provision's statutory context, the related definitions, and the regulatory prohibition the private right of action enforces. Read together, those provisions support Plaintiff's interpretation.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: the word "call" as used in the TCPA refers to any attempt to communicate by telephone. Defendant's arguments for its restrictive interpretation all fail. Defendant invents statutory requirements—voice, synchronicity, immediacy—that appear nowhere in the statute or in the dictionary definition it quotes. Plaintiff does not ask the Court to defer to the FCC; the Court "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Alvarez*, 2026 WL 202930, at *2 (quoting *McLaughlin*, 145 S. Ct. at 2015). Under those ordinary principles, text messages are calls.

It should come as no surprise, then, that after *Loper Bright* and *McLaughlin,* courts have continued to conclude that under the TCPA that text messages are calls.[1] As Judge Crane observed in *Alvarez*, "courts across the country, including the Fifth Circuit and the Supreme Court, have analyzed other portions of the TCPA without contesting that 'calls' include both voice calls and text messages." 2026 WL 202930, at *1. The Supreme Court has weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald*, 577 U.S. at 156 ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of §

---

[1] *See, e.g.*, *Duron v. Kings Capital Holding LLC*, No. 3:25-cv-149, 2026 WL 319779, at *5–6 (W.D. Tex. Jan. 13, 2026), *report and recommendation adopted*, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026); *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 WL 413198, at *4–6 (M.D. La. Feb. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930, at *3–6 (S.D. Tex. Jan. 26, 2026); *Finish Line*, 2026 WL 2654093, at *3–6.

227(b)(1)(A)(iii).”). Both the Seventh Circuit and the Ninth Circuit have said the same of the TCPA’s autodialer provision. *See Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Howard v. Republican Nat’l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026). The Seventh Circuit’s recent departure in *Steidinger* as to § 227(c) does not disturb that consensus. As explained below, *Steidinger*’s reasoning, as Defendant describes it, does not withstand scrutiny, sits uneasily with the Seventh Circuit’s own earlier statement in *Warciak*, and has no application within this Circuit, where the district courts that have independently analyzed the question have reached the opposite conclusion.

**B. The plain meaning of the word “call” includes text messages**

The starting point is the statute’s text, which confirms that “call” includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute’s enactment, including by looking at contemporaneous dictionaries. *See, e.g.*, *Perrin v. United States*, 444 U.ssS. 37, 42 (1979) (“A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . .” (citation omitted)). Defendant agrees that this is the inquiry. Br. at 4–5 (citing *Wisconsin Central Ltd. v. United States*, 585 U.S. 274 (2018)). But the same passage of *Wisconsin Central* that Defendant cites continues: “while every statute’s meaning is fixed at the time of enactment, new applications may arise in light of changes in the world.” *Finish Line*, 2026 WL 2654093, at *3 (quoting *Wis. Cent.*, 585 U.S. at 284).

Courts have long recognized that the ordinary meaning of a “call” in the TCPA is “to communicate with or try to get into communication with a person by a telephone.” *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009); *see also Howard*, 164 F.4th

at 1123–24. Contemporaneous dictionaries confirm that meaning. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone"). So does the dictionary on which Defendant itself relies, which defined "call" as "to get or to try to get in communication with by telephone." Br. at 5 (quoting *Webster's Ninth New Collegiate Dictionary* (1990)). As Judge Crane put it, "[t]his language is capacious," and "a plain-language reading suggests that to send a text message is to 'try to get or to get into communication by telephone.'" *Alvarez*, 2026 WL 202930, at *4. Those definitions do not require an oral communication; they turn on the means of communication—the telephone. A text message sent to a telephone therefore falls comfortably within the ordinary meaning of a "call." *See Howard*, 164 F.4th at 1123–24.

