UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSHUA WILSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WASH MASTERS, L.P., ARADI PROPERTIES, LLC, and OPTSPOT, LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 4:26-cv-00217-O |

**DEFENDANT WASH MASTERS, L.P.'S RULE 26(a)(2) DISCLOSURE**

Under Rule 26(a)(2) of the Federal Rules of Civil Procedure and this Court's scheduling order, Defendant Wash Masters, L.P. hereby files and serves the attached expert designation and report.

Dated: November 5, 2026

W. Andrew Boone

Brian C. Newby
State Bar No. 14947320
bnewby@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
W. Andrew Boone
State Bar No. 24137937
aboone@canteyhanger.com
CANTEY HANGER, LLP
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Telephone: 817-877-2800
Facsimile: 817-877-2807

**ATTORNEYS FOR DEFENDANT WASH MASTERS, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that, on November 5, 2026, the attached document was electronically served on Plaintiff via email.

W. Andrew Boone
Andrew Boone

## CERTIFICATE OF CONFERENCE

I hereby certify that, on October 27, 2026, I conferred with counsel for Plaintiff about extending the deadline for Wash Masters, L.P. to file and serve its expert materials to November 5, 2026, by agreement, and Plaintiff's counsel was unopposed.

W. Andrew Boone
Andrew Boone

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSH WILSON,<br><br>*Plaintiff*,<br><br>v.<br><br>WASH MASTERS, L.P., ARADI PROPERTIES, LLC, OPTSPOT, LLC.,<br><br>*Defendants*. | Case No. 4:26-cv-00217-O |

# EXPERT REPORT OF DAVID KALAT


I. STATEMENT OF QUALIFICATIONS, PRIOR DEPOSITION/TRIAL TESTIMONY, AND PUBLICATIONS .......... 2

II. DOCUMENTS RELIED UPON .......... 6

III. ANALYSIS AND CONCLUSIONS .......... 7

A. OPTSPOT USED SHORT CODE 30400 FOR MULTIPLE BUSINESSES .......... 9

B. OPTSPOT'S DELIVERY STATUS CODES APPEAR UNRELIABLE .......... 11

C. OPT-OUT MESSAGES ASSOCIATED WITH DIFFERENT BUSINESSES .......... 12

D. RECORDS OF ESTABLISHED BUSINESS RELATIONSHIP .......... 15

IV. RESERVATION OF RIGHTS .......... 16

1. I, David Kalat, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my information and belief.
2. I am a Director at BRG, a leading global strategic advisory and expert services firm. BRG's experts include experienced industry leaders, renowned academics, and leading-edge data scientists. Together, they bring a diversity of proven real-world experience to economics, disputes, and investigations; corporate finance; and performance improvement services that address complex challenges for organizations across the globe. I am a member of the firm's Forensic Technology, Investigations, and Discovery practice group. I lead investigations involving information security and data analytics.
3. I have been retained by counsel for Defendants Wash Masters, L.P. and Aradi Properties, LLC ("Wash Masters" and "Aradi," or "Defendants") to rebut the opinions of Plaintiff's expert Aaron Woolfson.

## I. STATEMENT OF QUALIFICATIONS, PRIOR DEPOSITION/TRIAL TESTIMONY, AND PUBLICATIONS

4. My most recent curriculum vitae, which details my background and qualifications, is attached hereto and includes a complete listing of all prior deposition and trial testimony, as well as all publications I authored in the past ten years.[1]
5. Among those aspects of my background that are relevant to this matter are the following: I hold a Master's Degree in Library and Information Science from the University of Illinois at Urbana-Champaign, which I earned in 2011. Since 1996, the University of Illinois' iSchool has been continuously ranked as the most prestigious MSLIS program in the United States.[2]

---

[1] See Curriculum Vitae attached as Exhibit 1.
[2] https://ischool.illinois.edu/our-school

6. I am certified by the International Society of Forensic Computer Examiners (ISFCE) as a Certified Computer Examiner (CCE). The ISFCE is a private organization dedicated to providing an internationally recognized computer forensics certification, to increase the level of professionalism and further the field and science of computer forensics.[3]

7. I am licensed by the International Information System Security Certification Consortium as a Certified Information Systems Security Professional (CISSP). The CISSP credential is a highly regarded cybersecurity certification. Obtaining the credential requires one to meet rigorous requirements for practical work experience, education, and training.[4]

8. I am certified by the Telecommunications Certification Organization as a Telecommunications Analyst (CTA). The CTA Certification is among the most comprehensive telecommunications certifications available, representing telecom, datacom and network expertise.[5] Obtaining the CTA Certification involves completing sixteen online multimedia courses and passing the corresponding sixteen module exam. The coursework is administered by the Teracom Training Institute, an authorized provider of telecommunications training to the U.S. government under GSA Contract number GS-02F-0053X.

9. I am certified by the Association of Certified Fraud Examiners (ACFE) as a Certified Fraud Examiner (CFE). The ACFE is the world's largest anti-fraud organization, and the CFE credential represents industry-best training in preventing, detecting and investigating fraud.[6] I am the Vice-President and Director of Training for the Greater Chicago Chapter of the ACFE, and Director of Information and Security for the San Francisco Bay Area Chapter.

---

[3] https://www.isfce.com/certification.html
[4] https://www.isc2.org/certifications/cissp.
[5] https://www.teracomtraining.com/online-courses-certification/cta-certification.htm
[6] https://www.acfe.com/cfe-credential

10. I am a licensed Private Detective in the states of Illinois and Texas. I am the agent-in-charge for Berkeley Research Group Investigatory Services of Illinois, LLC, a licensed private detective agency subsidiary of BRG. I am the Primary Company Representative and Designated Officer for BRG's Texas private security license.

11. I am an active member of the Sedona Conference, a nonpartisan, nonprofit research and educational institute dedicated to the advanced study of law and policy regarding data security and privacy law, among other issues.

12. I publish technical and historical research with a focus on the history of information technology. My articles on the intersection of information technology and the law have been published by the *Privacy & Cybersecurity Law Report*; *The Journal of Robotics, Artificial Intelligence & Law*; *InfoSecurity Magazine*, and other publications. Among my publications, my article The Seven Layer Cake of Information Security: A Technical Guide for the Non-Technical Reader, published in *Pratt's Privacy & Cybersecurity Law Report*, provides a discussion of the different technologies used in Internet-based communications.[7]

13. I regularly provide consulting services to call centers to advise on system design and configuration to address liability under TCPA and other telecommunications regulations and laws. This consulting includes but is not limited to monitoring the documentation of consent for member contact databases and/or lead lists; scrubbing member contact databases and/or lead lists to identify and remove certain categories of telephone numbers; and analyzing post-facto call detail reports to verify that call flow was implemented as designed. In that capacity, I have directly accessed the relevant dialer systems to run database queries, extract reports, upload data, and monitor configuration settings.

---

[7] *See* David Kalat, *The Seven Layer Cake of Information Security: A Technical Guide for the Non-Technical Reader*, 6 Pratt's Priv. & Cybersecurity L. Rep. 74, 81 (2020), attached as Exhibit 2.

14. My expert testimony on telecommunications technology has been cited in judicial opinions granting the defendant's motion for summary judgment in, among other cases, Jackson v Papa John's International, Cognizant Technology Solutions, et al., 3:23cv01933 (N.D. Cal. 2023), and denying class certification in Davis v. Capital One, N.A., Civil Action No. 1:22-cv-00903, (E.D. Va. Oct. 20, 2023), and Rowan v. Brock Pierce, No. 3:20cv01648 (D.P.R. 2020).

