**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **JOSH WILSON**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**WASH MASTERS, L.P., ARADI PROPERTIES, LLC**, and **OPTSPOT, LLC**,<br><br>Defendants. | Case No. 4:26-cv-00217-O |

**PLAINTIFF'S OPPOSITION TO DEFENDANT OPTSPOT, LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages. .......... 4

a. The plain meaning of the word "call" includes text messages .......... 5

b. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions .......... 10

c. The federal courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right .......... 14

II. Plaintiff Independently States a Claim Under the Texas Telephone Solicitation Act .......... 17

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Selling Source, LLC*,
No. 09 Civ. 3413, 2009 WL 4884471 (N.D. Ill. 2009)........................................................... 8

*Alvarez v. Fiesta Nissan, Inc.*,
No. 7:25-CV-00343, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026).. 1, 4, 6, 8, 10, 12, 13, 14, 15, 16, 17

*Ams. for Beneficiary Choice v. U.S. Dep't of Health & Hum. Servs.*,
795 F. Supp. 3d 895 (N.D. Tex. 2025) ..................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................... 3

*Bronstin v. Happy Cabbage Analytics, Inc.*,
2026 U.S. Dist. LEXIS 248072 (Oct. 29, 2026)........................................................................ 16

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024) ....................................................................................... 11

*Callier v. The Finish Line, Inc.*,
No. 3:25-CV-2331-B-BK, 2026 WL 2654093 (N.D. Tex. Aug. 19, 2026), *report and recommendation adopted*, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026)2, 3, 4, 6, 7, 12, 13, 14, 15, 16, 17

*Campbell-Ewald v. Gomez*,
577 U.S. 153 (2016).............................................................................................................. 5, 7

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021) .................................................................................................... 15

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) .................................................................................... 15

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ...................................................................................................... 3

*Duron v. Kings Capital Holding LLC*,
No. 3:25-cv-149, 2026 WL 319779 (W.D. Tex. Jan. 13, 2026), *report and recommendation adopted*, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026)...................................................... 4, 15

*El Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ................................................................... 15, 16

*Feliciano v. Red McCombs Hyundai Nw. GP, L.L.C.*,
2026 U.S. Dist. LEXIS 246635 (W.D. Tex. Oct. 28, 2026) ..... 16

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ..... 3

*Harriel v. Bealls, Inc.*,
2025 WL 2379617 (M.D. Fla. 2025) ..... 11

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) ..... 7

*Hill v. Shoe Carnival, Inc.*,
No. 6:25-cv-349, 2026 WL 217776 (E.D. Tex. Jan. 5, 2026), *report and recommendation adopted*, 2026 WL 216321 (E.D. Tex. Jan. 27, 2026) ..... 16

*Howard v. Republican Nat'l Comm.*,
164 F.4th 1119 (9th Cir. 2026) ..... 5, 6, 7, 12

*Hudson v. Palm Beach Tan, Inc.*,
No. 1:23-cv-486, 2024 WL 4190513 M.D.N.C. Aug. 12, 2024) ..... 13

*In re Emanuel Manny Hernandez, Click Cash Marketing, LLC, & Rock Solid Traffic*,
2018 WL 6830220 (F.C.C. Dec. 21, 2018) ..... 9

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) ..... 9

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ..... 1, 4, 9, 10

*Lowrey v. Twilio, Inc.*,
2026 U.S. Dist. LEXIS 226120 (Oct. 1, 2026) ..... 17

*Lozano v. Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010) ..... 8

*McGonigle v. Shopperschoice.com, L.L.C.*,
2026 WL 413198 (M.D. La. Feb. 13, 2026) ..... 1, 4, 14, 15, 16, 17

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ..... 1, 4, 14

*Mujahid v. Newity, LLC*,
No. 25 C 8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ..... 8, 12

*Newell v. Children's Dental Health Assoc., LLC*,
No. 25-5238, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026) ..... 13

*Perrin v. United States*,
444 U.S. 37 (1979) .......... 5

*Rush v. Selectquote Ins. Servs.*,
2026 U.S. Dist. LEXIS 182934 (July 30, 2026) .......... 16

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .......... 6, 7, 10, 11

*Steidinger v. Blackstone Medical Services, LLC*,
182 F.4th 532 (7th Cir. July 14, 2026) .......... 1, 5, 7, 10, 12, 14, 15, 16, 21

*Stockdale v. Skymount Prop. Grp., LLC*,
No. 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954 (N.D. Ohio Mar. 3, 2026) .......... 16

*United States v. Palomares*,
52 F.4th 640 (5th Cir. 2022) .......... 7

*Warciak v. Subway Rests., Inc.*,
949 F.3d 354 (7th Cir. 2020) .......... 5, 7

*Wilson v. Better Mortg. Corp.*,
2025 WL 3493815 (S.D.N.Y. 2025) .......... 2, 9, 10, 12