Defendant offers four "characteristics" that it says distinguish a telephone call from other forms of communication: a call (1) begins when the caller uses a code to summon a device, (2) prompts the recipient to answer immediately, (3) enables synchronous communication, and (4) uses the sound of one's voice. Br. at 5. None of the last three appears in the dictionary definition Defendant itself quotes, and Defendant cites no source for them. Defendant even concedes that a text message shares the first. *Id.* And the TCPA itself refutes the rest, as shown below: the statute uses "call" in connection with paging devices, whose messages were not spoken, were not synchronous, and did not demand immediate answer. Defendant's proposed limitations also confuse the device used to communicate with the form the communication takes. A telephone can transmit communications in different forms; the fact that a particular communication is written rather than spoken does not mean it was not transmitted to a telephone. Indeed, Defendant's own dictionary definition focuses on communicating—or attempting to communicate—"by telephone,"

not on whether the recipient hears a voice or responds in real time. Br. at 5. Because the statute does not impose the additional voice, synchronicity, or immediacy requirements Defendant proposes, the Court should not add them.

Defendant's principal observation—that "[n]o modern English speaker would use the words 'call' or 'telephone call' to describe a text message," Br. at 4—answers a different question than the one the statute poses. As *Alvarez* explained, "a usage which seems obvious now is not always a reflection of the original meaning of the statute," and "the term 'text message' only seems distinct from the idea of a 'telephone call' today because the former term developed in our language specifically to distinguish a text communication from a voice communication." 2026 WL 202930, at *4. The question, therefore, "is not whether Congress contemplated text messages when it enacted the TCPA, but 'whether the concept of a "text message" is fairly embraced by the meaning of "telephone call" in 1991.'" *Finish Line*, 2026 WL 2654093, at *4 (quoting *Alvarez*, 2026 WL 202930, at *4). That is the nature of statutory language: "[i]n their full context, words mean what they conveyed to reasonable people at the time they were written—with the understanding that general terms may embrace later technological innovations." *Alvarez*, 2026 WL 202930, at *4 (quoting *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring)).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak*, 949 F.3d at 356; *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. Defendant dismisses *Howard* because it arose under § 227(b), Br. at 7, but that is the point: absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning

throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). Defendant does not argue that *Howard* misread the word "call"; it argues only that the same word must carry a different meaning one subsection over. The consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025).

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010); *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009). As Judge Crane observed, "[b]y 1990, pagers could display alphanumeric messages, which were sent by calling the pager from a telephone," so that in 1991 a person "might very well have received messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former?" *Alvarez*, 2026 WL 202930, at *4.

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also text messages. *In re Rules & Regulations Implementing the Telephone Consumer Protection*

*Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC has adhered to that position ever since. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (July 10, 2015); *In re Emanuel Manny Hernandez, Click Cash Marketing, LLC, & Rock Solid Traffic*, 2018 WL 6830220, at *1 ¶¶ 3, 10 (F.C.C. Dec. 21, 2018) ("The DNC prohibitions apply to voice calls and text messages. In numerous rulings beginning in 2003, the Commission has held that text messages are calls covered by the TCPA."); 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Wilson v. Medvidi Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025). And texting didn't achieve widespread popularity until the 2000s.[2] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our intuitions today, which reflect a world where texting has been ubiquitous for decades. *Cf. Loper Bright*, 603 U.S. at 386 ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

---

[2] *See, e.g.*, David Crystal, *Toting: The Gr8 Db8* 4 (2008), https://perma.cc/M2Q3-FH44 ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://perma.cc/CB7E-EZQZ (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

Nor does § 227(c)(5)'s use of "telephone call," rather than simply "call," change the analysis. The contemporaneous dictionary on which Defendant itself relies did not define a call as necessarily involving voice communication. It defined "call" as getting or trying to get "in communication with by telephone." Br. at 5. "Telephone" therefore identifies the medium of the communication; it does not impose an unwritten voice requirement. A text message sent by telephone remains a communication by telephone. Defendant's contrary reading, which equates a "telephone" with "an instrument for reproducing sounds at a distance," *id.*, would prove too much. As Judge Crane explained, if "telephone" were "as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with any modern features from falling under the statute." *Alvarez*, 2026 WL 202930, at *5.