15. As part of my training as a library and information scientist, and in my professional experience conducting investigations, I have expertise in conducting both manual and automated batch searches of databases of personally identifying information. I have experience designing and maintaining various types of relational databases, and in my practice I routinely forensically preserve, extract, and analyze data from relational databases. This experience includes open-source systems, proprietary systems, large-scale enterprise systems stored on local data centers, cloud-based database systems, and legacy systems running unusual or obsolete platforms.

16. I have experience designing and maintaining various types of relational databases, and in my practice I routinely forensically preserve and extract and analyze data from relational databases. This experience includes open-source systems, proprietary systems, large-scale enterprise systems stored on local data centers, cloud-based database systems, and legacy systems running unusual or obsolete platforms.

17. My employer BRG bills for my time at an hourly rate of $640, which is my standard hourly rate for this type of matter. My compensation is not dependent upon the nature of my conclusions or the outcome of this lawsuit.

## II. DOCUMENTS RELIED UPON

18. In preparing this report, I considered and relied upon the sources cited and/or mentioned in this report, as well as court documents in this case (including the operative complaint), discovery responses and documents produced by the parties in this case, information available through publicly accessible sources, information available to me by virtue of my unique qualifications (such as through access to non-public databases), and my years of experience and knowledge (including my education, training, and professional experiences). My report is based on all of these sources.

- Original Complaint (February 25, 2026)
- First Amended Class Action Complaint (July 22, 2026)
- Wash Master's Response to Plaintiff's First Set of Discovery
- Wash Master's Supplemental Response to Plaintiff's First Set of Discovery
- Wash Master's Response to Plaintiff's Second Set of Discovery
- Wash Master's Supplemental Response to Plaintiff's Second Set of Discovery
- Plaintiff's Responses to Defendant's First Set of Requests for Production
- Plaintiff's Responses to Defendant's First Set of Interrogatories
- Expert Report of Aaron Woolfson and exhibits (September 22, 2026)

**PLAINTIFF'S PRODUCTION:**

- PL-WILSON_000001-000002
- PL-WILSON_000003 (video)

**OPTSPOT PRODUCTION:**

- google-ad-form-submission
- google-ad-screenshot
- received-opt-in
- sent-messages
- Subpoeana to OptSpot

**WASH MASTERS PRODUCTION:**

- 2026.06.01 Portfolio - Wash Masters Production.pdf
- COI.pdf
- liability_001_Redacted1.pdf
- PC Claims Doc-565914782.docx
- PC Claims Doc-565914782.pdf
- WM22_FRANCHISE_AGREEMENT (print).pdf
- WM22_FRANCHISE_AGREEMENT.docx.pdf

- 2026.03.26 Litigation Hold to Franchisees_Redacted.pdf
- 2026.03.26 Wash Masters Litigation Hold Notice Letter - Franchisees 3-26-26_Redacted.pdf
- 2026.04.06 Brooke Daves to Nautilus Reps (Litigation Hold)WM000304.msg
- 2026.04.06 Brooke Daves to OptSpot Reps (Litigation Hold)WM000305.msg
- 2026.04.07 Brooke Daves to Mason Kanjo (forward of email to Nautilus)_Redacted.pdf
- 2026.04.07 Brooke Daves to Nautilus Reps (Follow Up to Litigation Hold)_Redacted.pdf
- 2026.04.07 Brooke Daves to OptSpot Reps (Follow Up to Litigation Hold1)_Redacted.pdf
- 2026.04.07 Jeremy Renken to Brooke Daves (Discontinue)_Redacted.pdf
- 2026.04.07 Jeremy Renken to Brooke Daves (Resp to Lit Hold)WM000317.msg
- 2026.04.07 Litigation Hold to Managers_Redacted.pdf
- 2026.04.08 Hayes Hyde to Brooke Daves (Response to Litigation Hold)_Redacted.pdf
- 2026.04.15 Mason Kanjo to Brooke Daves (thank you)_Redacted.pdf
- 2026.04.21 Brooke Daves to Jeremy Renken (Plaintiff's number)_Redacted.pdf
- 2026.04.22 Jeremy Renken to Brooke Daves (number is blacklisted)WM000334.msg

## III. ANALYSIS AND CONCLUSIONS

19. Plaintiff's expert Aaron Woolfson submitted a Declaration on September 22, 2026 in which he claims to have a "reliable method" to identify certain categories of information. His Declaration, however, is presented in the abstract, general case, without reference to any specific data points contained in any documents produced by Defendants. Each of Mr. Woolfson's opinions assume that certain information will be contained in Defendants' data, and in a format conducive to the analysis he outlined. As it happens, the data in fact contains significant complications with respect to key issues, but Mr. Woolfson neither addresses these issues nor proposes any solution.

20. I understand that Plaintiff proposes to represent three putative classes, whose proposed definitions are set forth below:

    - **National Do Not Call Registry Class**: All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at

least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

- **Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.
- **Texas Telephone Solicitation Class**: All persons within the State of Texas: (1) received one or more marketing text messages from Defendants; (2) using the same or similar dialing equipment used to contact the Plaintiff; (3) within the four years prior to the filing of the Complaint.[8]

21. I observe that identifying records that align with these putative classes involves the following questions:

a) On whose behalf was a text message sent?

b) Was the text message received?

c) Did the recipient opt out of messages?

d) Did the recipient opt into text messages?

22. After examining the documents and data produced by OptSpot, Wash Masters, Aradi, and Plaintiff, it is my opinion that the data produced to date does not identify which text messages were actually received by any consumer; if or when any consumer opted out of Defendants' messages; nor whether the consumers had in fact opted into received those messages. To the extent that any additional data sets may be needed to address these questions, Plaintiff's expert offers no opinion.

[8] First Amended Complaint, par. 81.

23. Mr. Woolfson confidently states that he has "a reliable method to identify which text messages were sent to telephone numbers that were text messaged two (2) or more times in a twelve (12) month period by or on behalf of the Defendant that were registered on the DNC for more than (30) thirty days before the date of each of the text messages" and that he "a reliable method to identify which messages were sent to telephone numbers more than ten (10) days after those numbers had sent a 'stop' style of message."[9] Nevertheless, *even referencing only Plaintiff's own document production*, it is clear that the available data is significantly complicated with respect to these very issues. As discussed in detail below, Plaintiff's production PL-WILSON_000003 shows that he received texts from the short code 30400 on behalf of no fewer than four different car wash companies, of which only one is a Defendant in this matter. This in turn means that any analysis or understanding of when and how Plaintiff sent an opt-out request requires an investigation of text message history from those other non-parties. As I explain below, the available data that has been produced to date leaves an unresolved factual ambiguity about whether Plaintiff sent the opt-out requests that he details in his Complaint. This is therefore a pivotal issue of relevance to the claims, but one that Mr. Woolfson ignores and offers no mechanism by which to address.

### A. OPTSPOT USED SHORT CODE 30400 FOR MULTIPLE BUSINESSES

24. A Common Short Code ("Short Code"), such as 30400, is used by organizations as a network address for text message communications. Short Codes are administered by the Common Short Code Administration (CSCA)[10], an LLC governed by the Wireless Association ("CTIA"), an

[9] Expert Report of Aaron Woolfson, par. 4 and 5.
[10] https://www.usshortcodes.com/about-short-codes/short-codes-101

international trade organization representing the wireless industry.[11] The CSCA leases Short Codes through the program's registry service provider iconectiv.[12]

25. By texting the keyword "help" to a Short Code, it is possible to identify the entity registered to use that network address. Using this process, I verified that Short Code 30400 is registered to OptSpot.