*Wilson v. Medvidi Inc.*,
No. 5:25-CV-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .......... 9, 10, 12, 13

*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) .......... 6

*Ybarra v. Dish Network, LLC*,
807 F.3d 635 (5th Cir. 2015) .......... 17

**Statutes**

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, (2019). 13

Telephone Consumer Protection Act,
47 U.S.C. § 227(c) .......... 1, 2, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15

Tex. Bus. & Com. Code § 305.053(a) .......... 18, 19

Texas Telephone Solicitation Act,
Tex. Bus. & Com. Code § 305.001 *et seq.* .......... 2, 3, 17, 19, 20

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1990) .......... 11

David Crystal, *Toting: The Gr8 Db8* (2008) .......... 9

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (July 3, 2003) .......... 9

Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008) .......... 9

*Oxford English Dictionary* (2d ed. 1989) .......... 6, 11

*Random House Webster's College Dictionary* (1991) .......... 6, 11

# INTRODUCTION

Defendant OptSpot, LLC's ("OptSpot") Motion for Judgment on the Pleadings (ECF No. 45, the "Motion") and supporting Memorandum (ECF No. 46, "Br.") ask this Court to hold that a consumer who registers his residential cellular number on the National Do-Not-Call Registry loses the Registry's protection whenever a telemarketer chooses to send a text message instead of dialing. The whole of OptSpot's federal argument is that, because Congress used the words "telephone call" in § 227(c)(5) in 1991, "a text message is not a telephone call." Br. at 1. But OptSpot offers no contemporaneous dictionary, does not address the TCPA's own use of "call" in connection with paging services, and—apart from a single footnote acknowledging one contrary decision from the Western District of Texas, Br. at 8 n.2—does not address the decisions of the courts within this Circuit, including a decision of this District, that have rejected its reading.

OptSpot relies principally on the Seventh Circuit's recent decision in *Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. July 14, 2026), and on a string of out-of-circuit district court decisions. Br. at 4–8. But *Steidinger* is neither controlling nor persuasive and OptSpot does not argue that the courts that have read the word "call" to include text messages misread that word; it argues only that the identical word must mean something narrower in § 227(c)(5). And since *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), courts in this Circuit—including, most recently, a court in this District—have independently examined the statutory language and concluded that § 227(c) applies to text messages. *See, e.g.*, *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *3–6 (S.D. Tex. Jan. 26, 2026); *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 WL 413198, at *4–6 (M.D. La. Feb. 13, 2026); *Callier v. The Finish Line, Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093, at *3–6 (N.D.

Tex. Aug. 19, 2026), *report and recommendation adopted*, 2026 WL 2648113 (N.D. Tex. Sept. 8, 2026) ("*Finish Line*").

OptSpot's challenge to Plaintiff's Texas claim fails as well. OptSpot's Memorandum never cites Texas Business and Commerce Code § 305.053(a), the provision that expressly creates a cause of action for a person who receives a communication that violates § 227 or "a regulation adopted under" § 227. The arguments OptSpot does make, which are directed to § 305.001 and to a "charged for that specific call" element, concern a different statutory predicate, and OptSpot cites no authority for them. The Motion should be denied.

## BACKGROUND

Plaintiff Josh Wilson brings this putative class action against Wash Masters, L.P., Aradi Properties, LLC, and OptSpot, LLC, arising from telemarketing text messages sent to his residential cellular telephone number. ECF No. 18. Plaintiff filed this action on February 25, 2026, and filed his First Amended Class Action Complaint on July 22, 2026, adding OptSpot as a defendant. Br. at 2. Plaintiff asserts claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d), and under the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 *et seq. See* Br. at 1–2 (citing ECF No. 18 ¶¶ 93–113).

Plaintiff uses his mobile phone for "personal, residential, and household purposes," is the sole payer of the bills arising from the number, and registered the number on the National Do-Not-Call Registry on November 17, 2024. ECF No. 18 ¶¶ 34–37. The Amended Complaint alleges that OptSpot, an SMS marketing vendor, "transmitted the text messages at issue" on behalf of Wash Masters and Aradi, *id.* ¶¶ 6, 54, 95, and OptSpot admits that it provides SMS marketing services and that Aradi was its client. ECF No. 39 ¶¶ 6, 70, 74. Plaintiff alleges that Defendants sent text messages promoting Wash Masters-branded car wash services from a short

code between September 13, 2024, and February 11, 2026. ECF No. 18 ¶¶ 41–45, 58, 63. He alleges that he responded "Stop" on September 13, 2024, and again on February 8, 2025, but continued to receive text messages, *id.* ¶¶ 42–45, and that the messages were sent by automated equipment without human intervention. *Id.* ¶¶ 55, 59–61.