Defendant's remaining textual argument is an analogy. Defendant "agrees with Judge Crane's logical approach," which relied on *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987), but argues that "while a mower with a built-in entertainment console is still a mower, sitting in the mower listening to music is not mowing." Br. at 6. The analogy cuts the other way. *Erickson* teaches that "[a] statutory word of description does not designate a particular item . . . but a class of things that share some important feature." *Alvarez*, 2026 WL 202930, at *4 (quoting *Erickson*, 815 F.2d at 1092). The "important feature" of a "telephone call" on Defendant's own 1990 dictionary is the attempt "to get or to try to get in communication with by telephone." Br. at 5. A text message to a telephone number is exactly that. It is not the equivalent of listening to music in the mower; it is the telephone doing the thing the statute regulates. *See Alvarez*, 2026 WL 202930, at *5 ("A text message therefore falls reasonably within the literal language of the statute.").

So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting

"call" to include text messages. *Wilson v. Better Mortg. Corp.*, 2025 WL 3493815, at *9 (S.D.N.Y. 2025). In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3. The statute's structure confirms this reading.

**1. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions**

Much of Defendant's argument focuses on the single use of the phrase "telephone call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. at 14037–39 ¶¶ 33–36, and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases). Defendant does not argue otherwise.

As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra* Part I.a. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny

notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[3] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums. Finally, the purpose of the DNC provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

Defendant's structural arguments do not change the picture. Defendant argues, following *Steidinger*, that because the statute elsewhere refers to "telephone solicitations," which it defines as including a "call or message," 47 U.S.C. § 227(a)(4), and section 227(c)(5) refers only to a "telephone call," Congress must have meant a "narrower remedy." Br. at 7–8. But section 227(c)(5) "is not a standalone provision; rather, it operates to enforce the entire subsection in which it sits." *Finish Line*, 2026 WL 2654093, at *4 (citing *Alvarez*, 2026 WL 202930, at *5). Indeed, § 227(c)(5) authorizes suit for a "violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The regulation at issue in Count I prohibits any "telephone solicitation" to a

[3] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) an oral *or written* communication sent from one person to another") (emphasis added).

registered residential subscriber, 47 C.F.R. § 64.1200(c)(2), and Congress itself defined that term to include a "message." 47 U.S.C. § 227(a)(4). Congress added that definition after text messaging had become commonplace. *Alvarez*, 2026 WL 202930, at *5. "[I]t is equally plausible that by including 'telephone call or message' within the definition of 'telephone solicitation,' Congress intended to broaden 227(c)(5)'s cause of action to apply to all telephone solicitations covered by the subsection." *Finish Line*, 2026 WL 2654093, at *4. Defendant's response—that "the only intent that matters is Congress's expressed intent," Br. at 8–9—does not help it, because the expressed intent is a private remedy for violations of regulations that prohibit "telephone solicitations," a term Congress defined to include messages. Indeed, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Alvarez*, 2026 WL 202930, at *5 (quoting *Medvidi*, 2025 WL 2856295, at *3).

Defendant's reliance on § 227(e) fares no better. Br. at 9. As the court in *Finish Line* explained, "if Congress already understood § 227(c)(5) as applying to text messages through the FCC's interpretation and the TCPA's definition of 'telephone solicitation,' it would have no need to amend the subsection to explicitly reference text messages." 2026 WL 2654093, at *5. And holding that "'telephone calls' encompasses texts under some subsections, but not others, would yield potentially absurd inconsistencies." *Id.* (quoting *Newell v. Children's Dental Health Assoc., LLC*, No. 25-5238, 2026 WL 927378, at *6 (E.D. Pa. Apr. 6, 2026)). Section 227(b) uses the same term—"telephone call"—and, as noted, courts have read it to include text messages for years. That usage has been ratified by Congress, which has legislated on the premise that text messages are covered by § 227(b). *Alvarez*, 2026 WL 202930, at *6 (citing Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019)). That ratification is "only 'conclusive' as to § 227(b); that said, it remains strongly persuasive as to

a subsection of the same statute that uses identical language." *Id.* "If a text message is a 'call' under the statutory language in subsection (b)(1)(A) . . . then there is no reason to assume that a text message could not be a call under subsection (c)(5)." *Finish Line*, 2026 WL 2654093, at *6 (quoting *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-cv-486, 2024 WL 4190513, at *7 n.6 (M.D.N.C. Aug. 12, 2024)).