26. I understand that OptSpot is a digital marketing agency that specializes in the car wash industry.[13]

27. Plaintiff's document production includes a video apparently recorded from his phone screen and designated PL-WILSON_000003. I reviewed this video and observe that it shows the user

[11] The acronym CTIA was originally derived from the organization's former name, Cellular Telecommunications Association. See CTIA.org.
[12] See Short Code Registry, accessible online at usshortcodes.com.
[13] https://optspot.com/

scrolling through the history of text communications with short code 30400. These communications show that Plaintiff's phone received text messages from Short Code 30400 that referenced no fewer than four distinct car wash operations—Baywash Car Wash, Slyde's Car Wash, Wash Masters Grand Prairie, and Slappy's Car Wash. Of these, only Wash Masters Grand Prairie is a party to this litigation.[14]

### B. OPTSPOT'S DELIVERY STATUS CODES APPEAR UNRELIABLE

28. Mr. Woolfson stated that part of his methodology for analyzing any call data provided to him in this matter would be to apply a filter to only include text messages "that contain a disposition or duration indicating the transmission of a text message."[15]

29. OptSpot produced a set of records pertaining to certain outbound text communications with Plaintiff's telephone number 4698360892. I observe that this data set includes fields designated "Delivery Status" and "Delivery Reason." I further observe that the specific data values entered in those fields appear in three combinations:

| | |
|---|---|
| DELIVERED | Message delivered to consumer |
| EXPIRED | Message validity period expired |
| N/A | |

30. I observe that the plain face meaning of those pairs suggests that messages designated as "DELIVERED / Message delivered to consumer" were successfully delivered to and received by the recipient, and the ones designated "EXPIRED / Message validity period expired" and/or "N/A" were not.

[14] Wash Master's Response to Plaintiff's First Set of Discovery #3, Wash Master's Supplemental Response to Plaintiff's Second Set of Discovery #3 and #12, and Franchise Agreement WM000001-87.
[15] Expert Report of Aaron Woolfson, par. 25.

31. However, when I compared the entries set forth in OptSpot's production to the aforementioned video PL-WILSON_000003, I see that Plaintiff has a record of having received all of the messages designated "EXPIRED / Message validity period expired" and/or "N/A" but ***does not have*** a record of having received one of the messages designated "DELIVERED / Message delivered to consumer."[16]

32. It is reasonable to expect that OptSpot's records of communications with other recipient telephone numbers will have the same characteristics as those with Plaintiff's, and as such OptSpot's own records of delivery status does not appear to reliably indicate which messages were in fact delivered. Reference to additional external data sources (such as the recipient's own phone records) is required to verify receipt of any message.

**C. OPT-OUT MESSAGES ASSOCIATED WITH DIFFERENT BUSINESSES**

33. In the Complaint, Plaintiff alleges that he sent opt-out messages with the keyword "stop" to 30400 on two occasions, first on September 13, 2024 and subsequently on February 8, 2025.[17]

34. These text messages from 4698360892 to 30400 are not documented in any of the materials produced by OptSpot. It is unclear if any records of these messages exist in OptSpot's records.

35. These text messages from 4698360892 to 30400 are, however, documented in the video produced by Plaintiff as PL-WILSON_000003, as discussed in greater detail below.

36. It is reasonable to expect that OptSpot's records of communications with other recipient telephone numbers will have the same characteristics as those with Plaintiff's, and as such

[16] OptSpot's "sent-messages" spreadsheet identifies a message on 2/11/2026 with the body text "We love and appreciate you our valued customers! Stop by Wash Masters we love making you feel great in your clean car!! Rply Stop2StopHelp4Help." This message does not appear in the video PL-WILSON_000003. The First Amended Complaint states that a message was received on 2/11/2026, but this may be a statement sourced from OptSpot's production. The video PL-WILSON_000003 provides evidence verifying the receipt of the other messages but not this one.

[17] First Amended Complaint, par. 42 and 44.

OptSpot's own records do not appear to reliably indicate when consumers sent opt-out messages such as "stop" to Short Code 30400, although this information is central to identifying membership in the putative Internal Do Not Call Class.

37. Mr. Woolfson claims that he can use SQL queries to "identify those telephone numbers to which messages had been sent more than ten (10) days after a 'stop' style of request,"[18] without explaining where the necessary data for such a query is expected to be provided in OptSpot's data.

38. I considered what types of source records could theoretically have been used for the generically described analysis Mr. Woolfson proposes. One possibility would be records of inbound texts showing the keywords themselves; yet this is not available. Alternatively, records of OptSpot's outbound texts showing responses indicating that a number has been opted-out might be used; this too is not available. Lastly, records in OptSpot's master database might show a date/timestamp of when an opt out was processed for a given consumer; this is also not available. The data sheet "sent-messages" produced by OptSpot contains a field named "Opted Out" but this is populated as "TRUE" for every record pertaining to 4698360892. This does not document either of Plaintiff's stop requests, nor identify which messages were sent before any such requests. It appears the "Opted Out" field is populated with the *present-day* status of that number, not a historical chronology of activity.

39. In the absence of the formatted, structured data that Mr. Woolfson presupposed would be used in his SQL queries, he does not explain what alternate, secondary sources of data—such as the individual phone records of each consumer contacted by OptSpot—may provide any missing

[18] Expert Report of Aaron Woolfson, par. 28.

information, nor what analytical methodologies would be appropriate for those alternate data sources.

40. In my examination of the PL-WILSON_000003 video, I observed that after sending each of his "stop" messages, Plaintiff received an automated text response from 30400 acknowledging that his number had been opted out from communications *for a different car wash company*:




41. As seen in the screengrabs from PL-WILSON_000003 above, OptSpot treated Plaintiff's September 13, 2024 "stop" message as a request to cease communications from Baywash Grand Prairie, and Plaintiff's February 8, 2025 "stop" message as a request to cease communications from Slappy's Express.

42. I have no information about the systems or policies used by OptSpot to respond to consumer opt-outs. However I do observe that in the sequence of communications represented in Plaintiff's video PL-WILSON_000003, Plaintiff's February 8, 2025 "stop" message was sent

after the receipt of a message referencing Slappy's Express, and could be reasonably interpreted as a reaction to that message rather than a reaction to a different message sent on a different day regarding a different car wash company.

43. As described above, it is unclear if OptSpot even has records of inbound messages with keywords such as "stop." If such records exist, identifying which car wash the consumer meant by their stop request would require analysis of the full sequence of outbound communications from 30400 on behalf of other non-party car washes. Even that analysis may be disputed and subjective. Mr. Woolfson offers no methodology by which to identify members of the putative Internal Do Not Call Class in the absence of the clearly delineated, cleanly formatted source records he assumed would be provided, but which may not exist.

### D. RECORDS OF ESTABLISHED BUSINESS RELATIONSHIP

44. I understand that the FTC permits business to send communications to persons whose telephone numbers are registered on the National Do Not Call Registry under certain conditions. As stated in the FAQ posted on the Do Not Call Registry website, "[a] company with which a consumer has an established business relationship may call for up to 18 months after the consumer's last purchase or last delivery, or last payment, unless the consumer asks the company not to call again… If a consumer makes an inquiry or submits an application to a company, the company can call for three months."[19]

45. In that context I observe that co-defendant OptSpot produced records from a Google Ad submission indicating that Plaintiff's telephone number was submitted on July 29, 2024 through a webform that displayed this disclosure:

[19] See https://www.ftc.gov/business-guidance/resources/qa-telemarketers-sellers-about-dnc-provisions-tsr-0 at par. 10.