Count I alleges that Defendants initiated more than one telephone solicitation to Plaintiff and to members of a class within a twelve-month period after their numbers were registered on the Registry. *Id.* ¶¶ 93–98; 47 C.F.R. § 64.1200(c). Count II alleges that Defendants repeatedly caused "telemarketing text messages" to be sent after recipients asked that they stop, in violation of 47 C.F.R. § 64.1200(d). ECF No. 18 ¶¶ 99–103. Count III asserts a claim under the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 *et seq.*, alleging that Defendants used an automatic dialing announcing device to send promotional text messages without consent, invoking the Act's private right of action, and incorporating all preceding allegations. *Id.* ¶¶ 26–29, 62, 104–113. OptSpot's Motion rests on two propositions: that a text message is not a "telephone call," and that Plaintiff does not allege he was "charged" for each text. Br. at 1–2, 9. OptSpot does not otherwise challenge the sufficiency of the Amended Complaint.

## LEGAL STANDARD

A Rule 12(c) motion is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Br. at 3 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008), and *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). The Court accepts all well-pleaded facts as true, views them in the light most favorable to the non-moving party, and asks whether the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Finish Line*, 2026 WL 2654093, at *1–2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Br. at 3. The Motion presents a question of statutory interpretation that does not turn on any disputed fact.

## ARGUMENT

### I. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages.

OptSpot contends that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do-Not-Call rules cannot be enforced through that provision when a telemarketing solicitation arrives as a text message. Br. at 3–4. That is incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: the word "call" as used in the TCPA refers to any attempt to communicate by telephone. OptSpot's assertion that § 227(c)(5) "unambiguously" excludes text messages, Br. at 3, rests on a claim about how people speak today rather than on any analysis of what "call" meant in 1991. Plaintiff does not ask the Court to defer to the FCC; the Court "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Alvarez*, 2026 WL 202930, at *2 (quoting *McLaughlin*, 145 S. Ct. at 2015). Under those ordinary principles, text messages are calls.

It should come as no surprise, then, that after *Loper Bright* and *McLaughlin* courts in this Circuit have continued to conclude that under the TCPA text messages are calls.[1] As Judge Crane observed in *Alvarez*, "courts across the country, including the Fifth Circuit and the Supreme Court, have analyzed other portions of the TCPA without contesting that 'calls' include

[1] *See, e.g.*, *Duron v. Kings Capital Holding LLC*, No. 3:25-cv-149, 2026 WL 319779, at *5–6 (W.D. Tex. Jan. 13, 2026), *report and recommendation adopted*, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026); *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 WL 413198, at *4–6 (M.D. La. Feb. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930, at *3–6 (S.D. Tex. Jan. 26, 2026); *Finish Line*, 2026 WL 2654093, at *3–6.

both voice calls and text messages." 2026 WL 202930, at *1. The Supreme Court has weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). Both the Seventh Circuit and the Ninth Circuit have said the same of the TCPA's autodialer provision. *See Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026). The Seventh Circuit's recent departure in *Steidinger* as to § 227(c) does not disturb that consensus. As explained below, *Steidinger*'s reasoning does not withstand scrutiny, sits uneasily with the Seventh Circuit's own earlier statement in *Warciak*, and has no application within this Circuit, where courts in the Southern District of Texas, the Middle District of Louisiana, the Western District of Texas, and this District have reached the opposite conclusion. OptSpot itself acknowledges in a footnote that a court in the Western District of Texas "disagreed with *Steidinger*." Br. at 8 n.2.

**a. The plain meaning of the word "call" includes text messages**

The starting point is the statute's text, which confirms that "call" includes text messages. OptSpot agrees that interpretation begins with the statute's plain language. Br. at 3–4. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See, e.g.*, *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . ." (citation omitted)). And while every statute's meaning is fixed at the time of enactment, "new applications may arise in light of changes in the world."

*Finish Line*, 2026 WL 2654093, at *3 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)). OptSpot, however, never identifies what "call" meant when Congress enacted the TCPA. It cites no dictionary and no other contemporaneous source. Indeed, OptSpot's own Answer refers to the communications at issue as "telephone calls made to plaintiff," ECF No. 39, Affirmative Defenses ¶ 5; *see id.* ¶¶ 8, 14, although the only communications Plaintiff alleges are text messages.