Ultimately, Defendant's argument rests on an inference from Congress's use of different formulations in different provisions, not on language expressly excluding text messages from § 227(c). But the provision at issue authorizes suit for violations of regulations adopted under the subsection, and the underlying regulation prohibits telephone solicitations to registered residential subscribers. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The relevant question is therefore whether a telemarketing text falls within that statutory and regulatory framework, not whether Congress used the words "text message" in every provision addressing telephone communications. The statutory context and the authorities discussed above support the former reading.

**2. The federal courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right**

Consistent with the statute's text and structure, courts within the Fifth Circuit have held that text messages qualify as calls under § 227(c)(5). Defendant's position would undermine the Registry: if text messages were excluded from § 227(c)'s protections, telemarketers could bypass the Registry simply by shifting from voice calls to texts. Defendant cites no decision from within this Circuit adopting its reading; the authorities it cites for that reading come from Florida and the Seventh Circuit. Br. at 4, 6–8. By contrast, this precise issue has been decided by courts in Texas. In *Alvarez*, Judge Crane independently examined the ordinary meaning of "telephone call" at the time of the TCPA's enactment, the statutory context, and the structure of § 227(c), and concluded that a text message "falls reasonably within the literal language of the statute." 2026 WL 202930,

at *5. Judge Crane further concluded that "both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls' to persons on the National Do-Not-Call List." *Id.* at *6. Accordingly, the court declined to dismiss the plaintiff's § 227(c)(5) claim. *Id.*

Defendant's criticism of *Alvarez* is misplaced. Defendant itself "agrees with Judge Crane's logical approach." Br. at 6. *Alvarez* did not defer to the FCC or rely on policy considerations; it recognized that "it remains incumbent upon district courts to 'independently determine for itself whether the agency's interpretation of a statute is correct,'" and then examined the ordinary public meaning of the statutory language in 1991, contemporaneous dictionaries, and the TCPA's context and structure. 2026 WL 202930, at *3 (quoting *McLaughlin*, 145 S. Ct. at 2015); *see id.* at *3–6. *Steidinger*'s subsequent disagreement with that analysis does not make *Alvarez* any less persuasive.

Following Judge Crane, other courts in the Fifth Circuit adopted the same analysis. *See McGonigle*, 2026 WL 413198, at *4–6; *Duron v. Kings Capital Holding LLC*, No. 3:25-cv-149, 2026 WL 319779, at *5 (W.D. Tex. Jan. 13, 2026) (collecting cases and holding that "interpreting § 227(c) to include text messages is consistent with numerous district court decisions"), *report and recommendation adopted*, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026). And in this District, the court in *Finish Line* "independently reviewed the statutory text and the thorough analyses in *Alvarez* and *McGonigle*," found "the decisions of its sister courts persuasive," and "adopt[ed] their reasoning," concluding that "because text messages fall within § 227(c)'s prohibition on violative 'telephone calls,' Defendant's motion to dismiss on this basis should be DENIED." 2026 WL 2654093, at *3, *6. Defendant acknowledges *Finish Line* but argues that it is not binding and does not "interact with *Steidinger*." Br. at 8–9. Plaintiff agrees that *Finish Line* is not binding; its force

lies in its reasoning, which Defendant does not meaningfully rebut. And *Finish Line* squarely considered the argument that *Steidinger*, as Defendant describes it, adopted—that Congress's use of "telephone call or message" in neighboring provisions, but not in § 227(c)(5), shows that the provisions "have different meanings"—and rejected it. 2026 WL 2654093, at *4 (addressing *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025), and *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)).

Other courts have likewise recognized the weight of authority. Judge Love explained in the Eastern District of Texas, "As to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages . . . . *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ('Robocalls and robotexts are nuisances. Congress banned them in the [TCPA].') . . . . Naturally, this court would follow suit with respect to these provisions of the TCPA having been interpreted to cover text messages." *Hill v. Shoe Carnival, Inc.*, No. 6:25-cv-349, 2026 WL 217776, at *2 (E.D. Tex. Jan. 5, 2026) (Love, J.) (acknowledging the weight of authority supporting application of the TCPA to text messages but resolving the case on an affirmative defense), *report and recommendation adopted*, 2026 WL 216321 (E.D. Tex. Jan. 27, 2026)

Finally, as another judge in this Circuit has held, "The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phones for purposes of the act and more importantly, that text messages are actionable under §227(c)(5)." *Callier v. Am. Auto Grp. LLC*, 2026 U.S. Dist. LEXIS 120642, at *18 (W.D. Tex. 2026) (Torres, J.) *see also Duron*, 2026 WL 319779, at *5.