By clicking SUBMIT you are signing up, & you agree to receive automated Text Message Alerts from Wash Masters. Consent not required for purchase. Up to 12 messages per month. Reply STOP to cancel. Reply HELP for help. Message & Data rates may apply.
Terms & Conditions / Privacy Policy

46. I understand that Plaintiff admitted he provided his telephone number through the webform to redeem a promotional coupon for a free car wash sometime in 2024.[20]

47. The timing of such a submission may therefore be of relevance in understanding which communications were sent to Plaintiff's number within the permitted time of an "established business relationship." I am not a lawyer and do not express any opinion as to whether the webform submission does establish a business relationship, but as a data expert I observe that identifying the timing of such submissions and their relationship to outbound communications will entail the analysis of other records similar to the documents produced by OptSpot pertaining to Plaintiff (that is, the documents titled "google-ad-form-submission," "google-ad-screenshot," and "received-opt-in").

48. It is reasonable to expect that *other* telephone numbers contacted using the 30400 short code may also have been submitted in connection with similar web forms, and as such would similarly entail comparing dates of customer inquiries to Defendants to dates of communications from OptSpot. Mr. Woolfson does not address this issue at all, and provides no process by which to conduct such an analysis.

## IV. RESERVATION OF RIGHTS

[20] Plaintiff's Responses to Defendant's First Set of Interrogatories No. 6.

49. My understanding of the factual matters at issue is based on my review of the documents and data listed in Section II above. My analysis has been guided by my education, training, and professional experiences.

50. I understand that additional information relevant to my opinions may be disclosed in subsequent productions, depositions, or other documents. Accordingly, I reserve the right to amend my findings based upon such additional disclosures.

51. I further reserve the right to prepare and rely upon demonstrative exhibits that reflect or summarize my opinions herein, if it would assist my testimony at trial.

I declare that the foregoing is true and correct subject to the laws of perjury of the United States.

David Kalat
Executed in San Rafael, California on November 5, 2026

# EXHIBIT 1

BRG INTELLIGENCE THAT WORKS

# DAVID KALAT

BERKELEY RESEARCH GROUP (BRG), LLC
2200 Powell Street, Suite 1200 | Emeryville, California 94608
70 West Madison, Suite 5000 | Chicago, Illinois 60602
Direct: 312.429.7907
dkalat@thinkbrg.com

## SUMMARY

David Kalat is an information scientist, licensed private investigator, and expert in information security, data analytics, and the forensic examination of electronic evidence.

Mr. Kalat has provided expert testimony in civil and criminal matters in both state and US federal courts. He has testified in bench and jury trials, class certification hearings, arbitrations, preliminary injunction hearings, and other proceedings. His case experience includes testimony in matters involving the Telephone Consumer Protection Act (TCPA), Biometric Information Privacy Act (BIPA), Fair Credit Reporting Act (FCRA), and Computer Fraud and Abuse Act (CFAA), among others.

Mr. Kalat is the author of numerous publications on the history of information technologies. He leads the digital forensics labs for BRG's Chicago and San Francisco Bay Area offices.

## EDUCATION

| | |
|---|---|
| MLIS | University of Illinois at Urbana-Champaign, 2011 |
| BA | University of Michigan, 1992 |

## PRESENT EMPLOYMENT

Director, Forensic Technology, Investigations, and Discovery, BRG, 2015–present

## PREVIOUS POSITIONS

Director, Disputes and Investigations, Duff & Phelps, 2011–2015
President, All Day Entertainment, 1997–2008
Operations Manager, DC Post/Interface Media Group, 1996-1997

## PROFESSIONAL AWARDS, RECOGNITION, AND PRIZES

| | |
|---|---|
| 2019– present | *Lexology Index (formerly Who's Who Legal)*: Consulting Experts – Digital Forensics/Data/Investigations |
| 2023 | *Marquis* Who's Who |
| 2022 | *Lexology* Client Choice Award – Data Expert in USA |

## PROFESSIONAL CERTIFICATIONS

2015–present Licensed Private Detective, State of Illinois (License No. 115.002487)
2018–present Licensed Private Detective, State of Texas (License No. 52430601)
2013–present Certified Fraud Examiner (CFE), Association of Certified Fraud Examiners (License No. 621469)
2014–present Certified Computer Examiner (CCE), International Society of Forensic Computer Examiners (License No. 1666)
2017–present Certified Information Systems Security Professional, International Information System Security Certification Consortium (ISC)2 (License No. 593527)
2019–present Certified Telecommunications Analyst (CTA), Telecommunications Certification Organization

## PROFESSIONAL AFFILIATIONS

Present

Vice President and Director of Training, Association of Certified Fraud Examiners, Greater Chicago Chapter, 2017–2017 and 2020–2026
Director of Information and Security, Association of Certified Fraud Examiners, San Francisco Bay Chapter, 2025–present
Member, Sedona Conference, 2018–present

# EXPERIENCE

## TESTIMONY

*Rag & Bone Holdings, LLC and RB TOPCO SAGL v. Miramar Brands Group, Inc.*, Case No. 1:25cv09937 (S.D. N.Y., 2025)
On behalf of Plaintiffs in litigation regarding alleged trademark infringement, provided expert report describing forensic analysis of electronic data sources produced by Defendant.
*Massarello v. Power Home Remodeling Group, LLC*, No. 2:24cv12480 (E.D. Mich., 2024)
On behalf of Defendant in putative TCPA class action, provided expert report rebutting Plaintiff's proposed methodology for identifying putative class members.
*Marsh USA LLC v. Aon Risk Services Companies, Inc.*, No. 1:25cv3241 (S.D. N.Y., 2025)
Provided declaration regarding forensic examination of electronic data sources on behalf of Defendant in alleged breach of restrictive covenant dispute.
*Riddick v. Chex Systems, Inc.*, No. 2:24cv00700 (E.D. Va., 2024)
On behalf of Defendant in putative FCRA class action, provided expert report regarding the ability to identify records related to Plaintiff's proposed class definition.
*Weingrad v. DaBella Exteriors LLC*, No. 3:25cv396 (D. Or., 2025)
On behalf of Defendant in putative TCPA class action, provided declaration and expert reports rebutting Plaintiff's proposed methodology for identifying putative class members.

*Ward v. Liberty Mutual Insurance Co.*, No. 1:24cv10526 (D. Mass., 2024)

On behalf of Defendant in putative TCPA class action, provided expert report regarding integrity of lead generation and the ability to identify records related to Plaintiff's proposed class definition.

*Rivera v. Humana, Inc. and Signify Health, Inc.*, No. 1:24cv03465 (D. Col., 2024)

On behalf of Defendant in putative TCPA class action, provided expert report on Defendant's procedures for preventing calls to reassigned numbers and expert report rebutting Plaintiff's method of class identification.

*Wilson v. Nationstar Mortgage LLC*, No. 6:24cv1855 (D. Or., 2024)

On behalf of Defendant in putative TCPA class action, provided expert report regarding the ability to identify records related to Plaintiff's proposed class definition.

*Shammam v. American Honda Finance Corporation*, No. 3:24cv00648 (S.D. Calif., 2024)

On behalf of Defendant in putative TCPA and CIPA class action, provided expert report regarding the ability to identify records related to Plaintiff's proposed class definitions.

*Watson v. Hollis Cobb Associates*, No. 1:25cv00682 (N.D. Ga., 2025)

On behalf of Defendant in putative TCPA class action, provided expert report regarding the ability to identify records related to Plaintiff's proposed class definitions.

*Cinner v. Credit Plus*, No. 2:23cv04531 (E.D. Penn., 2023)

On behalf of Defendant in putative FCRA class action, provided expert report regarding the ability to identify records related to Plaintiff's proposed class definition.