Courts have long recognized that the ordinary meaning of "call" in the TCPA is "to communicate with or try to get into communication with a person by a telephone." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009); *see also Howard*, 164 F.4th at 1123–24. Contemporaneous dictionaries confirm that meaning. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone"). As Judge Crane put it, "[t]his language is capacious," and "a plain-language reading suggests that to send a text message is to 'try to get or to get into communication by telephone.'" *Alvarez*, 2026 WL 202930, at *4. Those definitions do not require an oral communication; they turn on the means of communication—the telephone. A text message sent to a telephone therefore falls comfortably within the ordinary meaning of a "call." *See Howard*, 164 F.4th at 1123–24.

OptSpot's principal observation—that if you "[a]sk anyone how many telephone calls they've received on their cell phone in the past week," "[n]ot one will open their text messaging app," and that "35 years ago, Congress did not contemplate a text equals a call," Br. at 1—answers a different question than the one the statute poses. As *Alvarez* explained, "a usage which seems obvious now is not always a reflection of the original meaning of the statute," and "the

term 'text message' only seems distinct from the idea of a 'telephone call' today because the former term developed in our language specifically to distinguish a text communication from a voice communication." 2026 WL 202930, at *4. The question, therefore, "is not whether Congress contemplated text messages when it enacted the TCPA, but 'whether the concept of a "text message" is fairly embraced by the meaning of "telephone call" in 1991.'" *Finish Line*, 2026 WL 2654093, at *4 (quoting *Alvarez*, 2026 WL 202930, at *4). That is the nature of statutory language: "[i]n their full context, words mean what they conveyed to reasonable people at the time they were written—with the understanding that general terms may embrace later technological innovations." *Alvarez*, 2026 WL 202930, at *4 (quoting *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring)).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak*, 949 F.3d at 356; *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. OptSpot dismisses *Campbell-Ewald* as "inapposite" because it arose under § 227(b), Br. at 6, but that is the point: absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). OptSpot does not argue that *Campbell-Ewald*, *Warciak*, *Howard*, or *Satterfield* misread the word "call"; it argues only that the same word must carry a different meaning one subsection over. Nor does it matter that, as OptSpot notes, *Steidinger* read *Duguid* as having "explained that *Campbell-Ewald* didn't resolve whether a text message is a call." Br. at 6 (quoting *Steidinger*, 182 F.4th at 537–38). Plaintiff does not contend that *Campbell-Ewald* resolved the § 227(c)(5) question. The point is that the Supreme Court described it as

"undisputed" that a text message is a "call" in § 227(b), and OptSpot offers no reason the same word should mean something different in § 227(c). The consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025).

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010); *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009). As Judge Crane observed, "[b]y 1990, pagers could display alphanumeric messages, which were sent by calling the pager from a telephone," so that in 1991 a person "might very well have received messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former?" *Alvarez*, 2026 WL 202930, at *4.

Although Plaintiff does not seek deference, the FCC has long endorsed the interpretation of "call" reflected above. The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also text messages. *In re Rules &*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC has adhered to that position ever since. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (July 10, 2015); *In re Emanuel Manny Hernandez, Click Cash Marketing, LLC, & Rock Solid Traffic*, 2018 WL 6830220, at *1 ¶¶ 3, 10 (F.C.C. Dec. 21, 2018) ("The DNC prohibitions apply to voice calls and text messages. In numerous rulings beginning in 2003, the Commission has held that text messages are calls covered by the TCPA."); 88 Fed. Reg. 20800, 20802 ¶ 6 (proposed Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Wilson v. Medvidi Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025). And texting didn't achieve widespread popularity until the 2000s.[2] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our intuitions today, which reflect a world where texting has been ubiquitous for decades. *Cf. Loper Bright*, 603 U.S. at 386 ("[T]he contemporaneous construction of those

[2] *See, e.g.*, David Crystal, *Toting: The Gr8 Db8* 4 (2008), https://perma.cc/M2Q3-FH44 ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://perma.cc/CB7E-EZQZ (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.”).

Nor does § 227(c)(5)’s use of “telephone call,” rather than simply “call,” change the analysis. “Telephone” identifies the medium of the communication; it does not impose an unwritten voice requirement. A text message sent by telephone remains a communication by telephone, which is what the ordinary meaning of “call” describes. *See Satterfield*, 569 F.3d at 953–54 & n.3; *Alvarez*, 2026 WL 202930, at *4–5. A contrary reading, which would treat a “telephone” as defined by its ability to carry voice, would prove too much. As Judge Crane explained, if “telephone” were “as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with any modern features from falling under the statute.” *Alvarez*, 2026 WL 202930, at *5. *See id.* (“A text message therefore falls reasonably within the literal language of the statute.”).