Defendant's remaining arguments do not move the needle. Defendant notes that *Steidinger*

is "the only court of appeals to interpret § 227(c) after *Loper Bright* and *McLaughlin*." Br. at 7. That is a statement about numbers, not reasoning, and *Steidinger* does not bind this Court. By Defendant's account, *Steidinger* reasoned that text messages "do not reproduce sounds," and so are not a "new application" of "telephone call." *Id.* But that reasoning treats "telephone call" as defined by sound reproduction, which *Alvarez* correctly rejected, 2026 WL 202930, at *5, and which Defendant itself abandons by conceding that a modern smartphone is a "telephone." Br. at 6. *Steidinger*'s second rationale—the contrast between "telephone solicitation" and "telephone call"—is the same argument that *Alvarez* and *Finish Line* considered and rejected. *See supra* Part I.b.

Defendant also argues that the Supreme Court has not "made it 'clear that text messages are "calls" under the TCPA,'" because *Campbell-Ewald* "assumed without deciding" that a text is a call, and because the Fifth Circuit's statement in *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021), was dicta in a standing case. Br. at 9–10. Plaintiff need not show that the Supreme Court has "decided" the question to show that Defendant's reading is out of step with how courts have understood the statute. In *Campbell-Ewald*, the Court described it as "undisputed" that "[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." 577 U.S. at 156. Numerous courts of appeals have said the same. *See Alvarez*, 2026 WL 202930, at *1 n.3 (citing *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communications, such as text messages."), and *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls.")). And whatever label one attaches to *Cranor*'s description of the statute, the Fifth Circuit's recognition that telemarketing text messages "infringe the same privacy interests Congress sought to protect" as telemarketing

phone calls, *id.* at 690 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)), is entirely consistent with the conclusion that Congress's protections for registered numbers reach them.

Accordingly, Defendant has identified no controlling authority requiring the Court to exclude telemarketing text messages from § 227(c)(5), while the statutory text and the persuasive decisions applying it support Plaintiff's reading. The Court should therefore deny the Motion as to Count I.

**C. Count II Is Not Defeated by Defendant's Reading of 47 C.F.R. § 64.1200(d).**

Defendant argues that Count II "fails for the independent reason that the underlying regulation, 47 C.F.R. § 64.1200(d), cannot reasonably be read to cover text messages," because that regulation refers to an "artificial or prerecorded-voice telephone call." Br. at 10. That argument fails for several reasons.

*First*, the argument depends on the same premise as Defendant's challenge to Count I—that a text message is not a "telephone call"—and fails for the reasons given in Part I. Defendant acknowledges that the regulations on which Plaintiff relies, 47 C.F.R. § 64.1200(c) and (d), are the "underlying regulations" for his claims under § 227(c)(5). Br. at 1.

*Second*, Defendant's own block quotation of the regulation refutes it. Section 64.1200(d) provides that "[n]o person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section <u>or any call for telemarketing purposes to a residential telephone subscriber</u> unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." Br. at 10 (quoting 47 C.F.R. § 64.1200(d)) (emphasis added). The regulation thus reaches two categories of conduct, joined by "or": (1) an "artificial or

prerecorded-voice telephone call" made pursuant to certain exemptions, and (2) "any call for telemarketing purposes to a residential telephone subscriber." The modifier "artificial or prerecorded-voice" attaches to the first category. Defendant's discussion of the word "voice" in § 64.1200(a) and in *Howard*'s analysis of § 227(b), Br. at 10, therefore concerns a clause on which Plaintiff does not rely. Count II alleges that Plaintiff and the Class received "telemarketing text messages," Br. at 4 (quoting ECF No. 18 ¶ 100), and whether Plaintiff alleges that any message used an artificial or prerecorded voice is beside the point.