*Choreo v. Lors, et al.*, No. 4:25cv00077 (S.D. Iowa, 2025)

Provided written report and deposition testimony regarding forensic examination of electronic data sources on behalf of Plaintiff in alleged theft of trade secrets dispute.

*Edwards and Edwards v. Genesco*, No. 1:25cv115 (N.D. Fla., 2025)

On behalf of Defendant in putative TCPA class action, provided declarations regarding SMS telecommunications technology.

*Jackson v Papa John's International, Cognizant Technology Solutions, et al*, 3:23cv01933 (N.D. Calif., 2023)

On behalf of Defendants in lawsuit alleging violation of California Invasion of Privacy Act, provided expert report and deposition testimony regarding VoIP and other telecommunications technology characteristics.

*Zhou and Qiao v. Youbi Capital (Cayman) GP*, Index No. 62808/2021 (Westchester Cnty. Sup. Ct., NY, 2021)

On behalf of Plaintiffs in dispute alleging breach of fiduciary duty, provided expert report and deposition testimony rebutting Defendant's expert's analysis of electronic data sources associated with the Plaintiffs.

*In Re: Estate of Wesley J. Metcalfe, Deceased*, Cause No. 503,109-401 (Probate Court No. 1, Harris County, Texas, 2025)

On behalf of Defendants in probate action, provided expert report and deposition testimony rebutting Plaintiff's expert's forensic analysis of electronic data sources associated with the decedent.

*Espanol v Capital Vision Services, LLC d/b/a MyEyeDr.*, No. 6:24cv01024 (M.D. Fla., 2024)

On behalf of Defendant in putative TCPA and FTSA class actions, provided expert report rebutting Plaintiff's expert's identification of putative class members.

*Beal v Credit Plus*, No. 2:24cv01462 (E.D. Penn., 2024)

On behalf of Defendant in FCRA dispute, provided expert report regarding the analysis of bankruptcy records to identify putative class members.

*Wilson v Altria Group Distribution Company*, No. 1:24cv01917 (E.D. Va., 2024)

On behalf of Defendant in putative TCPA class action, provided expert report regarding data records pertaining to identification of putative class members.

*Certeza v Southern Industries Home Improvements, LLC*, No. 2:24cv03020 (S.C., 2024)

On behalf of Defendant in putative TCPA class action, provided expert report regarding data records pertaining to identification of putative class members.

*Ahmad v Fathom Realty FL, LLC*, No. 0:24cv61491 (S.D. Fla., 2024)

On behalf of Defendant in putative TCPA class action, provided expert report regarding data records pertaining to identification of putative class members.

*Breitenbach v SageStream*, No. 2:24cv00893 (E.D. Penn., 2024)

On behalf of Defendant in FCRA dispute, provided expert report, deposition, and oral testimony at arbitration regarding the use of deceased indicators to detect fraud and identity theft. The Arbitrators ruled in favor of the Defendant.

*Springstubbe v. Magic Window Company*, No. 2:23cv12816 (E.D. Mich., 2023)

On behalf of Defendant in putative TCPA class action, provided expert report regarding data records pertaining to identification of putative class members.

*Trump Media & Technology Group Corp. v ARC Global Investments II*, No. 2024-CA-001061-NC (Sarasota Cnty. Cir. Ct., 2024)

Provided written report and oral testimony at hearing on behalf of Defendant regarding completeness of disputed document production.

*Curriculum Associates, LLC v Huston*, No. 2024-210794-CZ (Oakland Cnty. Cir. Ct., 2024)

Provided written testimony regarding forensic examination of electronic data sources on behalf of Plaintiff in alleged theft of trade secrets dispute.

*Stachewicz v. Certegy Payment Solutions*, No. 1:23cv01258 (C.D. Ill., 2023)

On behalf of Defendant in putative FCRA class action, provided expert report and deposition testimony regarding the ability to identify records related to Plaintiff's proposed class definitions.

*Johnson v. United Healthcare Services, Inc.*, No. 5:23cv522 (M.D. Fla., 2023)

On behalf of Defendant in putative TCPA class action, provided expert report and deposition testimony regarding data records pertaining to identification of putative class members.

*Oil-Dri Corporation of America v. McPherson, et al.,* No. 1:23cv15900 (E.D.Ill., 2023)

Provided written testimony regarding forensic examination of electronic data sources on behalf of Plaintiff in alleged theft of trade secrets dispute.

*Powell v. Success Systems*, 1:23cv00291 (S.D. Ala., 2023)

On behalf of Defendant in putative TCPA class action, provided expert report investigating origin and authenticity of consumer consent records.

*Mason v. Patriot Growth Insurance Services*, 3:23cv00386 (M.D. Fla., 2023)

On behalf of Defendant in putative TCPA and FTSA class action, provided expert report investigating origin and authenticity of consumer consent records.

*State of Texas v. Meta Platforms f/k/a Facebook, Inc.,* Cause No. 22-0121 (Harrison Cnty. Cir. Ct., 2022)

On behalf of defendant Meta Platforms in first ever action brought under Texas' Capture and Use of Biometric Information Act, provided expert report and deposition testimony regarding data privacy and data security issues related to Meta's use of facial recognition technology.

*Bobo v. Clover Network, LLC,* No. 2023CH000168 (Dupage Cnty. Cir. Ct., 2023)

On behalf of defendant in putative TCPA class action, provided declaration identifying settlement class members.

*Bold Ltd. V Rocket Resume LLC*, No. 5:22cv1045 (N.D. Calif., 2022)

On behalf of defendant in matter alleging copyright infringement, submitted expert report, rebuttal report, and deposition testimony regarding data analysis of linguistic similarity between copyrighted material and previously published works.

*Faucett v. Move Inc.*, No. 2:22cv04948 (C.D. Calif., 2022)

On behalf of defendant in putative TCPA class action, provided declarations regarding data records pertaining to identification of putative class members, and regarding the types of electronic evidence that can be used to forensically investigate a person's online activity.

*Moore et al v. Compass Group USA Inc.*, 4:18cv01962 (E.D. Mo., 2018)

Submitted expert report regarding analysis of database records to rebut plaintiff's damages calculations.

*Indeck Power Equipment Co. v. Wilson and Caldaia Controls*, 2019L011717 (Cook Cnty. Cir. Ct., 2019)

Provided expert reports, declarations, deposition testimony and oral testimony at the damages hearing regarding forensic examination of electronic data sources, on behalf of plaintiff in case alleging theft of trade secrets. The court ruled for plaintiff for injunctive relief as well as real and punitive damages.

*Linhart v. John Hancock Life Insurance Co.*, No. 2:20cv02117 (C.D. Calif., 2020)

On behalf of plaintiff in putative class action, provided expert report and deposition testimony regarding use of investigative due diligence and public records for identification of putative class members.

*ONEX Inc. v. Plibrico Company LLC,* No. 1:23cv00186 (W.D. Penn., 2023)

On behalf of defendant in alleged theft of trade secret dispute, provided declaration on forensic examination of electronic data sources.

*Hinkel and Noon v. Universal Credit Services,* No. 2:22cv01902 (D. Penn., 2022)

On behalf of defendant in putative FCRA class action, provided expert report regarding the ability to identify putative class members.

*Poe v. Northwestern Mutual Life Insurance Co.*, No. 8:21cv2065 (C.D. Calif., 2021)

On behalf of plaintiff in putative class action, provided expert report regarding use of investigative due diligence and public records for identification of putative class members.