So even post-*Loper Bright*, “the significant weight of case authority” supports interpreting “call” to include text messages. *Wilson v. Better Mortg. Corp.*, 2025 WL 3493815, at *9 (S.D.N.Y. 2025). In sum, the FCC’s conclusion that “the term ‘call’ includes a text message” therefore reflects “the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA’s passage.” *Medvidi*, 2025 WL 2856295, at *3. The statute’s structure confirms this reading.

**b. That interpretation of the word “call” aligns section 227(c)’s private right of action with its substantive provisions**

Much of OptSpot’s argument, like *Steidinger*’s, focuses on the single use of the phrase “telephone call” in section 227(c)(5). Br. at 4, 6–7. But reading section 227(c)(5)’s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. at 14037–39 ¶¶ 33–36, and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases). OptSpot does not argue otherwise.

As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra* Part I.a. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[3] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums. Finally, the purpose of the DNC provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of

[3] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

OptSpot's structural argument, which it takes from *Steidinger*, does not change the picture. OptSpot argues that because §§ 227(c)(1)–(4) "consistently use the term 'telephone solicitation,'" which § 227(a)(4) defines to include a "call or message," while § 227(c)(5) refers only to a "telephone call," Congress must have intended "a narrower remedy." Br. at 6–7 (quoting *Steidinger*, 182 F.4th at 536). But section 227(c)(5) "is not a standalone provision; rather, it operates to enforce the entire subsection in which it sits." *Finish Line*, 2026 WL 2654093, at *4 (citing *Alvarez*, 2026 WL 202930, at *5). Indeed, § 227(c)(5) authorizes suit for a "violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The regulation at issue in Count I prohibits any "telephone solicitation" to a registered residential subscriber, 47 C.F.R. § 64.1200(c)(2), and Congress itself defined that term to include a "message." 47 U.S.C. § 227(a)(4). Congress added that definition after text messaging had become commonplace. *Alvarez*, 2026 WL 202930, at *5. The meaningful-variation canon on which *Steidinger* relies, Br. at 7 (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022)), is a presumption, and here the statutory context points the other way: "[I]t is equally plausible that by including 'telephone call or message' within the definition of 'telephone solicitation,' Congress intended to broaden 227(c)(5)'s cause of action to apply to all telephone solicitations covered by the subsection." *Finish Line*, 2026 WL 2654093, at *4. Indeed, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or

objectionable than written ones." *Alvarez*, 2026 WL 202930, at *5 (quoting *Medvidi*, 2025 WL 2856295, at *3).

OptSpot's reliance on § 227(e) fares no better. Br. at 8 (citing 47 U.S.C. §§ 227(e)(1), (e)(8)(C)). OptSpot argues that Congress's decision to add the term "text message" elsewhere in the statute "while leaving § 227(c) untouched" confirms that § 227(c)(5) is limited to "telephone call[s]." *Id.* As the court in *Finish Line* explained, "if Congress already understood § 227(c)(5) as applying to text messages through the FCC's interpretation and the TCPA's definition of 'telephone solicitation,' it would have no need to amend the subsection to explicitly reference text messages." 2026 WL 2654093, at *5. And holding that "'telephone calls' encompasses texts under some subsections, but not others, would yield potentially absurd inconsistencies." *Id.* (quoting *Newell v. Children's Dental Health Assoc., LLC*, No. 25-5238, 2026 WL 927378, at *6 (E.D. Pa. Apr. 6, 2026)). Section 227(b) uses the same term—"telephone call"—and, as noted, courts have read it to include text messages for years. That usage has been ratified by Congress, which has legislated on the premise that text messages are covered by § 227(b). *Alvarez*, 2026 WL 202930, at *6 (citing Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019)). That ratification is "only 'conclusive' as to § 227(b); that said, it remains strongly persuasive as to a subsection of the same statute that uses identical language." *Id.* "If a text message is a 'call' under the statutory language in subsection (b)(1)(A) . . . then there is no reason to assume that a text message could not be a call under subsection (c)(5)." *Finish Line*, 2026 WL 2654093, at *6 (quoting *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-cv-486, 2024 WL 4190513, at *7 n.6 (M.D.N.C. Aug. 12, 2024)).