*Third*, the FCC's regulations use "call" to include text messages. Defendant's position that the word "call" in § 64.1200(d) "cannot reasonably be read to cover text messages" ignores how the FCC's regulations use that word. Paragraph (a)(9) of the same regulation exempts certain calls from liability and provides that, "[a]s used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call." *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643–44 (S.D. Tex. 2023) (quoting 47 C.F.R. § 64.1200(a)(9)). As the court in *Pepper* reasoned in rejecting a similar argument, "[t]here is no need to explicitly exempt text messages from a regulation that does not otherwise encompass them." *Id.* And the FCC has stated that "[t]he DNC prohibitions apply to voice calls and text messages," *Hernandez*, 2018 WL 6830220, ¶ 10, and the regulations themselves provide that they are "applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order." *Alvarez*, 2026 WL 202930, at *3 n.5 (quoting 47 C.F.R. § 64.1200); *see also id.* at *3 (citing 47 C.F.R. § 64.1200(e)). Defendant identifies nothing that would exempt paragraph (d) alone from that framework.

Defendant's challenge to Count II therefore fails, and judgment on the pleadings should be denied as to that count.

### D. Plaintiff Independently States a Claim Under the Texas Telephone Solicitation Act.

Wash Masters' challenge to Count III misconstrues the statutory basis of the claim Plaintiff pleaded. Defendant argues first that "liability under the Texas Act is dependent on liability under the TCPA," and that because text messages are not "telephone calls" under § 227(c)(5), the Texas claim necessarily fails. Br. at 11. That argument fails at the threshold because, for the reasons given in Part I, text messages are calls and Defendant's premise is wrong. But it fails for a second reason as well: Count III does not depend upon establishing a violation of the federal private right of action in § 227(c)(5). It rests on an independent cause of action expressly created by Texas law for a person who receives a communication that violates a regulation promulgated under the TCPA.

The statutory text is dispositive. Section 305.053(a) provides that "[a] person who receives a communication that violates 47 U.S.C. Section 227, <u>a regulation adopted under that provision</u>, <u>or</u> Subchapter A may bring an action in this state against the person who originates the communication." Tex. Bus. & Com. Code § 305.053(a) (emphasis added). The Legislature thus identified three alternative predicates for liability: a communication that violates (1) § 227 itself, (2) "a regulation adopted under" § 227, <u>or</u> (3) Subchapter A. *Id.* The Court must give effect to each of those alternatives. Defendant's proposed construction instead effectively deletes the second one by requiring a plaintiff who alleges a violation of an implementing regulation to also establish an independently actionable violation of § 227 itself.

Plaintiff pleads the second statutory alternative. The Amended Complaint alleges that Plaintiff's cellular telephone number was registered on the National Do-Not-Call Registry since November 17, 2024, and that he uses that number for personal, residential, and household purposes. ECF No. 18 ¶¶ 35–36. Defendant sent text messages to that number promoting its car

wash services, including after Plaintiff responded "stop." *Id.* ¶¶ 41–45, 63. The messages therefore constituted "telephone solicitations" under 47 C.F.R. § 64.1200(f)(15), and their transmission to Plaintiff's registered residential number violated § 64.1200(c)(2). *Id.* ¶¶ 93–103.

That is sufficient under the plain language of § 305.053(a). Section 64.1200(c)(2) is indisputably "a regulation adopted under" § 227, and § 305.053(a) expressly authorizes suit when a person receives a communication violating such a regulation. Defendant makes no argument that § 64.1200(c)(2) fails to reach text messages; its only argument is about the federal private right of action, which does not defeat Count III. The Texas Legislature expressly chose to provide a state-law cause of action for receipt of a communication violating "a regulation adopted under" § 227. Tex. Bus. & Com. Code § 305.053(a). Thus, even assuming *arguendo* that § 227(c)(5)'s federal cause of action does not extend to text messages, Defendant still must explain why its messages did not violate § 64.1200(c)(2) or why Texas cannot provide its own remedy for that regulatory violation. Its Motion does neither.