*Davis v. Capital One N.A.*, No. 1:22cv00903 (E.D. Va., 2022)

On behalf of defendant in putative TCPA class action, provided expert report and deposition testimony regarding data records pertaining to identification of putative class members. The court relied on my expert report in ruling for the defendant to exclude the opposing expert's testimony and deny class certification.

*Roche Cyrulnik Freedman LLP v. Cyrulnik*, No. 1:21cv1746 (S.D. N.Y., 2021)

On behalf of plaintiff in Breach of Fiduciary Duty dispute, provided expert analysis of manipulated "deep fake" videos.

*Evox Productions v. AOL Inc.*, No. 2:20cv02907 (C.D. Calif., 2020)

On behalf of defendant in alleged copyright dispute, provided expert report and deposition testimony regarding data records pertaining to identification of images that could have been viewed during subject time period.

*U.S. Department of Labor v. Packers Sanitation Services Inc.*, No. 4:22cv3246 (D. Nebraska, 2022)

On behalf of defendant in investigation by the U.S. Department of Labor, provided a declaration regarding forensic examination of electronic data sources to investigate allegations of evidence spoliation.

*Rowan v. Brock Pierce*, No. 3:20cv01648 (D. Puerto Rico, 2020)

On behalf of defendant in putative TCPA class action, provided multiple declarations, expert reports, and deposition testimony regarding data records pertaining to identification of putative class members.

*Calhoun v FLRish*, No. 3:19cv8212 (N.D. Calif., 2019)

On behalf of defendant in putative TCPA class action, provided expert report regarding data records from third-party communications vendors pertaining to identification of putative class members.

*Dumas v. Paradise Exteriors*, No. 9:22cv80356 (S.D. Fla., 2022)

On behalf of defendant in putative TCPA class action, provided declaration and rebuttal regarding the ability to reliably identify putative class members from the available records.

*Young v. Certegy Payment Solutions and Complete Payment Recovery Services*, No. 1:21cv11037 (D. Mass., 2021)

On behalf of defendant in putative FCRA class action, provided expert report and deposition testimony regarding the ability to identify discrete data sets related to Plaintiff's proposed class definitions.

*AEG Holdco, LLC v Vazquez et al.*, No. 2:21cv05290 (C.D. Calif., 2022)

Provided expert report regarding forensic examination of various electronic data sources on behalf of plaintiff regarding alleged theft of trade secrets.

*Rowan v. United Enrollment Services and Adroit Health Group*, No. 9:22cv80235 (S.D. Fla., 2022)

On behalf of defendant in putative TCPA class action, provided expert report on the database records systems used by defendants to manage and track customer communications.

*Cole v. Sierra Pacific Mortgage Co.*, No. 3:18cv01692 (N.D. Calif., 2018)

On behalf of defendant in putative TCPA class action, provided expert report on the technical capacity and functionality of the communication platform allegedly used by the Defendant's third-party vendor. The Court ruled in Defendant's favor on summary judgment and dismissed plaintiff's claims.

*Hovanky and Jackson v. RealPage, Inc.*, No. 3:20cv586 (E.D. Va., 2020)

Provided expert report on public records-based investigations into criminal records and database design analysis on behalf of a defendant in a putative class action seeking claims under the FCRA.

*Petruss Media Group v. Advantage Sales & Marketing LLC*, AAA Case 1-19-0002-7532 (A.A.A., 2019)

On behalf of Respondent and Counter-Claimant in a post-acquisition dispute, provided written expert report, deposition testimony, and trial testimony on the accuracy, reliability, and functionality of a database of consumer contact information intended for use in digital marketing.

*Rogers v BNSF Railway Company*, No. 1:19cv03083 (N.D. Ill., 2019)

On behalf of defendants in putative class action alleging violations of Illinois' Biometric Information Privacy Act, provided written and deposition testimony on potential scope of affected class of truck drivers, and the information security protocols used to protect personal information pertaining to drivers.

*PSSI Holdings LLC v. Calhoun*, No. 5:21cv0080 (E.D. Tex., 2021)

Provided written report and testimony at hearing regarding forensic examination of various electronic data sources on behalf of plaintiff in alleged Computer Fraud and Abuse Act violation.

*Tichy, et al. v. Hyatt Corporation, et al.*, No. 1:18cv01959 (N.D. Ill., 2018)

On behalf of defendants in putative class action alleging violations of Sherman Act's anti-trust prohibitions, provided testimony on deficiencies in plaintiffs' preservation of electronic search and browsing records.

*Abante Rooter and Plumbing, Inc. v. Total Merchant Services, LLC*, No. 3:19cv05711 (N.D. Calif., 2019)

On behalf of defendant in putative TCPA class action, provided expert report on the technical capacity and functionality of the communication platform used by the Defendant.

*Signode Industrial Group LLC v. Rutzky*, No. 2021CH00314 (Cook Cnty. Cir. Ct., 2021)

Provided written testimony regarding forensic examination of various electronic data sources on behalf of plaintiff in alleged theft of trade secrets dispute.

*Brown v. RP On-Site, LLC*, No. 1:20cv448 (E.D. Va., 2020)

Provided expert report on public records-based investigations into criminal records and sex offender records on behalf of a defendant in a putative class action seeking claims under the FCRA.

*State of Georgia v. Kathryn Schrader*, No. 19-B-03161-5 (Gwinnett Cnty. Sup. Ct., GA, 2019)

Testified at criminal jury trial on behalf of defendant Kathryn Schrader, a state court judge accused of felony computer trespass.

*Moskowitz v. American Savings Bank*, FSB, No. 1:17-cv-00299 (D. Hawaii, 2017)

On behalf of defendant in putative TCPA class action, provided expert report pertaining to forensic analysis of text message communications involving the plaintiff.

*Schaffer and Fabricant v. First Choice Payment Solutions, d/b/a Sekure Merchant Solutions*, No. 8:18cv1981 (C.D. Calif., 2018)

On behalf of defendant in putative TCPA class action, provided expert report on the technical capacity and functionality of the communication platform used by the Defendant and the plaintiff's proposed methodology for class member identification.

*Laramar Group, LLC v. Steven Boyack*, Arbitration Before JAMS, Ref. No. 1340015694 (JAMS, Chicago, Ill., 2017)

Provided written testimony regarding forensic examination of various electronic data sources on behalf of defendant in alleged theft of trade secrets dispute.

*Trustwave Holdings, Inc. v. GoSecure, Inc., et al.*, No. 1:19cv05455 (N.D. Ill., 2019)

Provided written testimony regarding forensic examination of various electronic data sources on behalf of plaintiff in alleged theft of trade secrets dispute.

*Bunnett & Co., Inc. and Energy Feeds Int'l., LLC v. J.D. Heiskell Holdings, LLC, et al.*, No. 3:17cv01475 (N.D. Calif, 2017)

Provided written reports and testimony before magistrate judge regarding forensic examination of various electronic data sources on behalf of plaintiff in dispute alleging breach of fiduciary duty.

*West Loop Chiropractic & Sports Injury Center v. North American Bancard*, No. 1:16cv05856 (N.D. Illinois)

On behalf of defendant in putative TCPA class action, provided expert report and deposition testimony regarding analysis of fax logs.

*Gonzalez v. TCR Sports Broadcasting Holding, LLP*, No. 1:18cv20048 (S.D. Fla.)

On behalf of defendant in putative TCPA class action, provided declaration on use of data analytics to determine class membership.

*Revitch v. Citibank*, No. 3:17cv06907 (N.D. Calif., 2017)

On behalf of defendant in putative TCPA class action, provided expert report and deposition testimony regarding analysis of dialing technology used by defendant.

*Flowers v. Twilio, Inc.*, No: RG16804363 (Sup. Ct. Cal.)