### c. The federal courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right

Consistent with the statute's text and structure, courts within the Fifth Circuit have held that text messages qualify as calls under § 227(c)(5). OptSpot's position would undermine the Registry: if text messages were excluded from § 227(c)'s protections, telemarketers could bypass the Registry simply by shifting from voice calls to texts. OptSpot identifies no decision from within this Circuit adopting its reading. The decisions it cites by court name come from Georgia, Florida, Illinois, Ohio, and Indiana, and from the Seventh Circuit. Br. at 4–7. By contrast, this precise issue has been decided by courts in Texas. In *Alvarez*, Judge Crane independently examined the ordinary meaning of "telephone call" at the time of the TCPA's enactment, the statutory context, and the structure of § 227(c), and concluded that a text message "falls reasonably within the literal language of the statute." 2026 WL 202930, at *5. Judge Crane further concluded that "both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls' to persons on the National Do-Not-Call List." *Id.* at *6. Accordingly, the court declined to dismiss the plaintiff's § 227(c)(5) claim. *Id.*

OptSpot does not cite *Alvarez*, *McGonigle*, *Duron*, or *Finish Line*, much less explain why their analysis is wrong. *Alvarez* did not defer to the FCC or rely on policy considerations; it recognized that "it remains incumbent upon district courts to 'independently determine for itself whether the agency's interpretation of a statute is correct,'" and then examined the ordinary public meaning of the statutory language in 1991, contemporaneous dictionaries, and the TCPA's context and structure. 2026 WL 202930, at *3 (quoting *McLaughlin*, 145 S. Ct. at 2015); *see id.* at *3–6. *Steidinger*'s subsequent disagreement with that analysis does not make *Alvarez* any less persuasive.

Following Judge Crane, other courts in the Fifth Circuit adopted the same analysis. *See McGonigle*, 2026 WL 413198, at *4–6; *Duron v. Kings Capital Holding LLC*, No. 3:25-cv-149, 2026 WL 319779, at *5 (W.D. Tex. Jan. 13, 2026) (collecting cases and holding that "interpreting § 227(c) to include text messages is consistent with numerous district court decisions"), *report and recommendation adopted*, 2026 WL 316037 (W.D. Tex. Feb. 5, 2026). And in this District, the court in *Finish Line* "independently reviewed the statutory text and the thorough analyses in *Alvarez* and *McGonigle*," found "the decisions of its sister courts persuasive," and "adopt[ed] their reasoning," concluding that "because text messages fall within § 227(c)'s prohibition on violative 'telephone calls,' Defendant's motion to dismiss on this basis should be DENIED." 2026 WL 2654093, at *3, *6. OptSpot does not mention *Finish Line* at all. Yet *Finish Line* squarely considered the argument that *Steidinger* adopted and OptSpot now advances—that Congress's use of "telephone call or message" in neighboring provisions, but not in § 227(c)(5), shows that the provisions "have different meanings"—and rejected it. 2026 WL 2654093, at *4 (addressing *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025), and *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025), both of which OptSpot cites, Br. at 5).

Other courts have likewise recognized the weight of authority. Judge Love explained in the Eastern District of Texas, "As to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages . . . . *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ('Robocalls and robotexts are nuisances. Congress banned them in the [TCPA].') . . . . Naturally, this court would follow suit with respect to these provisions of the

TCPA having been interpreted to cover text messages." *Hill v. Shoe Carnival, Inc.*, No. 6:25-cv-349, 2026 WL 217776, at *2 (E.D. Tex. Jan. 5, 2026) (Love, J.) (acknowledging the weight of authority supporting application of the TCPA to text messages but resolving the case on an affirmative defense), *report and recommendation adopted*, 2026 WL 216321 (E.D. Tex. Jan. 27, 2026).

OptSpot's remaining authorities do not move the needle. *First*, OptSpot's own authority acknowledges that courts "around the country are split as to the outcome of this issue," Br. at 6 n.1 (quoting *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954, at *3 (N.D. Ohio Mar. 3, 2026)). That acknowledgment cannot be squared with OptSpot's assertion that § 227(c)(5) "unambiguously" excludes text messages and that Plaintiff's reading finds no support in the text. Br. at 3–4. A statutory question that has divided courts across the country is not one whose answer is beyond debate. *Second*, OptSpot itself discloses a decision of the Western District of Texas that "disagreed with *Steidinger*." Br. at 8 n.2 (citing *Feliciano v. Red McCombs Hyundai Nw. GP, L.L.C.*, 2026 U.S. Dist. LEXIS 246635, at *4 (W.D. Tex. Oct. 28, 2026)). That is consistent with *Alvarez*, *McGonigle*, *Duron*, and *Finish Line*. *Third*, the out-of-circuit district court decisions on which OptSpot relies do not bind this Court, and the reasoning OptSpot quotes from them—that, in "common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication," Br. at 5 (quoting *El Sayed*, 2025 U.S. Dist. LEXIS 209469, at *3)—is the modern-usage reasoning that *Alvarez* and *Finish Line* considered and rejected. *See supra* Part I.a. The later decisions OptSpot cites as having "cited *Steidinger* favorably," Br. at 7–8 (citing *Rush v. Selectquote Ins. Servs.*, 2026 U.S. Dist. LEXIS 182934 (July 30, 2026); *Bronstin v. Happy Cabbage Analytics, Inc.*, 2026 U.S. Dist. LEXIS 248072 (Oct. 29, 2026); and *Lowrey v. Twilio, Inc.*, 2026 U.S. Dist.