Defendant's only authority for the proposition that the Texas claim is derivative is *Cunningham v. Creative Edge Marketing LLC*, No. 4:19-CV-00669-ALM-CAN, 2021 WL 2792353 (E.D. Tex. June 16, 2021), *report and recommendation adopted*, 2021 WL 3048400 (E.D. Tex. July 20, 2021), which Defendant quotes for the statement that "[i]f no violation of the TCPA exists, there is no violation of Section 305.053." Br. at 11. That proposition does not help Defendant here. A violation exists: the regulations prohibit telephone solicitations to registered residential subscribers, and text messages are calls. And Defendant does not contend that *Cunningham* addressed the independent reference in § 305.053(a) to "a regulation adopted under that provision," or that it held a federal private right of action is a prerequisite to a Texas claim premised on a regulatory violation.

Indeed, Defendant's interpretation creates a serious textual problem. If a plaintiff could sue under § 305.053(a) for a violation of a regulation adopted under § 227 only when that plaintiff also possessed a federal private cause of action under § 227, the Legislature's express inclusion of "a regulation adopted under that provision" would do no independent work. Defendant offers no reason to disregard that statutory choice. The distinction is especially important here because § 64.1200(c)(2) itself prohibits initiating a "telephone solicitation" to a registered residential subscriber, and the regulations define "telephone solicitation" as the initiation of a telephone "call or message" for the purpose of encouraging the purchase of goods or services. 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Plaintiff alleges that Defendant sent precisely such promotional messages to his registered residential number. The Court need not decide that Defendant also violated § 227(c)(5) to give effect to that independent Texas remedy.

Defendant's remaining Texas arguments are directed at a different statutory predicate. Defendant contends that Plaintiff fails to allege that his number is "a mobile telephone for which [he] will be charged" for each text, and that Wash Masters knew or should have known as much, and that the Texas Act's use of "telephone call" and "automatic dial announcing device" does not reach text messages. Br. at 11–13 (quoting Tex. Bus. & Com. Code §§ 305.001, 301.001(1)). But those are the terms of Subchapter A of Chapter 305, and the definitions it uses—the third alternative predicate in § 305.053(a). They are not elements of a communication that violates "a regulation adopted under" § 227, the second alternative, and nothing in § 305.053(a) imports them into that predicate. The Court therefore need not reach Defendant's Subchapter A arguments to deny the Motion as to Count III.

Even if the Court were to reach them, Defendant's own brief concedes that the Texas Legislature has defined "telephone call" elsewhere in the Business and Commerce Code to include

text messages. Br. at 12 (citing Tex. Bus. & Com. Code § 304.002(10)). That concession is consistent with, not contrary to, the ordinary meaning of "call" discussed in Part I.a; the negative inference Defendant draws from the Legislature's 2009 amendment to a different chapter cannot displace that ordinary meaning.

Finally, Defendant asks the Court to decline supplemental jurisdiction over the Texas claim only "if it enters judgment on the pleadings regarding the TCPA claims." Br. at 13. Because the federal claims survive for the reasons given above, that request is moot.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Wash Masters, L.P.'s Motion for Judgment on the Pleadings in its entirety. Text messages are "calls" under § 227(c), and the Seventh Circuit's contrary decision in *Steidinger* is not binding. Count II reaches "any call for telemarketing purposes," and Count III independently survives under § 305.053(a) because Plaintiff alleges that Defendant's messages violated 47 C.F.R. § 64.1200(c)(2), "a regulation adopted under" § 227.

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED this 26th day of October, 2026.

*/s/ Cassandra P. Miller*
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com

*I certify this brief does not exceed 25 pages in compliance Local Civil Rule 7.2(c) of the with Northern District of Texas.*

*/s/ Anthony I. Paronich*
Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*/s/ Sharon K. Campbell*
Sharon K Campbell
**LAW OFFICE OF**
**SHARON K CAMPBELL**
3500 Oak Lawn Ave, Suite 205
Dallas, TX 75219
Telephone: (214) 351-3260
Facsimile: (214) 443-6055
sharon@sharonkcampbell.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Cassandra P. Miller, hereby certify that on October 26, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 26th day of October, 2026.

Respectfully submitted,

*/s/ Cassandra P. Miller*

Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com