On behalf of defendant in putative class action under California Invasion of Privacy Act, provided declaration on use of data analytics to determine class membership.

*Berman v. Freedom Financial Network, LLC*, No. 4:18cv01060 (N.D. Calif., 2018)

On behalf of defendant in putative TCPA class action, provided expert report regarding analysis of lead generation data.

*Marcheco v. Jo-Ann Stores, LLC*, 1:18cv20564 (S.D. Fla., 2018)

On behalf of defendant in putative TCPA class action, provided expert report and deposition testimony regarding analysis of dialing technology used by defendant.

*In the Matter of Tokenlot, LLC, Lenny Kugel, and Eli L. Lewitt*, Securities and Exchange Commission Administrative Proceeding File No. 3-18739 (2018)

On behalf of defendant in SEC administrative proceeding, provided written report regarding destruction of cryptocurrency tokens.

*Kolodziej v. Justice Park District, et al.*, 2014 L 775 (Cook Cnty. Cir. Ct., 2014)

Testified at jury trial regarding analysis of surveillance video, on behalf of defendant in alleged wrongful death.

*Indeck Energy Services v. DePodesta, et al.*, 14 CH 602 (Lake Cnty. Cir. Ct., 2014)

Submitted affidavits and written report regarding forensic examination of electronic data sources, on behalf of plaintiff in case alleging theft of trade secrets.

*Braver et al. v. NorthStar Alarm Services, LLC*, 5:17cv00383 (W.D. Okla., 2017)

On behalf of defendant in putative TCPA class action, provided written report, deposition testimony, and testimony at class certification hearing regarding use of data analytics to determine class membership.

*C.J. Drilling, Inc. v. Welsh*, No. 17 CH 001095 (Kane Cnty. Cir. Ct., 2017)

Submitted written report on behalf of plaintiff regarding forensic examination of electronic data sources in case alleging theft of trade secrets.

*Western Union v. Kula*, 1:17cv00280 (N.D. Ill., 2017)

Served as neutral in dispute alleging theft of trade secrets; forensic examination of electronic data sources.

*Segerdahl Corp. v. Ferruzza, et al.*, 1:17cv03015 (N.D. Ill., 2017)

Provided written reports and deposition testimony as both expert witness and 30(b)6 witness regarding forensic examination of electronic data sources, on behalf of plaintiff in case involving alleged theft of trade secrets.

*L&W Supply Corp. v. Banks et al.*, CV16-00816 (Washoe Cnty. Dist. Ct., 2016)

Submitted written report on behalf of plaintiff regarding forensic examination of electronic data sources in case alleging theft of trade secrets.

*Bunnet & Co., Inc. and Energy Feeds International, LLC v. Dores*, 1:15cv1104 (W.D. Texas, 2016); also In *Re: Frank Miranda Dores and Mary Anne Souza Dores*, No. 16-10169-B-13 (Bankr. E.D. Calif.)

Provided written reports and testimony at bankruptcy hearing regarding forensic examination of various electronic data sources on behalf of plaintiff in dispute alleging breach of fiduciary duty.

*Pro Sapiens LLC v. Indeck Power Equipment Co.*, 14L5730 (Cook Cnty. Cir. Ct., 2015)

Provided written reports, deposition testimony, and testimony at hearing regarding forensic examination of various electronic data sources on behalf of Indeck Power in dispute alleging data spoliation.

*Geophysical Service Inc. v. Anadarko Petroleum Corp. et al.*, 1201-15228 (Ct. of Queen's Bench of Alberta, 2014)

On behalf of multiple defendants, provided deposition testimony regarding public records investigation into plaintiff's ability to satisfy a judgment.

# PUBLICATIONS

## ARTICLES

(1) "Why Computers Aren't Patented", BRG *ThinkSet,* April 26, 2021.

(2) "Dispossessed, Beyond Custody, and Out of Control: Where the Stored Communications Act and the Federal Rules of Civil Procedure Meet Modern Communications Technology", *Pratt's Privacy & Cybersecurity Law Report* (LexisNexis A.S. Pratt), Vol. 7, No. 2, February 2021.

(3) "Demystifying Blockchain and Cryptocurrencies", *The Journal of Robotics, Artificial Intelligence & Law*, Vol. 3, No. 6, November/December, 2020.

(4) "The Seven Layer Cake of Information Security: A Technical Guide for the Non-Technical Reader", *Pratt's Privacy & Cybersecurity Law Report* (LexisNexis A.S. Pratt), Vol. 6, No. 3, April 2020.

(5) "They Came to Rob Star Wars", BRG *ThinkSet,* January 9, 2020.

(6) "The Case of the Tasteless T-Shirts That Created the Internet As We Know It", BRG *ThinkSet,* September 5, 2019.

(7) "You Can't Change Your Fingerprints, But Do You Need To? The Evolution of Biometric- and Password-Based Authentication Security", *Pratt's Privacy & Cybersecurity Law Report* (LexisNexis A.S. Pratt), Part I - May 28, 2019; Part II – September 4, 2019.

(8) "Why Use Encryption? Because Business Needs A Free Flow Of Ideas", BRG *ThinkSet*, May 16, 2019.

(9) "The Evolution of Intellectual Property Rights: From Punch Cards to Pixels", BRG *ThinkSet*, March 7, 2019.

(10) "How to Recognize Different Types of Dialers From Quite a Long Way Away", *The Consumer Finance Law Quarterly Report*, Vol. 72, No. 2, 2018.

(11) "The History of Passwords and the Case of the First Theft", BRG *ThinkSet*, November 4, 2018.

(12) "Confronting BIPA Liability in the Blink of an Eye", *ThinkBRG Global I Blog*, March 8, 2018.

(13) "Fighting on Today's Front Lines", *InfoSecurity Magazine*, January 3, 2018.

(14) "Outrunning the Lion: Advice for Fighting on the Front Lines of Today's Data Breach Attacks", *Legaltech News*, December 20, 2017.

(15) "Understanding the Challenges of Strong Encryption", *Law360*, April 10 & 11, 2017.

(16) "Dyn and Dash", *SC Media*, 2016.

(17) "Anti-Forensics Gets An Upgrade: The Hidden Traps In Today's Latest Technology", *ThinkBRGTech.com*, 2016.

(18) "The Trouble With Mobile Forensics", *ThinkBRGTech.com*, 2015.

(19) "Day One: The Origin Story of Computer Forensics", *Pratt's Privacy & Cybersecurity Law Report*, (LexisNexis A.S. Pratt), Vol. 1 No. 1, August/September, 2015.