LEXIS 226120 (Oct. 1, 2026)), are quoted for their conclusions; none of the passages OptSpot quotes engages with the contemporaneous-meaning analysis in *Alvarez* and *Finish Line*. And a count of courts is a statement about numbers, not reasoning.

OptSpot also invokes this Court's "text-first approach" to statutory construction, Br. at 8 (citing *Ams. for Beneficiary Choice v. U.S. Dep't of Health & Hum. Servs.*, 795 F. Supp. 3d 895, 902–03 (N.D. Tex. 2025)), and the Fifth Circuit's application of plain meaning in *Ybarra v. Dish Network, LLC*, 807 F.3d 635 (5th Cir. 2015). Plaintiff agrees that the Court should begin with the text. That is exactly what *Alvarez*, *McGonigle*, and *Finish Line* did, and the text—read as it was understood in 1991 and in context—covers text messages.

OptSpot's challenge to Counts I and II rests on the single premise that a text message is not a "telephone call." Br. at 1–2, 6. OptSpot raises no separate argument about the regulations underlying those counts. Because that premise fails for the reasons given above, judgment on the pleadings should be denied as to Counts I and II.

## II. Plaintiff Independently States a Claim Under the Texas Telephone Solicitation Act.

OptSpot's challenge to Count III misconstrues the statutory basis of the claim Plaintiff pleaded. OptSpot argues that Chapter 305 "applies only to 'telephone calls'" and that "[a] 'text message' is not a 'telephone call,'" Br. at 9, and that Plaintiff "has not alleged he was specifically charged for any of the texts, much less that OptSpot (or any Defendants) knew or should have known he would be charged for any of the specific texts." *Id.* Both arguments are directed to § 305.001, which OptSpot quotes as the operative provision. Br. at 8–9. Neither engages with the provision that actually creates Plaintiff's cause of action, § 305.053(a), which OptSpot's Memorandum never cites. To the extent OptSpot's first argument simply repeats its federal premise, it fails for the reasons given in Part I.

The statutory text is dispositive. Section 305.053(a) provides that "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication." Tex. Bus. & Com. Code § 305.053(a) (emphasis added). The Legislature thus identified three alternative predicates for liability: a communication that violates (1) § 227 itself, (2) "a regulation adopted under" § 227, or (3) Subchapter A. *Id.* The Court must give effect to each of those alternatives. A construction that confined § 305.053(a) to Subchapter A violations, or that required a plaintiff who alleges a violation of an implementing regulation to establish an independently actionable violation of § 227 itself, would instead effectively delete the second alternative.

Plaintiff pleads that predicate. Count III invokes § 305.053 and the Texas Act's private right of action for a person who receives a communication in violation of the Act, ECF No. 18 ¶¶ 105, 111, and it incorporates every preceding allegation. *Id.* ¶ 104. Those allegations include that Plaintiff's cellular telephone number was registered on the National Do-Not-Call Registry since November 17, 2024, and that he uses that number for personal, residential, and household purposes, *id.* ¶¶ 34–36; that Defendants, including OptSpot, sent text messages to that number promoting Wash Masters-branded car wash services, including after Plaintiff responded "Stop," *id.* ¶¶ 6, 41–45, 63; and that those messages violated 47 C.F.R. § 64.1200(c) and (d), *id.* ¶¶ 93–103. The messages therefore constituted "telephone solicitations" under 47 C.F.R. § 64.1200(f)(15), and their transmission to Plaintiff's registered residential number violated § 64.1200(c)(2). *Id.* ¶¶ 18, 21, 93–103. Count III also pleads the Subchapter A theory in the alternative, *id.* ¶¶ 26–28, 62, 105–109, and Plaintiff may proceed on either.

That is sufficient under the plain language of § 305.053(a). Section 64.1200(c)(2) is indisputably "a regulation adopted under" § 227, and § 305.053(a) expressly authorizes suit when a person receives a communication violating such a regulation. OptSpot makes no argument that § 64.1200(c)(2) fails to reach text messages, other than its premise that a text message is not a "telephone call," which fails for the reasons given in Part I. The Texas Legislature expressly chose to provide a state-law cause of action for receipt of a communication violating "a regulation adopted under" § 227. Tex. Bus. & Com. Code § 305.053(a). Thus, even assuming *arguendo* that § 227(c)(5)'s federal cause of action does not extend to text messages, OptSpot still must explain why its messages did not violate § 64.1200(c)(2) or why Texas cannot provide its own remedy for that regulatory violation. Its Motion does neither.