## CONTRIBUTIONS

(1) U.S. Biometric Systems Privacy Primer, The Sedona Conference, (May 14, 2024) (Contributing Editor)

(2) The Federal Judges' Guide to Discovery, Fourth Edition, The Electronic Discovery Institute, (February 17, 2025) (Contributing Author)

## “NERVOUS SYSTEM” ARTICLE SERIES

Between 2018 and 2024, David Kalat contributed a monthly series for *Legaltech News* called “Nervous System.” This series approached issues of data privacy and cyber security from the context of history. Individual instalments of this series are itemized below, and all are collected centrally at https://www.thinkbrg.com/insights/publications/kalat-Legaltech-news-nervous-system/

(1) “How Packet Data Built the Internet”, *Legaltech News*, 2024

(2) “Who Ya Gonna Call—and Who’s Calling You?”, *Legaltech News*, 2024

(3) “Honeypots in Space”, *Legaltech News*, 2024

(4) “Pretty, Pretty, Pretty Good Privacy”, *Legaltech News*, 2024

(5) “Dick Pick, GIRLS, and the History of Reality”, *Legaltech News*, 2024

(6) “The ELIZA Effect”, *Legaltech News*, 2024

(7) “Cybersecurity 1800s Style”, *Legaltech News*, 2024

(8) “A Night to Remember”, *Legaltech News*, 2024

(9) “The Osborne Effect”, *Legaltech News*, 2024

(10) “32-Bit Computers Dancing Backwards in High Heels” ”, *Legaltech News*, 2024

(11) “Paying with Your Finger”, *Legaltech News*, 2024

(12) “Y2K Revisited”, *Legaltech News*, 2023

(13) “The Context of Keywords”, *Legaltech News*, 2023

(14) “The First Video Call”, *Legaltech News*, 2023

(15) “The Tale of the Tape”, *Legaltech News*, 2023

(16) “How to Stuff Cellular Phone Calls in Digital Bubble Wrap”, *Legaltech News*, 2023

(17) “When Mobile Telephones Had Steering Wheels”, *Legaltech News*, 2023

(18) “How Computers Saved Wall Street”, *Legaltech News*, 2023

(19) “The April Fools’ Prank That Changed the World”, *Legaltech News*, 2023

(20) “The Laws of Thought”, *Legaltech News*, 2023

(21) “Formulae for Success”, *Legaltech News*, 2023

(22) “The Great Emoji War”, *Legaltech News*, 2023

(23) “From Gibberish to Unicode”, *Legaltech News*, 2022

(24) "The Strange Case of the Forged Email, the Carphone, and the Woman Who Lost Her Job", *Legaltech News*, 2022

(25) "The Bakery Computer", *Legaltech News*, 2022

(26) "How Trolls Built Big Tech", *Legaltech News*, 2022

(27) "How to Have a Secure Conversation with a Stranger", *Legaltech News*, 2022

(28) "How Lossless Compression Makes Information Skinnier", *Legaltech News*, 2022

(29) "Cybernetics and the Birth of Computer Ethics", *Legaltech News*, 2022

(30) "From a Cry in the Dark to the Forensic Voiceprint", *Legaltech News*, 2022

(31) "The Entropy of Wordle", *Legaltech News*, 2022

(32) "iPhone Witness Testimony", *Legaltech News*, 2022

(33) "Knowing Your Place in the World", *Legaltech News*, 2022

(34) "The Computer Crime of the Century", *Legaltech News*, 2022

(35) "The Computer Virus That Wasn't", *Legaltech News*, 2021

(36) "Rethinking Voice Recognition at the Canada Border", *Legaltech News*, 2021

(37) "Engineering the Next Generation of Computer Users with the Alto", *Legaltech News*, 2021

(38) "Dumpster Diving for Fraud and Profit", *Legaltech News*, 2021

(39) "Florida Man, Joe Biden, and the Federal Computer Crimes Act", *Legaltech News*, 2021

(40) "SafeBack in the Day", *Legaltech News*, 2021

(41) "The CPU ARM Race", *Legaltech News*, 2021

(42) "Audrey and the Dragon: The History of Voice Recognition Technology", *Legaltech News*, 2021

(43) "Oliver North and the Origin Story of Legal Technology", *Legaltech News*, 2021

(44) "Computer Crime and Punishment", *Legaltech News*, 2021

(45) "How 'The 414s' Hacking for Video Game High Scores Led to Federal Cyber Law", *Legaltech News*, 2021

(46) "Dialing for Dollars", *Legaltech News*, 2021

(47) "The First Major Data Breach: 1984", *Legaltech News*, 2020

(48) "Before the Battle Over 5G, There Was the Battle Over 3G", *Legaltech News*, 2020

(49) "The Sleepy History of the Buffer Overflow Attack", *Legaltech News*, 2020

(50) "The Inventor, the Barbershop Quartet, and the Origin of the Email Attachment", *Legaltech News*, 2020

(51) "The Police Beat Algorithm and Automated Criminal Justice Information Systems", *Legaltech News*, 2020

(52) "The Unexpected History of VoIP", *Legaltech News*, 2020

(53) "Teaching Machines to See Faces", *Legaltech News*, 2020

(54) "The Triumphs of a Lazy Programmer", *Legaltech News*, 2020

(55) "How Punch Cards Brought Us to Our Census", *Legaltech News*, 2020

(56) "UNIVAC Predicts the Next President", *Legaltech News*, 2020

(57) "Alan Turing's Gin Memory", *Legaltech News*, 2020

(58) "The Countess of Lovelace, the First Computer Programmer", *Legaltech News*, 2020

(59) "Claude Shannon's Magic Mouse", *Legaltech News*, 2019

(60) "Passwords Become More Secure by Adding a Pinch of Salt", *Legaltech News*, 2019

(61) "How Legal Tech Helped Catch the BTK Killer", *Legaltech News*, 2019

(62) "Clipping the Wings of the Clipper Chip", *Legaltech News*, 2019

(63) "The First Modern Presidential Campaign", *Legaltech News*, 2019

(64) "The Day the NSA Took Down the Military", *Legaltech News*, 2019

(65) "The Great Fixer of Information Coding Errors", *Legaltech News*, 2019

(66) "Think Cryptocurrency Is New? You've Forgotten the '80s", *Legaltech News*, 2019

(67) "The First Social Network", *Legaltech News*, 2019

(68) "Big Brother, the Ghost in LBJ's Computer", *Legaltech News*, 2019

(69) "Remembering the Dawn of Spam", *Legaltech News*, 2019

(70) "The Day Grace Hopper Literally Debugged a Program", *Legaltech News*, 2019

(71) "The Computer That Taught HAL to Sing", *Legaltech News*, 2018

(72) "Taking Biometrics at Face Value", *Legaltech News*, 2018

(73) "What Hollywood Has Taught the US Government about Cybersecurity", *Legaltech News*, 2018

(74) "The Tech Revolution Is Earlier than You Think", *Legaltech News*, 2018

(75) "The Glamour Girl's Secret Privacy Weapon", *Legaltech News*, 2018

(76) "The Small Start of Big Data", *Legaltech News*, 2018

(77) "Just the Fax, Ma'am", *Legaltech News*, 2018

(78) "The Boy Who Could Talk to Computers", *Legaltech News*, 2018

(79) "Evaluating TCPA Liability in the Actual Wild West", *Legaltech News*, 2018

(80) "The Story of the First White Hat Hacker", *Legaltech News*, 2018

## BOOKS ON FILM HISTORY

In addition to writings on information technology and information security, Mr. Kalat has also written books on film and television history.

(1) A Critical History and Filmography of Toho's Godzilla Series (McFarland & Co., 1997)

(2) Homicide: Life on the Streets: An Unofficial Companion (Renaissance Books, 1998)

(3) The Strange Case of Dr. Mabuse: A Study of the Twelve Films and Five Novels (McFarland & Co., 2001)

(4) J-Horror: The Definitive Guide to The Ring, The Grudge, and Beyond (Vertical Press, 2005)

(5) A Critical History and Filmography of Toho's Godzilla Series - Second Edition (McFarland & Co., 2010)

(6) Too Funny For Words: A Contrarian History of American Screwball Comedy From Silent Slapstick to Screwball (McFarland & Co., 2019)

Mr. Kalat has also contributed chapters to the following multi-author anthologies.

(1) Fear Without Frontiers: Horror Cinema Across the Globe (FAB Press, 2003)

(2) 101 European Horror Films (British Film Institute, 2007)

(3) Third Person: Authoring and Exploring Vast Narratives (MIT Press, 2009)

(4) The Films of Edgar G. Ulmer (Scarecrow Press, 2009)