OptSpot cites no authority for any of its Texas arguments—not a single decision construing § 305.053(a), § 305.001, or the "charged for that specific call" language. Br. at 8–9. Indeed, a construction under which a plaintiff could sue under § 305.053(a) for a violation of a regulation adopted under § 227 only when the plaintiff also satisfied the terms of Subchapter A, or possessed a federal private cause of action under § 227(c)(5), would leave the Legislature's express inclusion of "a regulation adopted under that provision" with no independent work to do. The distinction is especially important here because § 64.1200(c)(2) itself prohibits initiating a "telephone solicitation" to a registered residential subscriber, and the regulations define "telephone solicitation" as the initiation of a telephone "call or message" for the purpose of encouraging the purchase of goods or services. 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Plaintiff alleges that Defendants sent precisely such promotional messages to his registered residential number. The Court need not decide that OptSpot also violated § 227(c)(5) to give effect to that independent Texas remedy.

OptSpot's remaining Texas arguments are directed to a different statutory predicate. OptSpot contends that Chapter 305 reaches only a "telephone call" made by a caller who knows or should know that "the called person will be charged for that specific call," and that Plaintiff has not alleged that he was charged for any of the texts. Br. at 9 (quoting Tex. Bus. & Com. Code § 305.001). But those are the terms of Subchapter A of Chapter 305—the third alternative predicate in § 305.053(a). They are not elements of a communication that violates "a regulation adopted under" § 227, the second alternative, and nothing in § 305.053(a) imports them into that predicate. The Court therefore need not reach OptSpot's Subchapter A arguments to deny the Motion as to Count III.

Even if the Court were to reach them, they fail. *First*, OptSpot's assertion that a text message is not a "telephone call" under Chapter 305 because Chapter 305 "does not define 'telephone call,'" Br. at 9, is answered by the ordinary-meaning analysis in Part I.a. Absent a statutory definition, words bear their ordinary meaning, and a "call" ordinarily includes a communication by telephone, whether spoken or written. The Texas Legislature has, moreover, defined "telephone call" elsewhere in the Business and Commerce Code to include text messages, as co-Defendant Wash Masters acknowledges. ECF No. 36 at 12 (citing Tex. Bus. & Com. Code § 304.002(10)). That is consistent with the ordinary meaning of "call" discussed in Part I.a. *Second*, OptSpot's contention that Plaintiff has not alleged that he "was specifically charged for any of the texts," or that OptSpot knew or should have known he would be, Br. at 9, cites no authority requiring a plaintiff to plead the particulars of his billing arrangement with his carrier. The Amended Complaint alleges that the number is a cellular telephone number, that Plaintiff "has been the sole remunerator (i.e., payer) for any bills arising from his telephone number," and that no business has ever reimbursed him. ECF No. 18 ¶¶ 34, 37–38. Taken as

true, those allegations support the reasonable inference that Plaintiff, as the called person, bears the charges associated with his line. And the Amended Complaint alleges that Defendants maintained customer telephone numbers and marketing databases, sent the messages to a mass list through a short-code platform, and acted knowingly and intentionally. *Id.* ¶¶ 53, 58, 60, 113. Knowledge may be alleged generally, Fed. R. Civ. P. 9(b), and on a Rule 12(c) motion the Court draws reasonable inferences in Plaintiff's favor. Br. at 3.

Finally, OptSpot asks that dismissal be with prejudice. Br. at 2, 10. For the reasons above, dismissal is not warranted at all. But even if the Court were to find a pleading deficiency, particularly on the narrow "charged" allegation, dismissal with prejudice would be unwarranted; leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant OptSpot, LLC's Motion for Judgment on the Pleadings in its entirety. Text messages are "calls" under § 227(c), and the Seventh Circuit's contrary decision in *Steidinger* is not binding. Count III independently survives under § 305.053(a) because Plaintiff alleges that Defendants' messages violated 47 C.F.R. § 64.1200(c)(2), "a regulation adopted under" § 227. Alternatively, should the Court find any deficiency in the pleading, Plaintiff requests leave to amend. Fed. R. Civ. P. 15(a)(2).

Dated: November 9, 2026

Respectfully submitted,

By: *<u>/s/ Cassandra P. Miller</u>*

Cassandra P. Miller
Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611

Telephone: (872) 263-1100
cmiller@straussborrelli.com
sam@straussborrelli.com

Anthony I. Paronich, Pro Hac Vice
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Cassandra Miller, hereby certify that on November 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 9th day of November, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Cassandra Miller*

Cassandra Miller
cmiller@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109